ROBERT E. OPERA -- State Bar No. 101182
ropera@wghlawyers.com
PETER W. LIANIDES -- State Bar No. 160517
plianides@wghlawyers.com
MATTHEW J. STOCKL – State Bar No. 329366
mstockl@wghlawyers.com
**WINTHROP GOLUBOW HOLLANDER, LLP**
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

[Proposed] General Insolvency Counsel for
Debtor and Debtor-in-Possession

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>SILVER CREEK INDUSTRIES, LLC<br><br>Debtor and<br>Debtor-in-Possession. | Case No. 6:23-bk-11677-SY<br><br>Chapter 11 Proceeding<br><br>**OMNIBUS DECLARATION OF JAMES MCGEEVER IN SUPPORT OF DEBTOR'S EMERGENCY "FIRST DAY" MOTIONS**<br><br>DATE: May 3, 2023<br>TIME: 1:30 p.m.<br>PLACE: Courtroom 302<br>3420 Twelfth Street<br>Riverside, CA 92501 |

I, James McGeever, declare and state:

1.      The following matters are within my own knowledge and, if called as a witness, I could and would testify competently thereto.

2.      I am the managing member of Silver Creek Industries, LLC, the debtor and debtor-in-possession in this Chapter 11 case ("Debtor"). The Debtor's Chapter 11 case was commenced by the filing of a Chapter 11 petition for relief on April 24, 2023 ("Petition Date").

3.      This Declaration is submitted in support of the following motions filed concurrently herewith by the Debtor:  *Debtor's Emergency Motion for Order Authorizing Use of Any Cash Collateral of Secured Claimants* ("Cash Collateral Motion"); *Debtor's Emergency Motion for Order Authorizing (1) Payment or Honoring of Pre-Petition Payroll Obligations; and (2) Retention of Account Used to Fund Pre-Petition Payroll* ("Payroll Motion"); and *Debtor's Emergency Motion for Order Authorizing the Debtor to Pay in the Ordinary Course Pre-Petition Claims of Claimants Having Bond Rights, Lien Rights or Comparable Construction Law Rights* ("Ordinary Course Motion" and together with the Cash Collateral Motion and the Payroll Motion, the "First Day Motions").

4.      I am the principal of the entities that acquired the Debtor in August 2020. Since such acquisition, I have been involved extensively in supervising all aspects of the Debtor's business. I have substantial knowledge of the Debtor's operations and financial affairs, and I have assisted in the preparation or review of the Debtor's financial reporting. I reviewed the Debtor's financial books and records in connection with the preparation and filing of the Debtor's Chapter 11 petition and the First Day Motions, and I worked closely with the Debtor's proposed financial consultants and proposed general insolvency counsel in this case with respect to the preparation of the First Day Motions.

5.      I have reviewed each First Day Motion. Based upon my extensive knowledge of the Debtor's financial affairs, to the best of my knowledge, I believe that the factual representations contained in the First Day Motions regarding the Debtor's history, financial affairs and operations are materially accurate. I believe that the relief sought in each First Day Motion:

(a) is necessary to enable the Debtor to operate in Chapter 11 with minimal disruption; (b) is critical to the Debtor's efforts to preserve value in the Debtor and maximize the recovery by the Debtor's creditors; and (c) enhances the Debtor's estate and creditors' interests. Furthermore, it is my belief that the relief sought in the First Day Motions is narrowly tailored and necessary to achieve the goals of this case, a sale of the Debtor's assets as a going concern for the benefit of the Debtor's creditors.

6. All statements set forth in this Declaration are based upon: (a) my personal knowledge; (b) my review of relevant financial and accounting books and records of the Debtor maintained by the Debtor in the ordinary course of the Debtor's business; and/or (c) my opinion based upon my experience and knowledge of the Debtor's operations and financial condition.

7. I am authorized to submit this Declaration on behalf of the Debtor.

## OVERVIEW OF THE DEBTOR

**General Description of the Debtor.**

8. The Debtor is a California limited liability company. The Debtor's principal place of business is located in Perris, California.

9. The Debtor was founded in 2005 with the goal of redefining modular construction of buildings. In August 2020, BVA Construction, LLC ("BVA LLC") and BVA Construction, Inc. ("BVA Inc."), two companies under my control, acquired 100% of the membership interests in the Debtor and two non-debtor affiliates of the Debtor, Silver Creek Industries RS, LLC ("SCRS") and Silver Creek Leasing, LLC ("SCL"). BVA LLC owns 100% of the membership interests in BVA Inc. BVA Inc. owns 100% of the membership interests in the Debtor, 100% of the membership interests in SCRS and 100% of the membership interests in SCL. I am the managing member of the Debtor. An organization chart showing the affiliations among the Debtor, BVA LLC, BVA Inc., SCRS and SCL is attached hereto as Exhibit "1" as is incorporated herein by this reference.

10. BVA LLC is a holding company, with no material assets other than its interest in BVA Inc. BVA Inc. is a holding company, with no material assets other than its interests in the

Debtor, SCRS and SCL.[1]

11. SCRS is a California limited liability company. SCRS's sole business operations have been to provide transportation services to the Debtor. SCL is a California limited liability company. SCL's sole business operations have been to lease machinery and equipment to the Debtor. I estimate that the Debtor owes approximately $2.0 million to SCRS and approximately $5.3 million to SCL.

12. The Debtor is engaged in the business of manufacturing modular buildings, primarily for schools, commercial projects and (formerly) for multi-family residential projects. The Debtor believes that, by manufacturing high-quality, customized modular structures, the Debtor can build and deliver school, commercial and residential buildings much more quickly and economically than by traditional onsite construction. It is my understanding that, since the Debtor's founding in 2005, the Debtor has built and delivered more than 12,000 modules, for more than 1000 buildings for 350-plus school districts, to meet the needs of the education industry, as well as many commercial and residential buildings.

13. As of December 31, 2022, the Debtor had about 370 employees. As a result of staffing cuts undertaken by the Debtor and certain employee defections, however, the Debtor had about 219 employees as of the Petition Date.

**Financial Performance of the Debtor.**[2]

14. The Debtor's revenues for the past several years are as follows:

a. 2019 -- $99,567,240.

b. 2020 -- $122,512,982.

c. 2021 -- $132,487,840.

d. 2022 -- $97,944,409.

---

[1] I am uncertain at this time whether BVA LLC or BVA Inc is entitled to any tax refund or other governmental payment.

[2] Information contained herein regarding the financial affairs of the Debtor for the years 2019 through 2021 are derived from the audited financial statements for the Debtor. The financial information for the Debtor for 2022 and for 2023 derives from unaudited, internally-prepared financial statements. The financial information provided for 2023 are preliminary and not final.

e. January 1, 2023 – March 31, 2023 (est.) – $20,992,101.

15. It is my understanding that, historically, the Debtor's operations have been profitable. The Debtor's books and records reflect that the Debtor generated almost $22.0 million in net income in 2019 and almost $18.0 million in net income in 2020. However, the Debtor's operations became unprofitable in 2021. The Debtor had almost $11.0 million in operating losses in 2021 and losses of approximately $31.0 million in 2022. The Debtor's operations have been unprofitable in 2023.

16. The Debtor's assets consist primarily of the following: cash; accounts receivable; inventory; leased machinery and equipment; a real property lease which I believe to be significantly below market; and potential refunds and governmental credits. Furthermore, the Debtor has numerous customer orders which I believe have considerable value in a going concern scenario.

17. Copies of the Debtor's balance sheet, as of December 31, 2022, and the Debtor's balance sheet, as of March 31, 2023, are attached hereto, collectively, as Exhibit "2" and are incorporated herein by this reference. To the best of my knowledge, such financial statements are materially accurate.

**Secured Claims Asserted Against the Debtor.**

18. The following secured claims have been asserted against the Debtor.

a. CIT's Secured Claims. On or about October 19, 2020, the Debtor, SCRS and SCL, as "Borrowers," and CIT Bank, N.A. executed that Credit Agreement (Main Street Priority Loan Facility), pursuant to which the Lenders advanced to the Borrowers a term loan in the original principal amount of $45.0 million ("Loan").[3] CIT asserts that the Borrowers' obligations under the Loan have been guaranteed by BVA LLC and BVA Inc ("Holding Companies").

[3] The Loan was made by CIT Bank, N.A., as a Lender, and as the Administrative Agent for MS Facilities LLC, in accordance with the terms and conditions of the Main Street Lending Program established by the Board of Governors of the United States Federal Reserve System pursuant to Section 4027 of the CARES Act. Citizens-First Bank & Trust is the Successor by Merger to CIT Bank N.A., as Lender and Administrative Agent ("CIT").

The Loan was evidenced by a Term Loan Note ("Note"), dated as of October 19, 2020. The Lenders assert that the Loan has been secured by a Pledge and Security Agreement ("Security Agreement") and by an Intellectual Property Security Agreement ("IP Security Agreement"), and that the Lenders perfected their security interests by the filing of UCC-1 financing statements ("Financing Statements"). (the Credit Agreement, the Note, the Security Agreement, the IP Security Agreement and the Financing Statements and any and all amendments, modifications or supplements thereto, are referred to herein, collectively, as the "Loan Documents").

CIT asserts that, as of the date of the filing of the Debtor's Chapter 11 petition ("Petition Date"), the Debtor and the other Borrowers owed to CIT an amount in excess of $48.0 million. CIT asserts that the Loan is secured by substantially all of the assets of the Debtor (including cash collateral but excluding bankruptcy avoidance actions), substantially all of the assets of Borrowers SCRS and SCL and substantially all of the assets of the Holding Companies, and that CIT's security interests have been duly perfected by, in part, the Financing Statements. Based upon my knowledge of the Debtor's assets and properties, I believe that, as of the Petition Date, CIT's asserted collateral for the Loan had a value significantly less than the amount of CIT's claim.[4]

b. Disputed Secured Claimants. The Debtor has caused to be conducted lien searches in order to determine the secured claims asserted against the Debtor. Based upon such lien searches and my knowledge of the Debtor's financial affairs, I believe that additional secured claims may be asserted by the following secured claimants (collectively, "Disputed Secured Claimants")[5]:

---

[4] The Debtor asserts that CIT has no interest in the Debtor's real property. Based upon my investigation, I believe that such lease is a substantially below market lease and has substantial value. Furthermore, I believe that the Debtor may be entitled to receive a substantial tax refund (Employee Retention Tax Credit), and is evaluating whether CIT has any interest therein. The Debtor reserves all claims, rights and interests with respect thereto.

[5] Claims have been asserted against the Debtor's surety bond issued by the Debtor's pre-petition surety, Hartford Fire Insurance and affiliates thereof ("Hartford"). I have reviewed such claims and have addressed such claims with Hartford. I believe that such claims are substantially overstated and that the Debtor has meritorious set-offs and defenses thereto. The Debtor intends to dispute such claims. I am hopeful that such claims can be resolved to the satisfaction of the Debtor, and that, even if it proves to be the case that such claimants have any valid claims against

| **Disputed Secured Claimant** | **Interest** | **Date of Filing of Interest** | **(Alleged) Collateral** |
|---|---|---|---|
| America First Multi-Family Investors, L.P. ("America First") | Security Interest / UCC-1 Filing | 2/2/2021 (corrected 2/8/21) | Each modular structural unit manufactured by the Debtor pursuant to a Master Services Agreement, dated January 29, 2021, between the Debtor and Hoffman Management & Construction Corp, and all fixtures, furniture, appliances, goods, inventory and supplies associated with such units. |
| U.S. Bank N.A as Fiscal Agent for California Housing Finance Agency, as Governmental Lender Financing Division ("U.S. Bank") | Security Interest / UCC-1 Filing | 2/4/21 | Each modular structural unit manufactured by the Debtor pursuant to a subcontract, dated January 7, 2021 between the Debtor and Ed Grush General Contractor, Inc. and all fixtures, furniture, appliances, inventory and supplies associated with such units. |
| XL Construction ("XL") | Security Interest / UCC-1 Filing | 8/14/22 (collateral restated 1/20/23) | 25 complete modular units with complete/turnkey design and engineering of all modular units per the plans and performance specifications; including but not limited to all submittals, shop drawings, engineering calculations, engineering stamps and material procurement. |
| BBMR Enterprises, Inc. ("BBMR")[6] | Attachment Lien | 1/25/23 | Assets of the Debtor subject to attachment lien pursuant to the California Code of Civil Procedure |

the Debtor, such claims can be paid such that Harford will not assert any significant equitable lien claims or other claims against the Debtor.

[6] BBMR also obtained an attachment lien against assets of the Holdings Companies.

19. Based upon my review of these claims and my knowledge of the Debtor's financial affairs, for the reasons described hereinbelow, I believe that none of the Disputed Secured Claimants holds at this time a valid, unavoidable security interest encumbering cash collateral of the Debtor.

**Debtor's Financial Difficulties.**

20. In 2021, the Debtor started having financial difficulties. The causes of the Debtor's financial difficulties include the following.

a. COVID-19 Pandemic/Change in Business Mix. The Debtor historically has generated a substantial amount of revenue from manufacturing modular buildings for schools and commercial projects. As a result of the COVID-19 pandemic, however, orders for school projects and commercial projects slowed, resulting in a significant loss of revenue from such projects. In order to try to maintain revenue, the Debtor took on a larger number of residential projects. The following chart shows the change in business mix during this time period.

**Business Mix By Revenue (approx.)**

| | 2020 | 2021 | 2022 |
|---|---|---|---|
| Schools | 59% | 70% | 46% |
| Commercial | 37% | 7% | 9% |
| Residential | 4% | 23% | 45% |

The residential projects generally were lower profitability jobs than the school and commercial projects, resulting in a reduction in profitability of the Debtor's business.

b. Losses on Residential Projects. In 2021 and 2022, the Debtor suffered substantial losses on certain residential projects. Factors that led to losses on residential projects include:

i. Increase in Cost of Materials. Residential projects generally are bid on a fixed price basis. After the execution of certain residential project contracts, there was a significant increase in materials costs, including wood and finish

materials, leading to losses on such projects.

ii. Increase in Cost of Labor/Labor Shortages. Labor wage rates increased significantly during such period. Furthermore, as a result of COVID-19 restrictions, there was a shortage of workers leading, in part, to delays in completion of projects.

iii. Supply Chain Shortages. During such period, there was significant delay in obtaining materials needed for residential projects. These shortages in materials supply led to delays in completing projects, inefficiencies, additional labor costs to complete projects and the imposition of penalties on the Debtor.

iv. Inefficiencies in Execution of Residential Projects. The Debtor had substantially more experience building school and commercial projects than residential projects (e.g., revenue from residential projects constituted only about 4% of the Debtor's total revenue in 2020). The Debtor's relative inexperience building residential projects led to inefficiencies in executing such projects and resulting losses associated therewith.

The Debtor's school projects and commercial projects, in the aggregate, continued to be profitable during 2021 and 2022, but the Debtor's residential projects were unprofitable during 2021 and 2022. The losses on the Debtor's residential projects caused strain on the Debtor's cash flow, resulting in the Debtor's having difficulty meeting its accruing obligations. The Debtor determined in 2022 not to build new residential projects given the problems associated with the execution of such projects.

c. Surety Bond Issues. The Debtor's school projects and many other projects require the Debtor to provide performance and payment surety bonds. Given the deterioration in the Debtor's financial affairs, in or about December 2022, the Debtor's pre-petition surety bond provider, Hartford, gave notice to the Debtor that Hartford no longer would provide to the Debtor new surety bonds for the Debtor's projects. Without surety bond support, the Debtor cannot operate its business in the ordinary course. Despite

the Debtor's efforts, the Debtor has been unable to obtain a new surety bond provider.

d. Burdensome Secured Debt. CIT asserts against the Debtor a secured claim in an amount in excess of $48.0 million. As a result of the deterioration in the Debtor's financial affairs, the Debtor is concerned that it will not be able to service timely the amount of such debt.

21. The Debtor acted diligently to address its financial difficulties. The Debtor undertook significant reductions in its workforce, ceased taking on new residential construction jobs, and reduced other operating expenses in order to attempt to return to profitability. While the Debtor believes that its efforts to return to profitability ultimately would be successful, the Debtor's debt burdens, cash flow issues and bonding issues remain serious concerns for the Debtor.

**CIT's Asserted Claims.**

22. CIT asserts that, as of February 10, 2023, the Debtor was in default under the Loan Agreements. CIT asserts, among other things, that the Debtor failed to comply with certain financial covenants contained in the Loan Agreements, and that the Debtor failed to pay to CIT an interest payment that was owed to CIT in January 2023.

23. CIT has expressed to the Debtor concerns about the deterioration in the Debtor's financial condition and has questioned the viability of the Debtor's business. I have participated in discussions with representatives of CIT regarding the Debtor's financial affairs and the Debtor's ability to pay CIT's claim. Based upon such discussion and in light of the Debtor's financial difficulties, the Debtor determined that it would pursue, in Chapter 11, an auction of substantially all of its assets in order to attempt to maximize the value of the Debtor's assets for the benefit of CIT and other creditors of the Debtor.

24. Based upon the challenges facing the Debtor and my knowledge of the Debtor's financial affairs, it is my opinion that the best means for the Debtor to preserve value in the Debtor's assets and to produce as favorable a recovery for the Debtor's creditors as may be possible under the circumstances of this case is for the Debtor to attempt to sell the Debtor's

business as a going concern (i.e., a sale of substantially all of the Debtor's assets in this Chapter 11 case). Toward that end, the Debtor has marketed the Debtor's business, has obtained expressions of interest from a number of potential bidders for the Debtor's business and has entered into with Silver Creek Modular, LLC, a California limited liability company, a wholly-owned subsidiary of Webb Investments Co., LLC ("Stalking Horse Bidder") a term sheet ("Term Sheet") setting forth the material terms of a proposed sale of the Debtor's business to the Stalking Horse Bidder. Subject to the approval of this Court, the Debtor intends to pursue an auction of the Debtor's business to the bidder that makes the most favorable offer for the purchase of the Debtor's business, as determined by this Court. A copy of the Term Sheet, in substantially final form, is attached hereto as Exhibit "3" and is incorporated herein by this reference.

25.    The Debtor must pursue in this case a prompt sale process with a closing of a sale to occur during the week of May 29, 2023. By reason of the Debtor's financial difficulties, the Debtor no longer can obtain new surety bond support and therefore is precluded from performing work on most of its scheduled new projects and from bidding on new projects. The Debtor is experiencing employee defections and the Debtor is at risk of losing business to competitors. The Debtor's Budget, a true and complete copy which is attached hereto as Exhibit "4" and is incorporated herein by this reference, projects that the Debtor will be able to operate its business until the week of May 29, 2023, but that the Debtor thereafter will lack cash sufficient to continue its operations. Consequently, in order to avoid a deterioration in the Debtor's assets and enterprise value resulting from such financial difficulties, the Stalking Horse Bidder has required by its Term Sheet that the Debtor close the proposed purchase and sale transaction by June 2, 2023.

26.    The Debtor intends to file promptly a motion requesting that the Court set, on an expedited basis, a hearing on a motion for approval of sale and bidding procedures for the sale process and, in connection therewith, will request that the Court (i) approve an auction (if viable) to be conducted on or about May 30, 2023, and (ii) schedule for May 31, 2023 or June 1, 2023 a hearing on a substantive sale motion, at which hearing the Debtor will request that the Court

approve the sale and assignment of substantially all of its assets to the successful bidder at such auction.

**FIRST DAY MOTIONS**

27. The Debtor commenced this Chapter 11 case in response to the above-discussed challenges and to protect and maximize the value of its assets. The Debtor's transition into this Chapter 11 case must be comprehensively and effectively organized to ensure that the Debtor will be able to operate smoothly in bankruptcy. It is important to minimize any impediments to the Debtor's business operations that could result from Debtor's resort to Chapter 11 relief.

28. To enable the Debtor to minimize the adverse effects of this Chapter 11 filing, the Debtor is seeking the relief requested by the First Day Motions. Generally, the First Day Motions are designed to meet the Debtor's goals of (a) continuing its operations in Chapter 11 with as little disruption and loss of productivity as possible, (b) maintaining the confidence and support of its customers, employees, vendors, suppliers, and service providers during the Debtor's Chapter 11 case, (c) establishing procedures for the smooth and efficient administration of this case, and (d) facilitating a sale of substantially all of its assets in order to maximize the value of its estate for the benefit of its creditors.

29. I believe that the relief sought in each of the First Day Motions will enhance the Debtor's ability to administer this Chapter 11 case in an effective manner and to achieve a successful resolution of this case for the benefit of the Debtor's creditors. Furthermore, I believe that the relief requested by the First Day Motions is essential to the Debtor's successful navigation of this Chapter 11 case and to avoid immediate and irreparable harm to the Debtor, the Debtor's estate and the Debtor's employees, customers, vendors, and creditors.

**Cash Collateral Motion.**

30. By the Cash Collateral Motion, the Debtor moves the Court, on an emergency basis, for an order (i) authorizing the Debtor to use any "cash collateral" of CIT and the Disputed Secured Claimants (the Disputed Secured Claimants and CIT are referred to herein, collectively,

as the "Secured Claimants") in accordance with the terms and conditions set forth in the Cash Collateral Motion, and (ii) setting a final hearing on the Cash Collateral Motion.

31.    The Debtor requires immediate access to cash collateral in order to ensure that the Debtor has funds sufficient to pay its accruing operating expenses and thereby preserve the value of its estate for the benefit of the Debtor's creditors. Absent immediate access to cash collateral, the Debtor will not be able to pay its accruing operating expenses, including payroll expenses associated with the Debtor's employees, and the Debtor will be required to terminate its business operations and to convert its Chapter 11 case to one under Chapter 7 of the Bankruptcy Code, with a resulting substantial loss in the value of the Debtor's estate, to the severe detriment of the Debtor and the Debtor's creditors.

32.    The terms of the Debtor's proposal for the use of any cash collateral of the Secured Claimants is set forth at pages 13-16 of the Cash Collateral Motion and addresses, in part, the following: the Debtor's projection of its cash receipts and disbursements for periods set forth in the proposed Cash Collateral Budget; the Debtor's proposed replacement liens to provide "adequate protection" of any interests which the Secured Claimants may have in cash collateral; a reservation of any rights that the Debtor, any Official Committee of Unsecured Creditors ("Committee") or any other party-in-interest may have to object to the claims or liens asserted by a Secured Creditor; financial reporting that the Debtor will provide to the Secured Claimants regarding the Debtor's cash collateral use; and the Debtor's request that the Court set a final hearing on the Cash Collateral Motion.

33.    By the Cash Collateral Motion, the Debtor proposes that the Debtor be allowed to use cash collateral of the Secured Claimants to pay the ongoing expenses of the Debtor, as provided by the Cash Collateral Budget (Exhibit "4" hereto). The Debtor proposes that the Debtor be authorized to make the expenditures provided for by the Cash Collateral Budget and to exceed the amounts set forth by the Cash Collateral Budget by as much as 15% of the budgeted total for the period indicated. Budget savings in any week under the Cash Collateral Budget may be carried over and used by the Debtor in subsequent weeks (i.e., to account for changes in the

timing of expenditures by the Debtor). Any expenditures in excess of this authorization will require the written approval of CIT or any Disputed Secured Claimant having a valid, duly perfected and unavoidable interest in cash collateral, or further order of the Court after appropriate notice.

34.    Under the Debtor's cash collateral proposal, the Secured Claimants will be granted a post-petition replacement lien on cash, accounts receivable, inventory, and proceeds acquired and/or generated with any cash collateral with a value equal to the amount of any pre-petition cash collateral of the Secured Claimants expended by the Debtor.  However, the replacement liens provided to the Secured Claimants will be limited as follows: the interest of a Secured Claimant will be limited to the amount of any cash collateral of the Secured Claimant as of the Petition Date, to the extent that any cash collateral of the Secured Claimant is actually used by the Debtor; the lien will be to the same extent and have the same priority as any valid, duly perfected and unavoidable lien of the Secured Claimant as of the Petition Date; and the Debtor (and any Committee or other party-in-interest) will have the right at any time to object to any secured claim asserted by the Secured Claimant.

35.    By the Cash Collateral Budget, the Debtor projects that it will have a cash flow sufficient to operate its business until about the week of May 29, 2023, the projected closing of a purchase and sale transaction, and that the net aggregate value of cash collateral will not decline pending such closing. Accordingly, the Debtor projects that any cash collateral interests of the Secured Claimants will not be impaired during this case.

36.    I was responsible for preparing the Budget. I believe that the projections of the Debtor's business operations stated in the Budget are reasonable. The business assumptions underlying the Debtor's post-petition operations projected in the Budget are reasonable and are essentially in accordance with the Debtor's historical experience, as adjusted to take into account recent or projected events (e.g., the cost-cutting measures implemented and to be implemented by the Debtor). The Debtor projects that the Debtor's use of any cash collateral of the Secured Claimants will not result in any material erosion of any cash collateral, and, in fact, will result in a

significant increase in the value of the estate, thereby adequately protecting the Secured Claimants' interests in any cash collateral. Accordingly, I believe that the proposed replacement liens being granted to the Secured Claimants will adequately protect the Secured Claimants' alleged interests.

37.     I believe that the Disputed Secured Claimants have no valid, duly perfected and unavoidable interest in cash collateral.

a.     First America, U.S. Bank and XL filed liens against personal property of the Debtor other than cash collateral.

b.     It is my understanding that the Debtor contends that it performed fully and completely its obligations to First America and U.S. Bank and, accordingly, is entitled to obtain a release of their liens.

c.     The liens of First America, U.S. Bank and XL are junior in priority to the asserted liens of CIT. The Debtor believes that CIT's interest is undersecured, and therefore, that any liens of First America, U.S. Bank, and XL are valueless.

d.     BBMR's attachment lien was recorded within ninety (90) days prior to the Petition Date. I am advised, therefore, that BBMR's attachment lien is subject to avoidance as a preference.

38.     Allowing the Debtor to use any cash collateral of the Secured Claimants will help promote a successful resolution of the Debtor's case, as it will allow the Debtor to continue, uninterrupted, the normal operations of its business pending the closing of any sale of the Debtor's business as a going concern. The Debtor's efforts to maximize the value of its estate, in turn, will be to the ultimate benefit of the Secured Claimants, by preserving and enhancing the value of their alleged secured interests.

39.     I believe that the Debtor has a strong potential for a successful resolution of its case.  The Debtor has been in business for about 17 years.  The Debtor's business generally has been successful, has a good reputation in its industry, and possesses a good customer base. Furthermore, it is reasonable to believe that the sale process in this case will be successful.

Subject to the approval of the Court, the Debtor has entered into the Term Sheet (Exhibit "3" hereto) with the Stalking Horse Bidder pursuant to which the Stalking Horse Bidder has agreed to acquire substantially all of the Debtor's assets in accordance with the terms and conditions of the Term Sheet. The Debtor also has obtained a term sheet from another very active bidder and is hopeful that additional bids will be obtained for the Debtor's assets. I am cautiously optimistic, then, that, through the sale process in this case, enterprise value of the Debtor's business can be preserved for the benefit of the Debtor's creditors. While no assurance can be provided at this time that unsecured creditors will receive a favorable recovery in this case, I believe strongly that the Debtor's pursuing a sale process in this case represents the best means to maximize the value of the Debtor's estate for the benefit of the Debtor's creditors.

40.    If the Debtor were denied use of cash collateral, it will be forced to close its business and to cease operations.  Such a cessation of operations, even temporary, would cause irreparable damage to the Debtor's business in the form of customer defections, employee attrition, lost revenues and loss of goodwill. Even a temporary cessation of the Debtor's business operations, caused by any lack of access to cash collateral, will result in a substantial diminution of the cash collateral, as customers will turn to competitors of the Debtor for their building needs. Moreover, if the Debtor were denied use of cash collateral, its assets would be liquidated, yielding proceeds substantially less than what the Debtor could generate by continuing its operations pending the closing of a sale transaction.  I believe that, rather than force the Debtor and its creditors to such a result at this very early stage of this case, this Court should permit the Debtor to use any cash collateral in order to preserve the value of the estate.

41.    The Debtor must have the immediate use of any cash collateral in order to meet the daily costs and expenses of operating its business, to promptly pay its vendors, and to acquire goods and services to keep its business operating. Any delay in the Debtor's ability to meet one or more of the aforementioned operating needs would deprive the Debtor of its ability to maximize the value of its estate for the benefit of its creditors. Without the use of cash collateral, the Debtor will have no ability to operate its business. Without access to cash collateral, the Debtor's efforts

to maximize the recovery by its creditors will be jeopardized, to the detriment of the Debtor's creditors.

42.      Accordingly, in order to prevent the immediate and irreparable harm that will be caused to the Debtor's estate, creditors and parties-in-interest absent Court approval of the Cash Collateral Motion, on behalf of the Debtor, I respectfully request that the Court grant the relief requested by the Cash Collateral Motion and authorize the immediate use of cash collateral pursuant to the terms and conditions set forth in the Cash Collateral Motion.

**Payroll Motion.**

43.      By the Payroll Motion, the Debtor moves this Court, on an emergency basis, for an order granting to the Debtor, in part, the following relief:

a.      Authorizing, but not requiring, the Debtor to pay pre-petition employee wage and salary obligations owed by the Debtor, up to the priority limit in Section 507(a) of the Bankruptcy Code, as well as any taxes associated therewith;

b.      Authorizing, but not requiring, the Debtor to (i) reimburse ordinary course pre-petition employee business expenses in accordance with the Debtor's pre-petition policy, and (ii) pay or honor employee benefit obligations owed by the Debtor, including worker's compensation, medical insurance, dental insurance, vision insurance, life insurance for certain employees, disability insurance for certain employees, 401k benefits (no employer contribution), and other benefits incurred and payable by the Debtor in the ordinary course;

c.      Authorizing, but not requiring, the Debtor to honor all pre-petition vacation pay, sick leave pay, holiday pay, jury duty pay, and other paid leave claims in the ordinary course;

d.      Authorizing the Debtor to retain its pre-petition payroll account at Citizens-First Bank & Trust Company ("Payroll Account") until May 24, 2023, thirty (30) days after the April 24, 2023 Petition Date; and

e.      Authorizing and directing First-Citizens Bank & Trust Company ("First-Citizens"), the financial institution at which the Debtor's Payroll Account is located, not to close the Payroll Account, and to honor the Debtor's checks for payment of any of the foregoing wage and benefit obligations.

44.      The Debtor employs about 219 people, whose services are necessary for the successful operation of the Debtor's business. I believe that many of the Debtor's employees may live paycheck to paycheck and cannot afford to miss even a portion of a paycheck.  If these employees are not paid, they almost certainly will cease working for the Debtor and seek employment elsewhere.  Once such employees are gone, they cannot be easily replaced.  The Debtor has invested significant time and resources training its employees, resulting in a highly trained workforce. In addition, the community in which the Debtor's business is located is small with relatively low unemployment.  Accordingly, it would be difficult for the Debtor to replace employees who leave the Debtor due to non-payment of their wage claims.  I believe that, if the pre-petition wage and benefit obligations owed to the Debtor's employees are not timely honored and as a result numerous employees terminate their employment with the Debtor, severe and perhaps irreparable damage will be caused to the Debtor's operations. Moreover, the Stalking Horse Bidder and other potential bidders are counting on an acquisition of the Debtor as a going concern. If there is a large defection of employees because the Debtor cannot pay pre-petition priority claims of employees, bidders' interest in acquiring the Debtor's business very likely will decline greatly.

45.      Payroll for the employees of the Debtor is paid in arrears on a bi-weekly basis. The last pre-petition payroll was due and was paid on April 21, 2023, for the pay period April 3, 2023 through April 16, 2023. This payroll was paid from funds on deposit in the Payroll Account. If the Payroll Account is closed by virtue of the requirements of the Office of the United Trustee ("U.S. Trustee") the payroll checks written on the Payroll Account will be dishonored, resulting in employee defections.

46.     I believe that the Debtor must be able to honor post-petition the pre-petition employment benefit obligations owed to employees, including insurance obligations and sick leave and vacation pay obligations. Otherwise, there will be a substantial risk of employee defections.

47.     In addition, the Debtor's first post-petition payroll will be due and payable on May 5, 2023, for the period from April 17, 2023 to April 30, 2023. Such payroll payment, therefore, will include pre-petition payroll obligations. Without the approval of the Court, the Debtor will not be able to pay the pre-petition portion of the May 5, 2023 payroll obligations that will be payable to its employees.

48.     By the Payroll Motion, the Debtor requests authority to pay the pre-petition portion of the payroll due and payable on May 5, 2023. I estimate that the total amount of the Debtor's pre-petition payroll obligations due and payable on May 5, 2023 is approximately $263,158. Attached as Exhibit "5" hereto and incorporated herein by this reference is a redacted list of the Debtor's employees and the pre-petition payroll amount owed to each employee.

49.     The Debtor will not pay any pre-petition wage or employment-related claims in excess of the $15,150 priority limit set forth in Section 507(a)(4) of the Bankruptcy Code.

50.     As set forth by the Debtor's Cash Collateral Motion and as evidenced by the Cash Collateral Budget, the Debtor has sufficient funds on hand to honor and pay the pre-petition wages. I believe that any failure by the Debtor to timely honor and pay its payroll and other compensation benefits due to its employees will affect adversely the Debtor's ability to retain its employees and to operate its business, thereby frustrating the Debtor's efforts to successfully administer the Debtor's Chapter 11 case and to maximize the value of the Debtor's estate, by means of a going concern sale of the Debtor's assets.

51.     By the Payroll Motion, the Debtor requests authority for the Debtor to retain its pre-petition Payroll Account until May 24, 2023, and an order authorizing and directing First-Citizens Bank & Trust Company to honor the Debtor's checks written on the Payroll Account for the purposes set forth in the Payroll Motion. The Payroll Account is a very limited purpose

account; only payroll and no other obligations are funded from the Payroll Account. I believe that the retention of the Payroll Account for this limited period of time will not have any adverse impact upon the interests of creditors, since no pre-petition, non-payroll claims will be paid from this account.

52. In addition, by the Payroll Motion, the Debtor requests authority to honor, after the Petition Date, its pre-petition employment benefits owed to its employees, including insurance obligations, sick leave and vacation pay obligations.

53. The proposed payment of the Debtor's pre-petition wage obligations and honoring of employment benefit claims will enable the Debtor's business to continue in operation. The relief requested by the Payroll Motion, then, will help to preserve the Debtor's going concern value and allow the Debtor to maintain its business operations pending the Debtor's pursuit of a sale process designed to maximize the value of the Debtor's estate for the benefit of the Debtor's creditors. In contrast, if the relief requested by the Payroll Motion is not granted, numerous employees of the Debtor will defect, and the Debtor's business will be significantly disrupted, and potentially damaged greatly, to the severe detriment of the Debtor's creditors. A loss of employees at this critical juncture almost certainly would materially damage the Debtor's business operations, and, consequently, the value of the Debtor's overall business enterprise. Moreover, a loss of employee morale and goodwill at this crucial juncture would undermine the Debtor's stability, and undoubtedly would have a negative effect on the Debtor, the value of its assets and business, and its ability to achieve its primary objective in this Chapter 11 case, a favorable sale of its assets.

54. I believe therefore, that, if the Debtor is not authorized to pay the wage claims of its employees and to honor benefit obligations owed to its employees as requested by the Payroll Motion, the disruption to the Debtor's business caused by employee defections would substantially jeopardize the Debtor's ability to maximize the value of the Debtor's estate through

a going concern sale of its assets.[7]

55. In order to ensure that all of the pre-petition payroll checks that were issued and that will be issued to employees are honored, by the Payroll Motion, the Debtor requests authority to maintain the Payroll Account relating to such obligations for a period of thirty (30) days after the Petition Date, through and including May 24, 2023. The Payroll Account is a dedicated account, used solely for the purpose of paying payroll and related employment obligations, and, accordingly, no pre-petition non-payroll obligations will be paid by maintaining the Payroll Account for a period of thirty (30) days after the Petition Date. Without this relief, employee checks may be dishonored, resulting in a loss of employees and damage to the Debtor's business operations.

56. Thus, I respectfully submit that the Court should grant to the Debtor the relief requested by the Payroll Motion as being essential to a successful resolution of the Debtor's case.

**Ordinary Course Motion.**

57. By the Ordinary Course Motion, the Debtor moves the Court, on an emergency basis, for an order (a) authorizing the Debtor to pay on an interim basis, in the ordinary course of its business, pre-petition claims of claimants having surety bond rights, lien rights, stop notice rights, or comparable construction law rights, remedies and claims, and (b) setting a final hearing on the Ordinary Course Motion.

58. As described in the Ordinary Course Motion, the Debtor must pay, in the ordinary course of its business, the claims of subcontractors, vendors, materialmen and other claimants (collectively, "Construction Law Claimants") who could assert, in the absence of payment of their claims, surety bond claims, mechanic's lien claims, stop notice claims, preliminary notice claims or similar claims under California law or other applicable law (collectively, "Construction Law Claims"). The Debtor is required to pay, and historically has paid in the ordinary course of

[7] The Debtor does not intend at this time to pay the pre-petition claims of former employees of the Debtor. Furthermore, by the Payroll Motion, the Debtor requests an order authorizing, but not requiring, the Debtor to pay or honor the wage claims and benefit claims of employees. Accordingly, the Debtor will pay or honor such claims only in the exercise of its sound business judgment, and only to the extent that it has funds sufficient to do so.

its business, Construction Law Claims from collections that the Debtor receives from general contractors or other customers of the Debtor.

59. Based my substantial knowledge of practice and procedure in the Construction Industry and my knowledge of the Debtor's financial affairs, Construction Law Claims, consist of, among others, the following potential claims against the Debtor in this case:

a. Surety Bond Claims. The Debtor has been required to obtain payment and completion bonds in connection with a number of its construction projects, including virtually all of the Debtor's school projects. The Debtor's pre-petition surety is Hartford Fire Insurance Company and affiliates thereof ("Surety").

If the Debtor fails to pay a subcontractor, material supplier or other contractor on bonded projects in accordance with the terms of the Debtor's contract with such subcontractor, material supplier or other contractor, the subcontractor, material supplier or other contractor may be entitled to make a claim against the Debtor's surety bond. If the Surety is required to pay the subcontractor, material supplier or other contractor, the Surety could assert an equitable lien against or a prior right to any contract funds that otherwise would be due and payable to the Debtor under its construction contract. Therefore, if the Debtor were to fail to pay a pre-petition bonded claim, the Debtor's ability to obtain payment of amounts otherwise payable to it under a construction contract may be impaired severely, and additional costs and claims could be asserted against the Debtor as a result thereof. Moreover, the Surety could assert that its claim against funds otherwise payable to the Debtor would be senior to the secured claim of CIT.

b. Mechanic's Lien Claims. A subcontractor, a material supplier or other contractor of the Debtor may be entitled to file a mechanic's lien on a real property that is the subject of a construction project with a non-public party in the event that the Debtor were to fail to pay the amount owed to the subcontractor, material supplier or other contractor with respect to such project. If an unpaid subcontractor, material supplier or contractor were to file a mechanic's lien with respect to a construction project of the

Debtor, it is very likely that the Debtor will not be paid the amount that it is owed for its work on such construction project.

c. Stop Notice Claims. If the Debtor were to fail to pay the amount owed to a subcontractor, material supplier or other contractor, such claimant may be entitled to serve a stop notice, notifying the prime contractor or property owner that payment is due to the claimant and that the prime contractor or property owner must withhold enough funds to pay the claimant before payments continue to the Debtor. Most of the Debtor's school district customers will withhold all payments due to the Debtor until all stop notice claims have been removed. The filing of a stop notice by a claimant, therefore, would cause disruption and delay in the Debtor's obtaining payment of the amounts to which it otherwise would be entitled under a construction contract.

60. By the Cash Collateral Budget (Exhibit "4" hereto), the Debtor projects its collections from the Petition Date through June 30, 2023. Most of these collections are on account of bonded projects, and, accordingly, if the Debtor fails to pay Construction Law Claims with respect to such projects, the Debtor will face a serious risk that it will not obtain timely such collections. Even with respect to the non-bonded projects, if the Debtor fails to pay a Construction Law Claimant with respect to such projects, there is a risk that, by the Construction Law Claimant's resort to its rights, claims and remedies under applicable law, including any mechanic's lien rights and stop notice rights, the Debtor's ability to obtain the anticipated collections on account of such projects will be delayed or disrupted.

61. In addition, subcontractors or vendors of the Debtor have the right to file preliminary notices with respect to their work on a construction contract of the Debtor. The Debtor will need to obtain releases from such claimants, proving that such claimants' claims have been paid, before the Debtor can obtain payment of the amounts owed to the Debtor from its customers. Therefore, unless the pre-petition claims of these claimants are paid, there will be substantial disruption to the Debtor's collections and cash flow.

62. Accordingly, any failure by the Debtor to pay pre-petition Construction Law Claims could have materially adverse effects on the Debtor's business:

    a. The Debtor's customers generally will not pay to the Debtor amounts owed to the Debtor unless the Debtor pays the Construction Law Claims associated with the customer's contract with the Debtor. The assertion of Construction Law Claims, then, could disrupt substantially the Debtor's collection of the amounts owed to it by its customers, thereby impairing the Debtor's access to cash upon which the Debtor is relying to pay its operating expenses in the ordinary course.

    b. If the Debtor were to fail to pay pre-petition Construction Law Claims, Construction Law Claimants may cease providing goods or services essential to the Debtor's performing its obligations on its construction contracts, potentially resulting in disruption, delay, and additional costs for the Debtor as well as creating risk of the Debtor's defaulting on such contracts.

63. Absent the Debtor's payment of the pre-petition Construction Law Claims, therefore, the Debtor's cash flow could be disrupted severely and the Debtor may be deprived of cash necessary to pay its accruing operating expenses, and the Debtor's ability to meet its obligations on its construction contracts could be jeopardized. The Debtor's business depends upon both the uninterrupted flow of inventory and other goods and the continued performance of subcontractors and others whose goods and services are essential to the Debtor's timely performance of its obligations under its construction contracts. If the Debtor fails to pay the pre-petition Construction Law Claims of these claimants, the claimants likely will refuse to deliver or release goods or materials needed by the Debtor or otherwise impede the Debtor's performance of its obligations under its construction contracts until the Construction Law Claims are paid. The cost of such disruption to the Debtor's estate likely be greater than the cost to the estate of the Debtor's paying the applicable Construction Law Claims.

64. If the Debtor is not permitted to pay pre-petition Construction Law Claims as requested by the Ordinary Course Motion, the Debtor's business operations could suffer severe,

and perhaps irreparable, damage such that the Debtor would be required to terminate its business operations and to convert its Chapter 11 case to one under Chapter 7 of the Bankruptcy Code, with a resulting substantial loss in the value of the Debtor's estate, to the severe detriment of the Debtor and the Debtor's creditors.

65.    Absent the Debtor's obtaining the immediate right to pay the pre-petition Construction Law Claims, the cash flow disruptions and other disruptions to the Debtor's business operations resulting therefrom could impair severely the Debtor's ability to maintain its business operations and to consummate a sale of its business. Unless the Debtor obtains the relief requested by the Ordinary Course Motion, therefore, the Debtor may not be able to continue its business operations and its efforts to maximize the value of its estate for the benefit of its creditors could be severely impaired.

66.    Based upon my evaluation of the Debtor's contracts and financial affairs, I project that, the Debtor will have the ability to pay pre-petition Construction Law Claims as provided by the Ordinary Course Motion. The Debtor's proposed Cash Collateral Budget, which is attached as Exhibit "4" hereto, provides for the payment of pre-petition Construction Law Claims and indicates that the Debtor will have funds sufficient to pay such claims as indicated in the Cash Collateral Budget.

67.    As set forth in the Cash Collateral Budget (Exhibit "4" hereto), on behalf of the Debtor, I estimate that, by June 2, 2023, about the projected closing of the proposed purchase and sale transaction, the Debtor will need to have paid approximately $1,722,644 in pre-petition Construction Law Claims. The Debtor's Cash Collateral Budget indicates that the Debtor will have funds sufficient to make such payments. However, there will be an accrual of other Construction Law Claims before June 2, 2023, and other Construction Law Claims will become due and payable after June 2, 2023 arising from pre-June 2, 2023 goods and services provided to the Debtor by Construction Law Claimants that must be paid by the Debtor. To address these Construction Law Claims, by the Stalking Horse Bidder's Term Sheet ("Exhibit "3" hereto), the Stalking Horse Bidder effectively has agreed to assume, and to pay on account of such

Construction Law Claims, $2.5 million. This payment will be allocated exclusively to pay Construction Law Claims. By the Ordinary Course Motion, therefore, the Debtor requests that the Court enter, on an emergency basis, an Interim Order authorizing the Debtor to pay, by June 2, 2023, $1,722,644 in pre-petition Construction Law Claims. By the Ordinary Course Motion, the Debtor requests also that the Court schedule a final hearing on the Ordinary Course Motion on or about June 2, 2023, or as soon thereafter as is convenient for the Court, to consider approval of the Ordinary Course Motion on a final basis, and, in connection with such final hearing, authorize the Debtor to pay an additional $2.5 million in pre-petition Construction Law Claims.

68. By the Ordinary Course Motion, the Debtor does not request that the Court authorize the Debtor to pay any pre-petition claims other than the pre-petition Construction Law Claims. By the Ordinary Course Motion, the Debtor seeks authority to pay only those amounts that it determines, in the exercise of its business judgment, are necessary or appropriate to (a) avoid material disruption to the Debtor's collections of its receivables or other material disruption of its business operations, or (b) induce the Construction Law Claimants to continue performing and otherwise supporting the Debtor's ongoing projects. The Debtor intends to pay pre-petition Construction Law Claims only where it believes, in its business judgment, that the benefits to its estate from paying the Construction Law Claims will exceed the costs that its estate would incur by paying such claims, and only to the extent that the Debtor has cash sufficient to pay such claims.

69. On behalf of the Debtor, I respectfully submit that the Court should authorize the Debtor to pay the pre-petition Construction Law Claims as set forth in the Ordinary Course Motion, so that the Debtor may maintain its business operations and continue to pursue its efforts to maximize the value of its estate, through a sale of the Debtor's business as a going concern, for the benefit of the Debtor's creditors.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this 25th day of April 2023 at Perris, California.

James McGeever

# EXHIBIT 1

Main Document Page 28 of 46

# BVA/SILVER CREEK CORPORATE STRUCTURE

Jim McGeever
Managing Member
BVA
Construction LLC
(Delaware)
BVA Construction
Inc
(Delaware)
Jim McGeever
Managing member
Jim McGeever
Managing Member
100%
Silver Creek
Industries LLC
CA
100%
Silver Creek
Industries RS LLC
CA
Silver Creek
Leasing LLC
CA
100%

1

EXHIBIT 1 - PAGE 1

# EXHIBIT 2

## Silver Creek Industries LLC

## Consolidated Balance Sheet

| | Dec-22 | Mar-23 |
|---|---|---|
| **ASSETS** | | |
| **CURRENT ASSETS** | | |
| CASH IN BANK | (788,742) | 2,742,150 |
| INVESTMENT IN SECURITIES | - | - |
| UNREALIZED GAIN/LOSS - SECURITIES | - | - |
| Inventory Asset | 5,460,054 | 3,403,297 |
| Allowance - Obsolete Inventory | (1,944,490) | (1,944,490) |
| Global Purchases | - | - |
| Accounts Receivable | 25,430,437 | 15,549,048 |
| Retention Receivable | 9,922,642 | 6,607,184 |
| Allowance for Doubtful AR | (232,450) | (4,673,652) |
| Other Receivable | 15,967 | 15,967 |
| Employee Advance | - | - |
| Receivable PCW&COBRA | 886 | 53,807 |
| Note Receivable-PCW | - | - |
| Note Receivable-ParkerLaneTruckee | | |
| Revenue in Excess of Billings | 5,921,530 | 6,836,466 |
| Bid Deposits | - | - |
| Prepaid Insurance | 207,953 | (36,773) |
| Prepaid Income Taxes | 882,132 | (1,001) |
| Prepaid Rent | | |
| Prepaid Property Tax | - | 25,866 |
| Prepaid Expenses | | |
| Deposits - Other | 54,034 | 55,736 |
| Note Receivable-Hoffman | 1,000,000 | - |
| **TOTAL CURRENT ASSETS** | 45,929,954 | 28,633,605 |

| | | |
|---|---|---|
| **FIXED ASSETS** | | |
| Construction In Progress | - | - |
| Intangible Assets | 80,569,556 | 80,569,556 |
| Land | - | - |
| Vehicles - Trucks | - | - |
| Machinery & Equipment | - | - |
| Tools | - | - |
| Computers & Office Equipment | - | - |
| Tenant Improvements | 308,645 | 308,645 |
| Tenant Improvements - Restroom | - | - |
| **Accumulated Depreciation** | (150,289) | (162,612) |
| **Accumulated Amortization** | (18,928,267) | (19,317,117) |
| **NET FIXED ASSETS** | 61,799,645 | 61,398,472 |
| | | |
| **RGHT OF USE-OPERATING LEASES** | | |
| Operating Leases - ROU | 2,912,766 | 2,912,766 |
| Asset Amortization - ROU | (543,861) | (685,218) |
| **NET ROU OPERATING LEASES** | 2,368,905 | 2,227,547 |
| | | |
| Investment in Archway Captive | 36,000 | 36,000 |
| Investment-Union Holdings LLC | 196,934 | 196,934 |
| CIT MMA 12504 | 860,886 | 862,266 |
| Note Receivable-ParkerLaneTruckee LT | | |
| Escrow Deposit-National | | - |
| Promissory Note-Silver Creek RS | | |
| Affiliate Loan LT | | |
| Investment in Subsidiary | | |
| | | |
| **TOTAL ASSETS** | 111,192,325 | 93,354,824 |

| LIABILITIES & STOCKHOLDERS' EQUITY | | |
|---|---|---|
| **CURRENT LIABILITIES** | | |
| Accounts Payable - Trade | 18,971,291 | 11,711,443 |
| Refundable Deposits | 1,250,000 | 1,250,000 |
| Retention Payable | 3,622,960 | 3,142,312 |
| ACCRUED PAYROLL EXPENSES | 1,579,543 | 1,729,742 |
| Credit Card Clearing Acct | - | (41,209) |
| Billings in Excess of Revenue | 11,762,828 | 4,696,130 |
| Deferred Revenue-Value Adj | (1,666,000) | (1,666,000) |
| Accum Amort-Deferred Revenue | 1,666,000 | 1,666,000 |
| Accrued Current Liabilities | 9,933,979 | 11,006,995 |
| Short Term Lease Liability | 540,518 | 540,518 |
| Sales tax Payable | 196,095 | 590,372 |
| Accrued Commissions | 66,237 | 66,237 |
| COBRA Premium | - | - |
| Employee Medical | - | - |
| Employee Dental | - | - |
| Income Tax Payable | - | - |
| Insurance Payable | - | - |
| Banner Bank - SBA PPP Loan | - | - |
| Affiliate Loan Liab | | |
| Note Payable-SC Leasing | 3,000,000 | 3,000,000 |
| Note Payable-Silver Creek RS | | 800,000 |
| Deferred Tax Liability | - | - |
| Accrued Interest Payable | 648,603 | 1,517,635 |
| Note Payable -Member Interest | 10,000,000 | 10,000,000 |
| Line of Credit | | |
| **TOTAL CURRENT LIABILITIES** | 61,572,053 | 50,010,177 |
| | | |
| **LONG TERM LIABILITIES** | | |
| CIT Loan Payable | 46,382,336 | 46,382,336 |
| Shareholder Loan | | 250,000 |
| Prepaid Loan Fees | (792,987) | (721,973) |
| Long Term Lease Liability | 1,828,387 | 1,828,387 |
| **TOTAL LONG TERM LIABILITIES** | 47,417,737 | 47,738,751 |
| | | |
| **TOTAL LIABILITIES** | 108,989,790 | 97,748,927 |

| | | |
|---|---|---|
| **STOCKHOLDERS' EQUITY** | | |
| Contributions to BVA | 52,146,899 | 52,146,899 |
| Purchase BVA Member Interests | (10,000,000) | (10,000,000) |
| Fixed Asset Contributions | | |
| Net Distributions-BVA | (461,074) | (461,074) |
| Retained Earnings | (8,452,004) | (39,483,290) |
| Net Distributions-BVA | | |
| Comprehensive Income/Loss | (0) | (0) |
| CURRENT PERIOD INCOME | (31,031,287) | (6,596,637) |
| **TOTAL STOCKHOLDERS' EQUITY** | 2,202,534 | (4,394,103) |
| | | |
| **TOTAL LIABILITIES & STOCKHOLDERS' EQUITY** | 111,192,325 | 93,354,824 |

EXHIBIT 3

**Silver Creek/Webb Investments**

**Purchase Pursuant to Section 363 of Substantially All of the Debtor's and Affiliates' Assets Yielding a Minimum $15.7 Million to the Estate**

---

**Debtor/Seller:** Silver Creek Industries LLC, a California limited liability company (the "**Debtor**"), as debtor and debtor in possession in proceedings (the "**Bankruptcy Case**") under chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**") to be filed in the United States Bankruptcy Court for the Central District of California (the "**Bankruptcy Court**"). The date of commencement of the Bankruptcy Case will be referred to herein as the "**Petition Date.**"

**Other Sellers:** Silver Creek Leasing LLC, a California limited liability company and Silver Creek Industries RS LLC, a California limited liability company (the "**Other Sellers**") shall not file Chapter 11 bankruptcy petitions but shall also be "Sellers" under the Asset Purchase Agreement. The Debtor and Other Sellers are referred to herein as the "**Sellers**".

**Stalking Horse Purchaser:** Silver Creek Modular, LLC, a California limited liability company (the "**Stalking Horse Purchaser**") and wholly-owned subsidiary of Webb Investments Co., LLC.

**363 Sale Process** It is anticipated that on or before May 3, 2023, the Debtor will file a motion to commence a public sale process (an "**Auction**") for (a) substantially all of the assets of the Debtor (including all accounts receivable, investment property, inventory, intellectual property, general intangibles, contracts and leases specifically assumed, vehicles and equipment) free and clear of all claims and interests (except for claims specifically assumed) by no later than *June 2, 2023* (the "**Termination Date**") pursuant to Section 363 of the Bankruptcy Code and (b) the assets of the Other Sellers (collectively with the assets in (a) hereof, the "**Purchased Assets**"), whose leases and contractual arrangements shall be terminated without need to pay any cure (the "**Sale**"). In connection with the Sale, the Stalking Horse Purchaser shall serve as lead bidder and stalking horse for the Purchased Assets under an asset purchase agreement in form and substance satisfactory to Stalking Horse Purchaser (the "**Asset Purchase Agreement**") for the Purchase Price (defined below). It shall be a condition to the Stalking Horse Purchaser's bid that First-Citizens Bank & Trust, as Lender and as Administrative Agent for MS Facilities LLC (the "**Lender**"), any other party holding a valid lien on the Other Seller's assets) will release its/their liens on the assets of the Other Sellers.

**Purchase Price** The "**Purchase Price**" to be paid at closing is not less than $15,700,000 and consists of the sum of (a) a 13,000,000 cash payment; (b) $200,000 for Cure Costs (as defined below); and (c) $2,500,000 to be allocated solely to amounts owed to subcontractors, vendors, materialmen and comparable claimants whose claims, in the absence of payment, would give rise to surety bond claims, lien claims, stop

notice, set-off claims or comparable claims pertaining to work done by such parties subsequent to the Petition Date (the "**Construction Law Obligation**"). The $13,000,000 cash payment shall be allocated to the Purchased Assets pursuant to the terms of the Asset Purchase Agreement. A $750,000 security deposit to be applied toward the Purchase Price at closing will be paid upon the execution of the Asset Purchase Agreement.

| | |
|---|---|
| **Bid Procedures and Bid Protections** | The Bid Procedures for the Sale shall be acceptable to the Stalking Horse Purchaser and shall provide for, among other things, (i) payment of a break-up fee in the amount equal to $425,000 or 2.7% of the Purchase Price (the "**Break-Up Protection**"), payable upon and earned in the event of a termination by Asset Purchase Agreement because any of the Sellers implement an alternative transaction, (ii) a minimum overbid of the amount of the Purchase Price, including the obligation to honor the Construction Law Obligation, *plus* the Break-Up Protection, *plus* $100,000 for alternative bids, (iii) a requirement that alternative bids to be qualified will not have any financing conditions and be no less favorable to the estate than the terms of the Asset Purchase Agreement, (iv) bids to allocate the Purchase Price in a manner set forth in the Asset Purchase Agreement, (v) bids to be submitted no later than the bid deadline to be negotiated in the Asset Purchase Agreement with an auction to be held (if there are alternative qualified bids) no later than May 31, 2023 ("**Auction Deadline**"), (vi) if there are alternative qualified bids, an open auction process with full opportunity for the Stalking Horse Purchaser to raise its bid and include as a credit the Break-Up Protection in any subsequent bids no later than the Auction Deadline, (vii) closing of the Sale to occur on or before June 2, 2023 and (vii) the selection of the most favorable and best transaction (collectively, the "**Bid Procedures**"). |
| **Excluded Assets:** | The Stalking Horse Purchaser shall not purchase (a) Avoidance Actions, besides those related to the vendors/counterparties with whom Stalking Horse Purchaser will continue to do business, (b) litigation claims not related to the Purchased Assets, (c) cash, (d) insurance claims for assets not related to the Purchased Assets and (e) tax refunds (including ERCT claim). |
| **Assumed Liabilities:** | (a) trailing contractual liabilities for contracts to be assumed, which include all amounts owed to subcontractors, vendors, materialmen and comparable claimants whose claims, in the absence of payment, would give rise to surety bond claims, lien claims, stop notice, set-off claims or comparable claims ("**Construction Law Liabilities**"), (b) up to $200,000 (the "**Cure Costs**") in connection with contractual liabilities for contracts to be assumed, which do not include amounts owed to subcontractors, vendors, materialmen and comparable claimants whose claims, in the absence of payment, would give rise to surety bond claims, lien claims, stop notice set-off claims or comparable claims, and (c) employee liabilities for accrued vacation time, PTO and sick days.<br><br>The Assumed Liabilities shall also include an undertaking of the Stalking Horse Purchaser to honor the remaining warranty obligations for both residential and commercial projects; provided that the liability for residential projects shall not exceed $100,000. |
| **Contingencies:** | This bid is contingent on finalization of definitive documentation and court approval, and on Debtor obtaining a determination from the Bankruptcy Court that |

| | |
|---|---|
| | no consent is required to Stalking Horse Purchaser's ability to assume contracts with municipalities/schools/government entities that Stalking Horse Purchaser has selected for assumption, to the extent such entities object to assumption based upon their assertion that their consent is required. This bid is further contingent on the Lender (and any other secured creditor with valid liens) releasing its/their liens on the assets of the Other Sellers at closing. Finally, this bid is contingent on the closing of a going concern business occurring on or before June 2, 2023. |
| **Assumption Procedures** | The Bid Procedures shall provide for the Debtor to give overnight notice to contract counterparties of the Debtor's estimate of the applicable cure costs for any executory contract and unexpired lease and establish a mechanism for contract counterparties to object to assumption and assignment of their respective contract or unexpired lease. The Bid Procedures shall allow the Stalking Horse Purchaser through and including the Auction Deadline to determine which executory contract and/or unexpired lease to assume or reject. Finally, the Bid Procedures shall provide that Auction shall occur on or before May 31, 2023, and the closing must occur by no later than June 2, 2023. |
| **Exclusivity:** | By executing this term sheet, the Sellers agrees that, during the period starting with the date of execution of this Terms Sheet until the Bid Procedures are approved (the "**Exclusivity Period**"), the Sellers shall not, directly or indirectly (including through any affiliate, employee, officer, director, shareholder, partner, member, trustee, agent or any other person acting on its behalf or at its direction) accept any offer from any other person, concerning a financing or restructuring of the Debtor, or a possible sale of all or any portion of the Debtor's assets or securities (debt or equity), whether structured in the form of a sale of assets, a plan of reorganization, a sale or issuance of stock, or a merger, consolidation, recapitalization, business combination, loan or otherwise. The Sellers may, however, solicit bids in accordance with the Bid Procedures. |
| **Governing Law:** | Federal bankruptcy law and the laws of the State of California. |

**SILVER CREEK MODULAR, LLC**

By: ______________________________

Signature: ______________________________

Title: ______________________________

Date: ______________________________

23950121.5
240371-10004

Accepted and Approved:

**SILVER CREEK INDUSTRIES LLC**

By: ______________________________

Signature: ______________________________

Title: ______________________________

Date: ______________________________

**SILVER CREEK LEASING LLC**

By: ______________________________

Signature: ______________________________

Title: ______________________________

Date: ______________________________

**SILVER CREEK INDUSTRIES RS LLC**

By: ______________________________

Signature: ______________________________

Title: ______________________________

Date: ______________________________

EXHIBIT 4

| | 4/24/2023 | 5/1/2023 | 5/8/2023 | 5/15/2023 | 5/22/2023 | 5/29/2023 | 6/5/2023 | 6/12/2023 | 6/19/2023 | 6/26/2023 | 7/3/2023 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cash Balance | 742,853 | 991,561 | 411,010 | 40,825 | 475,315 | (296,452) | (560,767) | (1,763,692) | (2,439,532) | (2,509,183) | (2,245,935) |
| | | | | | | | | | | | |
| Accounts receivable collections | 492,312 | 768,435 | 86,000 | 1,904,448 | 335,362 | 848,087 | 1,254,569 | 284,264 | 411,286 | 921,806 | 268,000 |
| Collections on new billings | 152,635 | 14,099 | 81,289 | 500,000 | - | 729,824 | 451,898 | 832,657 | 303,428 | 593,115 | 23,225 |
| | 644,947 | 782,534 | 167,289 | 2,404,448 | 335,362 | 1,577,912 | 1,706,468 | 1,116,921 | 714,714 | 1,514,921 | 291,225 |
| | | | | | | | | | | | |
| **Suppliers and Subs** | | | | | | | | | | | |
| Existing AP direct to Job | - | 303,956 | 184,795 | 230,256 | 752,669 | 250,988 | 923,462 | 513,337 | 351,351 | 83,123 | 600,646 |
| AP for ongoing Jobs | 340,865 | 308,291 | 111,063 | 467,988 | 299,710 | 935,667 | 254,231 | 487,944 | 316,976 | 505,875 | 877,611 |
| Material supplier list | - | 13,412 | 11,866 | 626,913 | - | - | 1,186,950 | 144,518 | 61,287 | 15,713 | 41,202 |
| | 340,865 | 625,659 | 307,723 | 1,325,157 | 1,052,379 | 1,186,655 | 2,364,643 | 1,145,799 | 729,614 | 604,711 | 1,519,459 |
| | | | | | | | | | | | |
| **Headcount Related** | | | | | | | | | | | |
| Payroll | - | 451,696 | - | 451,696 | - | 459,540 | - | 456,271 | - | 456,271 | - |
| Overtime | - | 27,102 | - | 27,102 | - | 27,572 | - | 27,376 | - | 27,376 | - |
| Payroll taxes | - | 40,653 | - | 40,653 | - | 41,359 | - | 41,064 | - | 41,064 | - |
| Training fees | - | 1,350 | - | 1,350 | - | 1,350 | - | 1,350 | - | 1,350 | - |
| HealthCare | - | 64,750 | - | 64,750 | - | 66,500 | - | 66,150 | - | 66,150 | - |
| Cell Phones | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| Car Allowance | | 4,500 | | 4,500 | | 4,500 | | | | | |
| Fuel - Cards | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 |
| Commisions | | | | | | | | | | | |
| **Headcount Related** | 11,500 | 601,551 | 11,500 | 601,551 | 11,500 | 612,322 | 11,500 | 603,712 | 11,500 | 603,712 | 11,500 |
| | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | |
| Rent | | 52,000 | | | | | 52,000 | | | | 52,000 |
| Internet/tech support | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| JR tech | 1,875 | 1,875 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 |
| Office supplies/postage | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| Insurance | | | | | | | | | | | |
| Gas & Electric | | 25,000 | | | | | 25,000 | | | | 25,000 |
| Water, Sewer & Trash | | 15,000 | | | | | 15,000 | | | | 15,000 |
| | 3,875 | 95,875 | 3,250 | 3,250 | 3,250 | 3,250 | 95,250 | 3,250 | 3,250 | 3,250 | 95,250 |
| | | | | | | | | | | | |
| **Other** | | | | | | | | | | | |
| Sales Tax | | | | | | | 30,000 | | | | |
| Debtor's counsel | | | 100,000 | | | | 100,000 | | | | |
| Debtor's financial consultant | | | 75,000 | | | | 75,000 | | | | |
| Committee counsel | | | | | | | 75,000 | | | | |
| U.S. Trustee Fees | | | | | | | 18,000 | | | | |
| Insurance | | | | | | | 100,000 | | | | |
| Temp Services | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Workers comp audit | | | | | | | | | | | |
| Bonds | | | | | | | | | | | |
| Fuel - RS | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| Misc | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 | 15,000 |
| Travel | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| | 40,000 | 40,000 | 215,000 | 40,000 | 40,000 | 40,000 | 438,000 | 40,000 | 40,000 | 40,000 | 40,000 |
| | | | | | | | | | | | |
| **Cash Out** | **396,240** | **1,363,085** | **537,473** | **1,969,958** | **1,107,129** | **1,842,227** | **2,909,393** | **1,792,761** | **784,364** | **1,251,673** | **1,666,209** |
| | | | | | | | | | | | |
| AR | 16,580,461 | 19,697,248 | 19,611,249 | 17,706,802 | 17,674,869 | 18,191,783 | 16,937,214 | 16,652,952 | 16,241,667 | 18,019,863 | 17,751,864 |
| Cash | 742,853 | 991,561 | 411,010 | 40,825 | 475,315 | (296,452) | (560,767) | (1,763,692) | (2,439,532) | (2,509,183) | (2,245,935) |
| Inventory | 1,458,807 | 1,520,395 | 1,583,529 | 1,031,616 | 1,106,616 | 1,106,616 | 669,667 | 775,149 | 963,861 | 1,198,148 | 1,406,946 |
| | 18,782,122 | 22,209,204 | 21,605,788 | 18,779,243 | 19,256,801 | 19,001,947 | 17,046,114 | 15,664,408 | 14,765,996 | 16,708,828 | 16,912,874 |
| | | | | | | | | | | | |
| Payments for Construction Law | - | 303,956 | 184,795 | 230,256 | 752,669 | 250,988 | 923,462 | 513,337 | 351,351 | 83,123 | 600,646 |

# EXHIBIT 5

# Silver Creek Industries LLC

## Payroll Schedule for 5/5/2023

| Employee Code | Check Date | Hours | Regular Earnings | Overtime Earnings | Other Earnings | Prevailing Wage Adj | Life Insurance | Total Earnings | FIT Taxes | FICA | Other Taxes | Other Add-ons/ Deductions | Net Pay | 4-24-23 Pre Petition Amount | 4-24-23 Post Petition Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 00112 | 04/21/23 | 80.00 | 1,944.00 | | 216.00 | | | 2,160.00 | 109.63 | 162.18 | 36.72 | 40.03 | 1,811.44 | 1,080.00 | 1,080.00 |
| 00118 | 04/21/23 | 83.75 | 1,581.25 | 140.64 | 418.75 | | | 2,140.64 | 87.07 | 160.45 | 29.61 | 43.26 | 1,820.25 | 1,070.32 | 1,070.32 |
| 00124 | 04/21/23 | 80.00 | 2,692.31 | | | | | 2,692.31 | 96.58 | 202.89 | 59.01 | 40.03 | 2,293.80 | 1,346.16 | 1,346.16 |
| 00127 | 04/21/23 | 80.00 | 1,548.00 | | 172.00 | | | 1,720.00 | 44.52 | 128.22 | 15.31 | 44.00 | 1,487.95 | 860.00 | 860.00 |
| 00129 | 04/21/23 | 89.50 | 1,377.76 | 559.95 | 320.00 | 267.49 | | 2,525.20 | 131.55 | 188.41 | 66.75 | 62.29 | 2,076.20 | 1,262.60 | 1,262.60 |
| 00136 | 04/21/23 | 89.50 | 3,495.38 | 328.11 | | 1,467.77 | | 5,291.26 | 380.02 | 397.45 | 181.43 | 1,248.75 | 3,083.61 | 2,645.63 | 2,645.63 |
| 00138 | 04/21/23 | 80.00 | 1,410.00 | | 190.00 | | | 1,600.00 | 53.46 | 122.40 | 18.88 | 0.00 | 1,405.26 | 800.00 | 800.00 |
| 00182 | 04/21/23 | 96.75 | 1,720.00 | 421.94 | 86.00 | | | 2,227.94 | 117.78 | 167.38 | 40.32 | 40.03 | 1,862.43 | 1,113.97 | 1,113.97 |
| 00183 | 04/21/23 | 48.00 | 1,152.00 | | | | | 1,152.00 | | 85.06 | 10.01 | 40.03 | 1,016.90 | 576.00 | 576.00 |
| 00184 | 04/21/23 | 79.50 | 1,501.50 | 252.00 | | | | 1,753.50 | 49.58 | 134.14 | 35.49 | 0.00 | 1,534.29 | 876.75 | 876.75 |
| 00186 | 04/21/23 | 80.00 | 760.00 | | 760.00 | | | 1,520.00 | 28.92 | 116.28 | 13.68 | 0.00 | 1,361.12 | 760.00 | 760.00 |
| 00200 | 04/21/23 | 80.00 | 1,152.00 | | 288.00 | | | 1,440.00 | 54.00 | 110.16 | 19.85 | 0.00 | 1,255.99 | 720.00 | 720.00 |
| 00219 | 04/21/23 | 134.00 | 1,656.00 | 483.00 | 1,104.00 | | | 3,243.00 | 278.42 | 244.47 | 107.54 | 47.23 | 2,565.34 | 1,621.50 | 1,621.50 |
| 00226 | 04/21/23 | 86.00 | 1,840.00 | 207.00 | | | | 2,047.00 | 75.07 | 153.53 | 27.09 | 40.03 | 1,751.28 | 1,023.50 | 1,023.50 |
| 00335 | 04/21/23 | 80.00 | 1,640.00 | | | | | 1,640.00 | 97.09 | 120.68 | 32.52 | 62.29 | 1,327.42 | 820.00 | 820.00 |
| 00357 | 04/21/23 | 80.00 | 1,755.00 | | 45.00 | | | 1,800.00 | 71.56 | 136.26 | 42.26 | 19.03 | 1,530.89 | 900.00 | 900.00 |
| 00389 | 04/21/23 | 92.25 | 2,425.50 | 690.36 | 176.00 | 1,069.96 | | 4,361.82 | 353.52 | 330.32 | 175.75 | 44.00 | 3,458.23 | 2,180.91 | 2,180.91 |
| 00394 | 04/21/23 | 80.00 | 3,276.93 | | | | | 3,276.93 | 379.86 | 247.08 | 174.46 | 197.23 | 2,278.30 | 1,638.47 | 1,638.47 |
| 00397 | 04/21/23 | 80.00 | 2,012.31 | | 503.08 | | | 2,515.39 | 242.01 | 187.66 | 119.46 | 62.29 | 1,903.97 | 1,257.70 | 1,257.70 |
| 00398 | 04/21/23 | 80.00 | 1,520.00 | | 80.00 | | | 1,600.00 | 65.67 | 119.09 | 23.47 | 380.26 | 1,011.51 | 800.00 | 800.00 |
| 00399 | 04/21/23 | 82.75 | 2,320.00 | 119.64 | | | | 2,439.64 | 179.49 | 183.32 | 60.33 | 43.26 | 1,973.24 | 1,219.82 | 1,219.82 |
| 00400 | 04/21/23 | 80.50 | 1,440.00 | 13.50 | | | | 1,453.50 | 30.61 | 104.93 | 29.57 | 81.99 | 1,206.40 | 726.75 | 726.75 |
| 00402 | 04/21/23 | 80.00 | 2,961.54 | | | | | 2,961.54 | 157.01 | 205.04 | 60.49 | 281.32 | 2,257.68 | 1,480.77 | 1,480.77 |
| 00455 | 04/21/23 | 90.75 | 1,520.00 | 306.40 | | | | 1,826.40 | 108.42 | 136.11 | 36.28 | 47.23 | 1,498.36 | 913.20 | 913.20 |
| 00483 | 04/21/23 | 87.75 | 1,512.00 | 244.14 | 168.00 | | | 1,924.14 | 120.74 | 138.42 | 53.76 | 314.78 | 1,296.44 | 962.07 | 962.07 |
| 00484 | 04/21/23 | 80.00 | 2,846.16 | | | | | 2,846.16 | 146.80 | 211.18 | 58.82 | 85.63 | 2,343.73 | 1,423.08 | 1,423.08 |
| 00510 | 04/21/23 | 80.00 | 10,384.62 | | 1,153.85 | | 29.30 | 11,567.77 | 2,856.89 | 876.16 | 1,116.63 | 144.08 | 6,574.01 | 5,783.89 | 5,783.89 |
| 00517 | 04/21/23 | 80.00 | 3,846.16 | | | | | 3,846.16 | 436.68 | 290.62 | 210.76 | 1,066.23 | 1,841.87 | 1,923.08 | 1,923.08 |
| 00519 | 04/21/23 | 81.00 | 1,571.76 | 30.75 | 164.00 | 93.04 | | 1,859.55 | 75.09 | 138.95 | 25.59 | 43.26 | 1,576.66 | 929.78 | 929.78 |
| 00524 | 04/21/23 | 80.00 | 1,917.00 | | 243.00 | | | 2,160.00 | 169.17 | 162.18 | 54.49 | 40.03 | 1,734.13 | 1,080.00 | 1,080.00 |
| 00528 | 04/21/23 | 83.25 | 1,663.75 | 134.09 | 536.25 | | | 2,334.09 | | 172.28 | 61.50 | 81.99 | 2,018.32 | 1,167.05 | 1,167.05 |
| 00529 | 04/21/23 | 77.00 | 3,611.78 | 259.12 | | 1,656.32 | | 5,527.22 | | 419.53 | 262.64 | 708.01 | 4,137.04 | 2,763.61 | 2,763.61 |
| 00534 | 04/21/23 | 81.50 | 2,185.00 | 79.50 | | 280.42 | | 2,544.92 | 214.97 | 191.37 | 74.72 | 43.26 | 2,020.60 | 1,272.46 | 1,272.46 |
| 00536 | 04/21/23 | 80.00 | 1,680.00 | | | | | 1,680.00 | 57.14 | 125.21 | 37.79 | 43.26 | 1,416.60 | 840.00 | 840.00 |
| 00549 | 04/21/23 | 80.00 | 5,576.93 | | | | 15.23 | 5,592.16 | 776.58 | 397.45 | 342.75 | 1,112.04 | 2,963.34 | 2,796.08 | 2,796.08 |
| 00553 | 04/21/23 | 80.00 | 1,232.00 | | 528.00 | | | 1,760.00 | | 131.03 | 15.41 | 47.23 | 1,566.33 | 880.00 | 880.00 |
| 00555 | 04/21/23 | 51.75 | 978.50 | 7.13 | | | | 985.63 | | 72.33 | 16.71 | 40.03 | 856.56 | 492.82 | 492.82 |
| 00558 | 04/21/23 | 80.00 | 5,384.62 | | | | | 5,384.62 | 592.14 | 376.67 | 255.02 | 860.79 | 3,300.00 | 2,692.31 | 2,692.31 |
| 00565 | 04/21/23 | 15.25 | 1,372.50 | | | | | 1,372.50 | | 104.99 | 0.18 | 0.00 | 1,267.33 | 686.25 | 686.25 |
| 00570 | 04/21/23 | 80.00 | 7,692.31 | | | | 2.30 | 7,694.61 | 1,477.66 | 588.63 | 686.72 | 2.30 | 4,939.30 | 3,847.31 | 3,847.31 |
| 00616 | 04/21/23 | 120.00 | 1,740.00 | 1,110.00 | | | | 2,850.00 | 160.03 | 194.31 | 58.98 | 310.02 | 2,126.66 | 1,425.00 | 1,425.00 |
| 00627 | 04/21/23 | 80.00 | 3,269.24 | | | | | 3,269.24 | 287.23 | 250.09 | 113.05 | 0.00 | 2,618.87 | 1,634.62 | 1,634.62 |
| 00630 | 04/21/23 | 80.00 | 2,080.00 | | | | | 2,080.00 | 40.18 | 155.81 | 33.94 | 43.26 | 1,806.81 | 1,040.00 | 1,040.00 |
| 00631 | 04/21/23 | 80.00 | 1,472.00 | | 368.00 | | | 1,840.00 | 115.72 | 140.76 | 38.17 | 0.00 | 1,545.35 | 920.00 | 920.00 |
| 00632 | 04/21/23 | 80.00 | 3,038.47 | | | | | 3,038.47 | 399.40 | 217.09 | 158.02 | 200.73 | 2,063.23 | 1,519.24 | 1,519.24 |
| 00657 | 04/21/23 | 86.00 | 2,240.00 | 252.00 | | | | 2,492.00 | 147.88 | 186.56 | 53.62 | 53.29 | 2,050.65 | 1,246.00 | 1,246.00 |
| 00668 | 04/21/23 | 64.00 | 3,360.00 | | 480.00 | | | 3,840.00 | 547.13 | 293.76 | 269.57 | 0.00 | 2,729.54 | 1,920.00 | 1,920.00 |
| 00669 | 04/21/23 | 80.00 | 1,320.00 | | | | | 1,320.00 | 128.00 | 97.37 | 34.12 | 47.23 | 1,013.28 | 660.00 | 660.00 |
| 00671 | 04/21/23 | 80.00 | 4,038.47 | | | | | 4,038.47 | 544.09 | 304.19 | 269.39 | 212.29 | 2,708.51 | 2,019.24 | 2,019.24 |
| 00679 | 04/21/23 | 80.00 | 2,692.31 | | | | | 2,692.31 | 113.97 | 202.89 | 47.17 | 40.03 | 2,288.25 | 1,346.16 | 1,346.16 |
| 00711 | 04/21/23 | 33.50 | 3,076.93 | | | | | 3,076.93 | 231.77 | 201.79 | 111.94 | 439.09 | 2,092.34 | 1,538.47 | 1,538.47 |
| 00718 | 04/21/23 | 80.00 | 1,104.00 | | 736.00 | | | 1,840.00 | 123.77 | 137.69 | 47.52 | 40.03 | 1,490.99 | 920.00 | 920.00 |
| 00723 | 04/21/23 | 80.00 | 4,423.08 | | | | | 4,423.08 | 670.03 | 322.58 | 305.59 | 206.27 | 2,918.61 | 2,211.54 | 2,211.54 |
| 00740 | 04/21/23 | 82.25 | 1,520.00 | 64.14 | | | | 1,584.14 | 149.93 | 116.41 | 47.33 | 62.29 | 1,208.18 | 792.07 | 792.07 |
| 00746 | 04/21/23 | 114.75 | 2,000.00 | 1,303.14 | | | | 3,303.14 | 77.65 | 252.69 | 102.25 | 0.00 | 2,870.55 | 1,651.57 | 1,651.57 |

| Employee Code | Check Date | Hours | Regular Earnings | Overtime Earnings | Other Earnings | Prevailing Wage Adj | Life Insurance | Total Earnings | FIT Taxes | FICA | Other Taxes | Other Add-ons/ Deductions | Net Pay | 4-24-23 Pre Petition Amount | 4-24-23 Post Petition Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 00774 | 04/21/23 | 98.00 | 1,836.00 | 648.00 | 84.00 | | | 2,568.00 | 164.41 | 191.73 | 63.12 | 61.73 | 2,087.01 | 1,284.00 | 1,284.00 |
| 00778 | 04/21/23 | 71.00 | 1,684.20 | 204.77 | 312.00 | 697.80 | | 2,898.77 | | 221.75 | 83.92 | 0.00 | 2,593.10 | 1,449.39 | 1,449.39 |
| 00821 | 04/21/23 | 104.00 | 2,395.20 | 893.76 | | 1,176.00 | | 4,464.96 | 678.56 | 337.96 | 179.52 | 47.23 | 3,221.69 | 2,232.48 | 2,232.48 |
| 00822 | 04/21/23 | 80.00 | 3,846.16 | | | | | 3,846.16 | 609.76 | 290.61 | 264.49 | 104.75 | 2,576.55 | 1,923.08 | 1,923.08 |
| 00824 | 04/21/23 | 86.25 | 1,968.75 | 234.38 | 31.25 | | | 2,234.38 | 123.36 | 170.93 | 60.56 | 0.00 | 1,879.53 | 1,117.19 | 1,117.19 |
| 00830 | 04/21/23 | 52.00 | 4,153.90 | 519.23 | | | 9.92 | 4,683.05 | 678.69 | 349.47 | 329.28 | 274.70 | 3,050.91 | 2,341.53 | 2,341.53 |
| 00840 | 04/21/23 | 82.00 | 1,440.00 | 60.00 | 160.00 | | | 1,660.00 | 89.32 | 123.93 | 31.35 | 40.03 | 1,375.37 | 830.00 | 830.00 |
| 00860 | 04/21/23 | 82.75 | 2,240.00 | 115.50 | | | | 2,355.50 | 125.98 | 164.41 | 61.86 | 206.27 | 1,796.98 | 1,177.75 | 1,177.75 |
| 00882 | 04/21/23 | 90.25 | 1,600.00 | 307.50 | | | | 1,907.50 | | 141.16 | 16.61 | 62.29 | 1,687.44 | 953.75 | 953.75 |
| 00883 | 04/21/23 | 80.00 | 1,512.00 | | 168.00 | | | 1,680.00 | 61.46 | 128.52 | 39.13 | 0.00 | 1,450.89 | 840.00 | 840.00 |
| 00892 | 04/21/23 | 80.00 | 2,838.47 | | 315.38 | | | 3,153.85 | 219.92 | 232.48 | 180.43 | 114.78 | 2,406.24 | 1,576.93 | 1,576.93 |
| 00902 | 04/21/23 | 80.00 | 1,248.00 | | 312.00 | | | 1,560.00 | 49.46 | 119.34 | 17.64 | 0.00 | 1,373.56 | 780.00 | 780.00 |
| 00929 | 04/21/23 | 82.00 | 1,548.00 | 64.50 | 172.00 | | | 1,784.50 | 117.25 | 133.15 | 54.90 | 44.00 | 1,435.20 | 892.25 | 892.25 |
| 00932 | 04/21/23 | 94.00 | 3,592.55 | 537.32 | | 1,471.65 | | 5,601.52 | 550.15 | 395.96 | 250.36 | 725.51 | 3,679.54 | 2,800.76 | 2,800.76 |
| 00939 | 04/21/23 | 84.00 | 1,840.00 | 138.00 | | | | 1,978.00 | 126.52 | 151.32 | 36.52 | 0.00 | 1,663.64 | 989.00 | 989.00 |
| 00974 | 04/21/23 | 86.25 | 1,800.00 | 210.94 | | | | 2,010.94 | 164.12 | 150.77 | 66.26 | 40.03 | 1,589.76 | 1,005.47 | 1,005.47 |
| 00979 | 04/21/23 | 80.00 | 3,557.70 | | | | | 3,557.70 | 159.69 | 249.99 | 68.12 | 689.76 | 2,390.14 | 1,778.85 | 1,778.85 |
| 00979 | 04/21/23 | | | | 10,000.00 | | | 10,000.00 | 2,200.00 | 765.00 | 788.21 | 0.00 | 6,246.79 | 5,000.00 | 5,000.00 |
| 01026 | 04/21/23 | 80.00 | 2,480.00 | | | | | 2,480.00 | 139.06 | 180.94 | 49.72 | 114.78 | 1,995.50 | 1,240.00 | 1,240.00 |
| 01050 | 04/21/23 | 83.00 | 1,600.00 | 90.00 | | | | 1,690.00 | | 129.29 | 15.21 | 0.00 | 1,545.50 | 845.00 | 845.00 |
| 01053 | 04/21/23 | 16.00 | 332.00 | | | | | 332.00 | | 21.78 | 2.56 | 47.23 | 260.43 | 166.00 | 166.00 |
| 01067 | 04/21/23 | 4.50 | 170.91 | | | | | 170.91 | | 13.07 | 1.54 | 0.00 | 156.30 | 85.46 | 85.46 |
| 01067 | 04/21/23 | -4.50 | -170.91 | | | | | -170.91 | | -13.07 | -1.54 | 0.00 | -156.30 | -85.46 | -85.46 |
| 01067 | 04/21/23 | 4.50 | 170.91 | | | | | 170.91 | | 13.07 | 1.54 | 0.00 | 156.30 | 85.46 | 85.46 |
| 01084 | 04/21/23 | 80.00 | 1,920.00 | | | | | 1,920.00 | | 146.88 | 17.28 | 0.00 | 1,755.84 | 960.00 | 960.00 |
| 01109 | 04/21/23 | 80.00 | 1,672.00 | | 88.00 | | | 1,760.00 | 64.67 | 130.98 | 22.36 | 47.88 | 1,494.11 | 880.00 | 880.00 |
| 01145 | 04/21/23 | 72.00 | 2,986.56 | | | 1,764.00 | | 4,750.56 | 798.13 | 363.43 | 365.00 | 0.00 | 3,224.00 | 2,375.28 | 2,375.28 |
| 01147 | 04/21/23 | 80.00 | 1,404.00 | | 156.00 | | | 1,560.00 | | 116.04 | 13.65 | 43.26 | 1,387.05 | 780.00 | 780.00 |
| 01167 | 04/21/23 | 45.50 | 840.00 | 173.26 | | | | 1,013.26 | 29.98 | 77.51 | 22.74 | 124.03 | 759.00 | 506.63 | 506.63 |
| 01211 | 04/21/23 | 90.00 | 3,125.30 | 553.32 | | 1,186.20 | | 4,864.82 | 415.94 | 351.65 | 208.73 | 268.06 | 3,620.44 | 2,432.41 | 2,432.41 |
| 01218 | 04/21/23 | 80.00 | 1,840.00 | | | | | 1,840.00 | 15.23 | 137.28 | 24.91 | 45.44 | 1,617.14 | 920.00 | 920.00 |
| 01250 | 04/21/23 | 86.25 | 1,680.00 | 196.88 | | | | 1,876.88 | 147.39 | 140.11 | 67.64 | 45.44 | 1,476.30 | 938.44 | 938.44 |
| 01255 | 04/21/23 | 80.00 | 3,076.93 | | | | | 3,076.93 | 399.73 | 230.62 | 170.76 | 72.29 | 2,203.53 | 1,538.47 | 1,538.47 |
| 01262 | 04/21/23 | 80.00 | 2,139.75 | | 20.25 | | | 2,160.00 | 134.28 | 165.24 | 44.77 | 0.00 | 1,815.71 | 1,080.00 | 1,080.00 |
| 01276 | 04/21/23 | 80.00 | 2,299.20 | | 200.00 | 980.00 | | 3,479.20 | 86.72 | 245.65 | 96.85 | 268.06 | 2,781.92 | 1,739.60 | 1,739.60 |
| 01277 | 04/21/23 | 90.00 | 1,332.00 | 518.00 | | | | 1,850.00 | 136.77 | 141.52 | 44.40 | 0.00 | 1,527.31 | 925.00 | 925.00 |
| 01294 | 04/21/23 | 115.50 | 1,600.00 | 1,100.00 | | | | 2,700.00 | 218.92 | 206.55 | 79.31 | 0.00 | 2,195.22 | 1,350.00 | 1,350.00 |
| 01350 | 04/21/23 | 80.00 | 1,920.00 | | | | | 1,920.00 | 31.45 | 143.53 | 16.88 | 44.00 | 1,684.14 | 960.00 | 960.00 |
| 01364 | 04/21/23 | 80.00 | 1,680.00 | | | | | 1,680.00 | 24.85 | 113.17 | 13.31 | 200.73 | 1,327.94 | 840.00 | 840.00 |
| 01371 | 04/21/23 | 80.00 | 2,861.12 | | | 1,690.50 | | 4,551.62 | 367.06 | 313.64 | 169.43 | 451.74 | 3,249.75 | 2,275.81 | 2,275.81 |
| 01376 | 04/21/23 | 94.00 | 1,880.00 | 211.50 | 188.00 | | | 2,279.50 | 121.30 | 169.62 | 41.87 | 62.29 | 1,884.42 | 1,139.75 | 1,139.75 |
| 01388 | 04/21/23 | 80.00 | 2,461.76 | | | 906.50 | | 3,368.26 | | 257.67 | 96.78 | 0.00 | 3,013.81 | 1,684.13 | 1,684.13 |
| 01423 | 04/21/23 | 80.00 | 6,057.69 | | 673.08 | | | 6,730.77 | 1,134.33 | 483.23 | 533.39 | 414.02 | 4,165.80 | 3,365.39 | 3,365.39 |
| 01479 | 04/21/23 | 90.00 | 1,898.00 | 390.00 | 182.00 | | | 2,470.00 | 245.73 | 188.96 | 121.09 | 0.00 | 1,914.22 | 1,235.00 | 1,235.00 |
| 01495 | 04/21/23 | 80.00 | 2,692.31 | | | | | 2,692.31 | 58.98 | 167.43 | 39.93 | 513.65 | 1,912.32 | 1,346.16 | 1,346.16 |
| 01523 | 04/21/23 | 79.00 | 1,584.00 | 231.00 | | | | 1,815.00 | 55.73 | 138.85 | 37.40 | 0.00 | 1,583.02 | 907.50 | 907.50 |
| 01534 | 04/21/23 | 80.00 | 1,547.75 | | 92.25 | | | 1,640.00 | 7.85 | 125.46 | 14.76 | 0.00 | 1,491.93 | 820.00 | 820.00 |
| 01553 | 04/21/23 | 80.00 | 1,404.00 | | 156.00 | | | 1,560.00 | 95.59 | 119.34 | 43.42 | 0.00 | 1,301.65 | 780.00 | 780.00 |
| 01593 | 04/21/23 | 80.00 | 1,480.00 | | | | | 1,480.00 | 44.25 | 112.31 | 14.86 | 111.91 | 1,196.67 | 740.00 | 740.00 |
| 01617 | 04/21/23 | 82.00 | 1,515.25 | 57.00 | 4.75 | | | 1,577.00 | 129.61 | 116.13 | 41.19 | 59.06 | 1,231.01 | 788.50 | 788.50 |
| 01628 | 04/21/23 | 90.75 | 1,520.00 | 306.38 | | | | 1,826.38 | 154.63 | 139.73 | 54.75 | 100.00 | 1,377.27 | 913.19 | 913.19 |
| 01661 | 04/21/23 | 84.00 | 2,772.72 | 111.00 | | 1,568.00 | | 4,451.72 | 315.92 | 319.05 | 156.94 | 281.32 | 3,378.49 | 2,225.86 | 2,225.86 |
| 01698 | 04/21/23 | 78.00 | 1,656.00 | 207.00 | | | | 1,863.00 | 18.47 | 141.97 | 28.33 | 7.20 | 1,667.03 | 931.50 | 931.50 |
| 01700 | 04/21/23 | 98.25 | 1,840.00 | 652.63 | | | | 2,492.63 | 166.72 | 185.92 | 59.09 | 62.29 | 2,018.61 | 1,246.32 | 1,246.32 |
| 01705 | 04/21/23 | 80.00 | 2,884.62 | | | | | 2,884.62 | 260.92 | 220.68 | 95.02 | 0.00 | 2,308.00 | 1,442.31 | 1,442.31 |
| 01706 | 04/21/23 | 89.00 | 1,520.00 | 256.52 | | | | 1,776.52 | 160.64 | 135.91 | 57.61 | 0.00 | 1,422.36 | 888.26 | 888.26 |
| 01717 | 04/21/23 | 80.00 | 2,307.70 | | 576.92 | | | 2,884.62 | 400.91 | 217.61 | 158.78 | 40.03 | 2,067.29 | 1,442.31 | 1,442.31 |
| 01733 | 04/21/23 | 12.00 | | | 657.69 | | | 657.69 | | 2.88 | 0.34 | 620.04 | 34.43 | 328.85 | 328.85 |
| 01736 | 04/21/23 | 76.00 | 1,764.00 | 147.00 | | | | 1,911.00 | | 143.13 | 16.84 | 40.03 | 1,711.00 | 955.50 | 955.50 |

| Employee Code | Check Date | Hours | Regular Earnings | Overtime Earnings | Other Earnings | Prevailing Wage Adj | Life Insurance | Total Earnings | FIT Taxes | FICA | Other Taxes | Other Add-ons/ Deductions | Net Pay | 4-24-23 Pre Petition Amount | 4-24-23 Post Petition Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01739 | 04/21/23 | 98.00 | 2,145.28 | 929.76 | | 1,078.00 | | 4,153.04 | 281.74 | 297.20 | 135.54 | 268.06 | 3,170.50 | 2,076.52 | 2,076.52 |
| 01751 | 04/21/23 | 80.00 | 2,998.40 | | | 1,960.00 | | 4,958.40 | 531.89 | 379.32 | 283.51 | 0.00 | 3,763.68 | 2,479.20 | 2,479.20 |
| 01788 | 04/21/23 | 81.50 | 1,344.00 | 54.00 | 576.00 | | | 1,974.00 | 184.34 | 151.01 | 72.42 | 0.00 | 1,566.23 | 987.00 | 987.00 |
| 01827 | 04/21/23 | 80.00 | 1,924.00 | | 156.00 | | | 2,080.00 | 114.84 | 152.85 | 37.14 | 81.99 | 1,693.18 | 1,040.00 | 1,040.00 |
| 01859 | 04/21/23 | 77.00 | 999.00 | | 425.50 | | | 1,424.50 | 132.58 | 105.36 | 39.67 | 47.23 | 1,099.66 | 712.25 | 712.25 |
| 01872 | 04/21/23 | 89.25 | 1,925.00 | 159.38 | 200.00 | | | 2,284.38 | 176.93 | 167.12 | 57.92 | 99.72 | 1,782.69 | 1,142.19 | 1,142.19 |
| 01874 | 04/21/23 | 82.00 | 1,438.38 | 55.50 | 41.63 | | | 1,535.51 | 124.64 | 112.95 | 39.00 | 183.67 | 1,075.25 | 767.76 | 767.76 |
| 01887 | 04/21/23 | 80.00 | 3,000.00 | | | | | 3,000.00 | 190.58 | 226.44 | 165.70 | 40.03 | 2,377.25 | 1,500.00 | 1,500.00 |
| 01889 | 04/21/23 | 98.00 | 1,440.00 | 504.00 | | | | 1,944.00 | 194.92 | 145.11 | 72.55 | 47.23 | 1,484.19 | 972.00 | 972.00 |
| 01890 | 04/21/23 | 32.00 | 544.00 | | | | | 544.00 | | 41.61 | 4.90 | 0.00 | 497.49 | 272.00 | 272.00 |
| 01899 | 04/21/23 | 72.00 | 1,152.00 | | 144.00 | | | 1,296.00 | 26.72 | 99.15 | 11.66 | 0.00 | 1,158.47 | 648.00 | 648.00 |
| 01912 | 04/21/23 | 80.00 | 2,232.00 | | 248.00 | | | 2,480.00 | 237.54 | 186.10 | 111.55 | 47.23 | 1,897.58 | 1,240.00 | 1,240.00 |
| 01921 | 04/21/23 | 88.00 | 952.00 | 204.00 | 408.00 | | | 1,564.00 | 130.34 | 116.59 | 41.52 | 40.03 | 1,235.52 | 782.00 | 782.00 |
| 01923 | 04/21/23 | 24.00 | 492.00 | | | | | 492.00 | | 37.63 | 4.43 | 0.00 | 449.94 | 246.00 | 246.00 |
| 01930 | 04/21/23 | 82.00 | 1,570.00 | 60.00 | 30.00 | | | 1,660.00 | 42.92 | 126.99 | 14.94 | 0.00 | 1,475.15 | 830.00 | 830.00 |
| 01933 | 04/21/23 | 80.00 | 952.00 | | 408.00 | | | 1,360.00 | 60.64 | 102.58 | 22.70 | 19.03 | 1,155.05 | 680.00 | 680.00 |
| 01953 | 04/21/23 | 103.00 | 1,680.00 | 745.50 | | | | 2,425.50 | 298.32 | 181.94 | 112.19 | 47.23 | 1,785.82 | 1,212.75 | 1,212.75 |
| 01956 | 04/21/23 | 113.50 | 1,720.00 | 1,080.38 | | | | 2,800.38 | 346.26 | 211.27 | 143.62 | 133.40 | 1,965.83 | 1,400.19 | 1,400.19 |
| 01968 | 04/21/23 | 91.50 | 3,322.20 | 791.22 | 8.25 | 947.49 | | 5,069.16 | 359.50 | 384.74 | 221.05 | 40.03 | 4,063.84 | 2,534.58 | 2,534.58 |
| 01972 | 04/21/23 | 80.00 | 4,153.85 | | | | | 4,153.85 | 366.40 | 317.04 | 169.46 | 59.51 | 3,241.44 | 2,076.93 | 2,076.93 |
| 01987 | 04/21/23 | 97.50 | 1,749.00 | 330.00 | 176.00 | | | 2,255.00 | 145.68 | 172.51 | 49.81 | 0.00 | 1,887.00 | 1,127.50 | 1,127.50 |
| 01989 | 04/21/23 | 39.25 | 785.00 | | | | | 785.00 | 37.77 | 56.99 | 8.49 | 236.64 | 445.11 | 392.50 | 392.50 |
| 01990 | 04/21/23 | 60.00 | 1,008.00 | 108.00 | | | | 1,116.00 | 0.34 | 81.77 | 9.62 | 47.23 | 977.04 | 558.00 | 558.00 |
| 01991 | 04/21/23 | 80.00 | 1,480.00 | | | | | 1,480.00 | 144.91 | 113.22 | 45.11 | 0.00 | 1,176.76 | 740.00 | 740.00 |
| 01999 | 04/21/23 | 69.75 | 1,360.00 | 293.25 | 816.00 | | | 2,469.25 | 173.30 | 185.12 | 60.06 | 149.41 | 1,901.36 | 1,234.63 | 1,234.63 |
| 02004 | 04/21/23 | 105.50 | 1,760.00 | 863.50 | | | | 2,623.50 | 145.17 | 197.49 | 55.26 | 41.96 | 2,183.62 | 1,311.75 | 1,311.75 |
| 02012 | 04/21/23 | 94.25 | 1,320.00 | 352.69 | | | | 1,672.69 | | 127.96 | 15.21 | 0.00 | 1,529.52 | 836.35 | 836.35 |
| 02027 | 04/21/23 | 80.00 | 1,520.00 | | | | | 1,520.00 | | 116.28 | 16.40 | 0.00 | 1,387.32 | 760.00 | 760.00 |
| 02030 | 04/21/23 | 98.00 | 1,480.00 | 518.00 | | | | 1,998.00 | | 152.85 | 38.68 | 0.00 | 1,806.47 | 999.00 | 999.00 |
| 02051 | 04/21/23 | 40.00 | 740.00 | | | | | 740.00 | | 56.61 | 6.66 | 0.00 | 676.73 | 370.00 | 370.00 |
| 02092 | 04/21/23 | 80.00 | 1,920.00 | | | | | 1,920.00 | 85.63 | 146.88 | 22.88 | 0.00 | 1,664.61 | 960.00 | 960.00 |
| 02105 | 04/21/23 | 82.00 | 2,000.00 | 75.00 | | | | 2,075.00 | | 154.49 | 69.90 | 55.57 | 1,795.04 | 1,037.50 | 1,037.50 |
| 02106 | 04/21/23 | 97.00 | 2,604.06 | 715.94 | | 721.62 | | 4,041.62 | 581.09 | 305.57 | 286.76 | 47.23 | 2,820.97 | 2,020.81 | 2,020.81 |
| 02108 | 04/21/23 | 45.25 | 927.63 | | | | | 927.63 | | 70.96 | 8.35 | 0.00 | 848.32 | 463.82 | 463.82 |
| 02150 | 04/21/23 | 80.00 | 2,898.56 | | | 1,764.00 | | 4,662.56 | 726.94 | 353.38 | 356.30 | 43.26 | 3,182.68 | 2,331.28 | 2,331.28 |
| 02172 | 04/21/23 | 60.00 | 1,064.00 | 114.00 | | | | 1,178.00 | 68.98 | 90.12 | 29.10 | 0.00 | 989.80 | 589.00 | 589.00 |
| 02188 | 04/21/23 | 64.00 | 1,008.00 | | 144.00 | | | 1,152.00 | | 88.13 | 10.37 | 60.00 | 993.50 | 576.00 | 576.00 |
| 02191 | 04/21/23 | 65.00 | 1,678.00 | 33.00 | | 494.86 | | 2,205.86 | | 168.74 | 72.03 | 0.00 | 1,965.09 | 1,102.93 | 1,102.93 |
| 02197 | 04/21/23 | 80.00 | 1,600.00 | | | | | 1,600.00 | | 119.34 | 14.04 | 40.03 | 1,426.59 | 800.00 | 800.00 |
| 02198 | 04/21/23 | 69.00 | 1,408.00 | 165.00 | | | | 1,573.00 | | 117.28 | 34.58 | 40.03 | 1,381.11 | 786.50 | 786.50 |
| 02199 | 04/21/23 | 98.00 | 1,440.00 | 504.00 | | | | 1,944.00 | 62.73 | 144.20 | 39.56 | 59.06 | 1,638.45 | 972.00 | 972.00 |
| 02202 | 04/21/23 | | | | 8,000.00 | | | 8,000.00 | | 612.00 | 565.61 | 0.00 | 6,822.39 | 4,000.00 | 4,000.00 |
| 02203 | 04/21/23 | 80.00 | 4,615.39 | | | | 5.20 | 4,620.59 | 267.33 | 353.47 | 205.07 | 5.20 | 3,789.52 | 2,310.30 | 2,310.30 |
| 02213 | 04/21/23 | 72.50 | 1,224.00 | 12.75 | | | | 1,236.75 | | 94.62 | 11.13 | 0.00 | 1,131.00 | 618.38 | 618.38 |
| 02216 | 04/21/23 | 107.50 | 1,224.00 | 935.00 | | | | 2,159.00 | 74.08 | 165.16 | 43.65 | 0.00 | 1,876.11 | 1,079.50 | 1,079.50 |
| 02240 | 04/21/23 | 64.00 | 1,280.00 | | | | | 1,280.00 | 15.56 | 93.40 | 24.90 | 59.06 | 1,087.08 | 640.00 | 640.00 |
| 02270 | 04/21/23 | 80.00 | 1,760.00 | | | | | 1,760.00 | 138.82 | 134.64 | 62.29 | 0.00 | 1,424.25 | 880.00 | 880.00 |
| 02273 | 04/21/23 | 64.00 | 1,280.00 | | | | | 1,280.00 | | 97.92 | 11.52 | 0.00 | 1,170.56 | 640.00 | 640.00 |
| 02279 | 04/21/23 | 84.75 | 1,459.50 | 196.89 | 189.00 | | | 1,845.39 | | 141.18 | 16.61 | 0.00 | 1,687.60 | 922.70 | 922.70 |
| 02302 | 04/21/23 | 56.00 | 1,036.00 | | | | | 1,036.00 | | 74.73 | 8.79 | 59.06 | 893.42 | 518.00 | 518.00 |
| 02310 | 04/21/23 | 80.00 | 3,846.16 | | | | | 3,846.16 | 113.28 | 278.46 | 151.91 | 206.27 | 3,096.24 | 1,923.08 | 1,923.08 |
| 02313 | 04/21/23 | 72.00 | 1,116.00 | | | | | 1,116.00 | 31.60 | 85.37 | 10.04 | 0.00 | 988.99 | 558.00 | 558.00 |
| 02333 | 04/21/23 | 80.00 | 5,769.24 | | | | | 5,769.24 | 328.48 | 408.79 | 176.24 | 1,825.51 | 3,030.22 | 2,884.62 | 2,884.62 |
| 02342 | 04/21/23 | 80.00 | 7,692.31 | | | | 2.14 | 7,694.45 | 1,365.61 | 556.95 | 652.47 | 416.16 | 4,703.26 | 3,847.23 | 3,847.23 |
| 02347 | 04/21/23 | 97.00 | 2,647.68 | 715.94 | | 700.68 | | 4,064.30 | 466.36 | 307.62 | 191.03 | 43.26 | 3,056.03 | 2,032.15 | 2,032.15 |
| 02372 | 04/21/23 | 16.00 | 256.00 | | | | | 256.00 | | 19.58 | 2.30 | 0.00 | 234.12 | 128.00 | 128.00 |
| 02379 | 04/21/23 | 33.00 | 561.00 | | | | | 561.00 | | 42.91 | 5.05 | 0.00 | 513.04 | 280.50 | 280.50 |
| 02382 | 04/21/23 | 80.00 | 3,019.24 | | | | | 3,019.24 | 242.54 | 230.97 | 102.15 | 0.00 | 2,443.58 | 1,509.62 | 1,509.62 |
| 02387 | 04/21/23 | 76.00 | 1,444.00 | | | | | 1,444.00 | | 110.45 | 13.00 | 0.00 | 1,320.55 | 722.00 | 722.00 |

| Employee Code | Check Date | Hours | Regular Earnings | Overtime Earnings | Other Earnings | Prevailing Wage Adj | Life Insurance | Total Earnings | FIT Taxes | FICA | Other Taxes | Other Add-ons/ Deductions | Net Pay | 4-24-23 Pre Petition Amount | 4-24-23 Post Petition Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02420 | 04/21/23 | 87.25 | 1,520.00 | 206.63 | | | | 1,726.63 | | 132.09 | 15.54 | 0.00 | 1,579.00 | 863.32 | 863.32 |
| 02426 | 04/21/23 | 88.00 | 2,646.88 | 222.00 | | 1,372.00 | | 4,240.88 | | 322.97 | 166.00 | 19.03 | 3,732.88 | 2,120.44 | 2,120.44 |
| 02435 | 04/21/23 | 32.00 | 512.00 | | | | | 512.00 | | 39.17 | 4.61 | 0.00 | 468.22 | 256.00 | 256.00 |
| 02437 | 04/21/23 | 80.00 | 3,634.62 | | 403.85 | | | 4,038.47 | 207.63 | 273.70 | 136.19 | 460.79 | 2,960.16 | 2,019.24 | 2,019.24 |
| 02439 | 04/21/23 | 40.00 | 680.00 | | | | | 680.00 | | 52.02 | 6.12 | 0.00 | 621.86 | 340.00 | 340.00 |
| 02463 | 04/21/23 | 80.00 | 1,520.00 | | | | | 1,520.00 | | 116.28 | 13.68 | 0.00 | 1,390.04 | 760.00 | 760.00 |
| 02480 | 04/21/23 | 64.00 | 1,152.00 | | | | | 1,152.00 | | 88.12 | 18.64 | 0.00 | 1,045.24 | 576.00 | 576.00 |
| 02481 | 04/21/23 | 68.00 | 936.00 | | 288.00 | | | 1,224.00 | | 93.64 | 11.02 | 0.00 | 1,119.34 | 612.00 | 612.00 |
| 02497 | 04/21/23 | 104.50 | 1,520.00 | 722.00 | | | | 2,242.00 | | 171.52 | 20.18 | 0.00 | 2,050.30 | 1,121.00 | 1,121.00 |
| 02527 | 04/21/23 | 85.50 | 1,360.00 | 140.27 | | | | 1,500.27 | 141.67 | 111.16 | 43.68 | 336.36 | 867.40 | 750.14 | 750.14 |
| 02538 | 04/21/23 | 56.00 | 1,064.00 | | | | | 1,064.00 | | 81.40 | 9.58 | 0.00 | 973.02 | 532.00 | 532.00 |
| 02539 | 04/21/23 | 52.00 | 884.00 | | | | | 884.00 | | 64.56 | 7.60 | 40.03 | 771.81 | 442.00 | 442.00 |
| 02547 | 04/21/23 | 80.00 | 4,153.86 | | 461.53 | | | 4,615.39 | 715.44 | 349.72 | 345.05 | 44.00 | 3,161.18 | 2,307.70 | 2,307.70 |
| 02549 | 04/21/23 | 80.00 | 5,000.00 | | | | | 5,000.00 | 177.73 | 382.50 | 241.92 | 0.00 | 4,197.85 | 2,500.00 | 2,500.00 |
| 02557 | 04/21/23 | 64.00 | 1,088.00 | | | | | 1,088.00 | | 80.17 | 9.43 | 40.03 | 958.37 | 544.00 | 544.00 |
| 02587 | 04/21/23 | 100.00 | 2,369.20 | 555.00 | | 980.00 | | 3,904.20 | 169.88 | 298.67 | 154.75 | 0.00 | 3,280.90 | 1,952.10 | 1,952.10 |
| 02588 | 04/21/23 | 79.50 | 2,370.00 | 22.50 | | | | 2,392.50 | 25.17 | 183.04 | 48.28 | 0.00 | 2,136.01 | 1,196.25 | 1,196.25 |
| 02608 | 04/21/23 | 52.50 | 1,050.00 | | | | | 1,050.00 | | 80.32 | 9.45 | 0.00 | 960.23 | 525.00 | 525.00 |
| 02612 | 04/21/23 | 78.75 | 1,762.50 | 9.38 | 200.00 | | | 1,971.88 | 87.32 | 150.84 | 24.49 | 0.00 | 1,709.23 | 985.94 | 985.94 |
| 02617 | 04/21/23 | 80.00 | 1,360.00 | | | | | 1,360.00 | 125.70 | 100.98 | 36.62 | 40.03 | 1,056.67 | 680.00 | 680.00 |
| 02620 | 04/21/23 | 83.00 | 1,760.00 | 99.00 | | | | 1,859.00 | | 142.22 | 32.84 | 0.00 | 1,683.94 | 929.50 | 929.50 |
| 02660 | 04/21/23 | 64.00 | 1,088.00 | | | | | 1,088.00 | 97.87 | 83.23 | 25.05 | 0.00 | 881.85 | 544.00 | 544.00 |
| 02662 | 04/21/23 | 40.00 | 880.00 | | | | | 880.00 | | 67.32 | 7.92 | 0.00 | 804.76 | 440.00 | 440.00 |
| 02674 | 04/21/23 | 80.00 | 3,211.54 | | | | | 3,211.54 | 9.85 | 245.68 | 114.65 | 0.00 | 2,841.36 | 1,605.77 | 1,605.77 |
| 02676 | 04/21/23 | 47.00 | 799.00 | | | | | 799.00 | | 61.13 | 7.19 | 0.00 | 730.68 | 399.50 | 399.50 |
| 02678 | 04/21/23 | 76.25 | 936.00 | 6.75 | 432.00 | | | 1,374.75 | | 102.10 | 22.50 | 112.14 | 1,138.01 | 687.38 | 687.38 |
| 02684 | 04/21/23 | 80.00 | 1,440.00 | | | | | 1,440.00 | | 110.16 | 13.92 | 0.00 | 1,315.92 | 720.00 | 720.00 |
| 02685 | 04/21/23 | 80.00 | 2,480.00 | | | | | 2,480.00 | 243.03 | 188.02 | 119.90 | 22.26 | 1,906.79 | 1,240.00 | 1,240.00 |
| 02692 | 04/21/23 | 100.00 | 2,369.20 | 555.00 | | 980.00 | | 3,904.20 | | 298.67 | 119.22 | 0.00 | 3,486.31 | 1,952.10 | 1,952.10 |
| 02694 | 04/21/23 | 34.50 | 650.75 | 7.13 | | | | 657.88 | 46.25 | 50.33 | 11.72 | 0.00 | 549.58 | 328.94 | 328.94 |
| 02698 | 04/21/23 | 92.00 | 2,783.65 | 780.84 | | 1,082.84 | | 4,647.33 | 261.59 | 355.52 | 225.20 | 0.00 | 3,805.02 | 2,323.67 | 2,323.67 |
| 02700 | 04/21/23 | 32.00 | 576.00 | | | | | 576.00 | | 44.06 | 5.18 | 0.00 | 526.76 | 288.00 | 288.00 |
| 02709 | 04/21/23 | 79.25 | 1,339.50 | 21.38 | 152.00 | | | 1,512.88 | 109.16 | 115.72 | 46.85 | 0.00 | 1,241.15 | 756.44 | 756.44 |
| 02716 | 04/21/23 | 77.75 | 1,621.50 | | 166.75 | | | 1,788.25 | | 136.13 | 20.05 | 8.68 | 1,623.39 | 894.13 | 894.13 |
| 02722 | 04/21/23 | 80.00 | 3,461.54 | | | | | 3,461.54 | 255.96 | 261.18 | 124.10 | 740.49 | 2,079.81 | 1,730.77 | 1,730.77 |
| 02728 | 04/21/23 | 84.50 | 952.00 | 318.75 | 272.00 | | | 1,542.75 | | 118.02 | 13.88 | 0.00 | 1,410.85 | 771.38 | 771.38 |
| 02729 | 04/21/23 | 100.00 | 2,369.20 | 555.00 | | 980.00 | | 3,904.20 | 92.96 | 298.67 | 148.83 | 0.00 | 3,363.74 | 1,952.10 | 1,952.10 |
| 02733 | 04/21/23 | 72.00 | 1,800.00 | | | | | 1,800.00 | | 131.09 | 15.42 | 86.52 | 1,566.97 | 900.00 | 900.00 |
| 02733 | 04/21/23 | 8.00 | | | 200.00 | | | 200.00 | | 15.30 | 1.80 | 0.00 | 182.90 | 100.00 | 100.00 |
| 02734 | 04/21/23 | 90.50 | 1,224.00 | 471.75 | | | | 1,695.75 | | 129.73 | 39.70 | 0.00 | 1,526.32 | 847.88 | 847.88 |
| 02735 | 04/21/23 | 56.00 | 1,064.00 | | | | | 1,064.00 | | 81.40 | 9.58 | 0.00 | 973.02 | 532.00 | 532.00 |
| | | | 427,731.39 | 31,352.02 | 37,832.01 | 29,337.14 | 64.09 | 526,316.65 | 38,137.40 | 39,267.40 | 19,744.88 | 22,187.58 | 406,979.39 | 263,158.33 | 263,158.33 |

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 1301 Dove Street, Suite 500, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **OMNIBUS DECLARATION OF JAMES MCGEEVER IN SUPPORT OF DEBTOR'S EMERGENCY "FIRST DAY" MOTIONS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 25, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Theodore A Cohen** tcohen@sheppardmullin.com, mtzeng@sheppardmullin.com
- **Abram Feuerstein** abram.s.feuerstein@usdoj.gov
- **Everett L Green** everett.l.green@usdoj.gov
- **Robert E Opera** ropera@wghlawyers.com, jmartinez@wghlawyers.com ; svillegas@wghlawyers.com
- **Cameron C Ridley** Cameron.Ridley@usdoj.gov
- **United States Trustee (RS)** ustpregion16.rs.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On **April __, 2023**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY OVERNIGHT AND EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April __, 2023**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 25, 2023 | *Jeannie Martinez* | */s/ Jeannie Martinez* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |