ROBERT E. OPERA -- State Bar No. 101182
ropera@wghlawyers.com
RICHARD H. GOLUBOW – State Bar No. 160434
rgolubow@wghlawyers.com
PETER W. LIANIDES – State Bar No. 160517
plianides@wghlawyers.com
WINTHROP GOLUBOW HOLLANDER, LLP
1301 Dove Street, Suite 500
Newport Beach, CA 92660
Telephone: (949) 720-4100
Facsimile: (949) 720-4111

[Proposed] General Insolvency Counsel for
Silver Creek Industries, LLC, Debtor and
Debtor-in-Possession

TODD C. RINGSTAD -- State Bar No. 97345
todd@ringstadlaw.com
RINGSTAD & SANDERS, LLP
4910 Birch Street, Suite 120
Newport Beach, CA 92660
Telephone: (949) 851-7450
Facsimile: (949) 851-6926

[Proposed] General Insolvency Counsel for
Silver Creek Leasing, LLC and Silver Creek Industries RS, LLC
Debtors and Debtors-in-Possession

FILED & ENTERED
JUN 02 2023
CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Mason DEPUTY CLERK

CHANGES MADE BY COURT

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RIVERSIDE DIVISION**

In re:

☐ SILVER CREEK INDUSTRIES, LLC
☐ SILVER CREEK LEASING, LLC
☐ SILVER CREEK INDUSTRIES RS, LLC
☒ All Debtors.

Debtors and
Debtors-in-Possession.

Jointly Administered under
Case No. 6:23-bk-11677-SY with
Case No. 6:23-bk-12165-SY and
Case No. 6:23-bk-12167-SY

Chapter 11

**ORDER GRANTING DEBTORS' MOTIONS FOR ORDER AUTHORIZING: (1) SALE OF SUBSTANTIALLY ALL OF THE ASSETS OF THE DEBTORS FREE AND CLEAR OF LIENS AND INTERESTS IN ACCORDANCE WITH PROVISIONS OF ASSET PURCHASE AGREEMENT; (2) ASSUMPTION AND ASSIGNMENT OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS;**

**(3) REJECTION OF UNEXPIRED LEASES AND EXECUTORY CONTRACTS; AND**
**(4) ABANDONMENT OF PROPERTY**

Hearing:

Date: May 30, 2023
Time: 1:30 p.m.
Place: Courtroom 302
3420 Twelfth Street
Riverside, CA 92501

The matters of the *Motion for Order Authorizing: (1) Sale of Substantially all of the Assets of the Debtor Free and Clear of Liens and Interests in Accordance with the Provisions of Asset Purchase Agreement; (2) Assumption and Assignment of Unexpired Leases and Executory Contracts; and (3) Rejection of Unexpired Leases and Executory Contracts; and (4) Abandonment of Property* [Docket No. 101[1]] (individually referred to as the "Sale Motion") filed by debtor Silver Creek Industries, LLC ("SCI"), the *Emergency Motion for Order Authorizing: (1) Sale of Substantially all of the Assets of the Debtor Free and Clear of Liens and Interests in Accordance with the Provisions of Asset Purchase Agreement; (2) Assumption and Assignment of Unexpired Leases and Executory Contracts; and (3) Rejection of Unexpired Leases and Executory Contracts; and (4) Abandonment of Property* [SCL Docket No. 5] (individually referred to as "SCL's Emergency Sale Motion") filed by debtor Silver Creek Leasing, LLC ("SCL"), and the *Emergency Motion for Order Authorizing: (1) Sale of Substantially all of the Assets of the Debtor Free and Clear of Liens and Interests in Accordance with the Provisions of Asset Purchase Agreement; (2) Assumption and Assignment of Unexpired Leases and Executory Contracts; and (3) Rejection of Unexpired Leases and Executory Contracts; and (4) Abandonment of Property* [SCRS Docket No. 4] (individually referred to as "SCRS's "Emergency Sale Motion"), filed by debtor Silver Creek Industries RS, LLC ("SCRS") (the term "Debtors" as used herein refers to SCI, SCL and SCRS individually and collectively; all above-referenced Sale Motions and Emergency Sale Motions are

[1] The docket in *In re Silver Creek Industries, LLC*, Case No. 6:23-bk-11677-SY, is referred to herein as "Docket." The docket in *In re Silver Creek Leasing, LLC*, Case No. 6:23-bk-12165-SY, is referred to herein as "SCL Docket." The docket in *In re Silver Creek Industries RS, LLC*, Case No. 6:23-bk-12167-SY, is referred to herein as "SCRS Docket."

collectively referred to as the "Sale Motions") came on for hearing on May 30, 2023 at 1:30 p.m. before the Honorable Scott H. Yun, United States Bankruptcy Judge, in the above-entitled court. SCI was represented by Robert E. Opera, Esq. of Winthrop Golubow Hollander, LLP, its proposed general insolvency counsel. Thomas R. Fawkes, Esq. of Tucker & Ellis LLP appeared on behalf of the Official Committee of Unsecured Creditors ("Committee"). Lance N. Jurich, Esq. and Vadim J. Rubinstein, Esq. of Loeb & Loeb LLP appeared telephonically on behalf of Silver Creek Modular, LLC ("Buyer"). Theodore A. Cohen, Esq. of Sheppard, Mullin, Richter & Hampton LLP appeared on behalf of First-Citizens Bank & Trust Company, Successor by Merger to CIT Bank, N.A., as Administrative Agent and Lender ("CIT"). Todd C. Ringstad, Esq. of Ringstad & Sanders LLP appeared on behalf of SCL and SCRS. Jay Jaffe, Esq. of Faegre Drinker Biddle & Reath LLP appeared telephonically on behalf of Silver Creek Acquisition, LLC. Other appearances were as set forth on the court's record of the proceedings.[2]

Based upon the Sale Motions, the declaration of James McGeever [Docket No. 102] ("McGeever Declaration") filed by SCI in support of the Sale Motion, the omnibus declaration of James McGeever [SCL Docket No. 3] and the omnibus declaration of James McGeever [SCRS Docket No. 3] filed in support of the SCL and SCRS Emergency Sale Motions, the *Declaration of Kyle Webb, in his Capacity as Representative of the Stalking Horse Bidder, Establishing Adequate Assurance of Future Performance* [Docket No. 105] (the "Webb Declaration") filed in support of the Sale Motion, the *Declaration of Steve PonTell, in his Capacity as Representative of the Stalking Horse Bidder, Establishing Adequate Assurance of Future Performance on Assumed Contracts and Status as Good Faith Purchaser Under Section 363(m)* [Docket No. 106] (the "PonTell Declaration") in support of the Sale Motion, the *Supplemental Declaration of Steve PonTell, in His Capacity as Representative of Successful Bidder, Establishing Adequate Assurance of Future Performance on Assumed Contracts and Status as Good Faith Purchaser Under Section 363(m)* [Docket No. 180] (the "Supplemental PonTell Declaration"), the *Statement of Official Committee of*

---

[2] Except as otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the Sale Motion.

*Unsecured Creditors in Support of Debtor's Sale Motion* [Docket No. 182] filed by the Committee in support of the Sale Motion, the response to the Sale Motion filed by Perris IV Industrial, LLC [Docket No. 123], the limited objection to the Sale Motion [Docket No. 124] filed by CIT and CIT's consent to the form of this order resolving the limited objection, the limited opposition to the Sale Motion [Docket No. 136] filed by Crest Steel Corporation and the stipulation by Crest Steel Corporation resolving its limited opposition [Docket No. 158], the objection to the Sale Motion [Docket No. 132] filed by Xcel Mechanical Inc. and the stipulation resolving its objections [Docket No. 157], the statement regarding the Sale Motion [Docket No. 134] filed by the Office of the United States Trustee, the limited objection to the Sale Motion [Docket No. 135] filed by Freedom Painting Inc. and Freedom Painting West, Inc. and the withdrawal of their limited objection [Docket No. 163], the limited objection to the Sale Motion [Docket No. 151] filed by Philadelphia Indemnity Insurance Company and the withdrawal of its limited objection [Docket No. 172], the objection to the Sale Motion by CW Driver, LLC [Docket No. 160] and the stipulation between CW Driver, LLC and SCI to withdraw the objection [Docket No. 166], the late-filed opposition to the Sale Motion filed by creditor Cardinal Sheet Metal, Inc. [Docket No. 175], the late-filed limited objection and reservation of rights by DPR Construction to the assumption and assignment of its contract [Docket No. 184], which was overruled at the sale hearing, subject to the provisions of this order, the omnibus reply to the objections to the Sale Motion [Docket No. 176] filed by SCI, the record in the Debtors' chapter 11 cases including, without limitation, the court's sale procedures order [Docket No. 145] entered on May 23, 2023, the supplemental declaration of Drew Welborn filed by Silver Creek Acquisition, LLC [Docket No. 187], the Asset Purchase Agreement (as hereinafter defined), and the representations and arguments of counsel at the hearings on the Sale Motions (the "Sale Hearing"), and all parties in interest having been heard or having had the opportunity to be heard regarding the Sale Motions, and all objections, if any, to the Sale Motions having been withdrawn, resolved, or overruled on the merits, and upon the record of the Sale Hearing and all of the proceedings had before this court, and the court having determined that the legal and factual basis set forth in the Sale Motions establish just cause for the relief granted herein,

and after due deliberation and sufficient cause appearing therefor, and for good cause shown,

**THE COURT HEREBY FINDS, AND CONCLUDES AS A MATTER OF LAW, THAT**:

A. The court has jurisdiction under 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. §§ 105, 363 and 365 to approve the sale of the Assets (as defined in the Asset Purchase Agreement, the "Purchased Assets") pursuant to the Asset Purchase Agreement (the "Asset Purchase Agreement") entered into by and among the Buyer, on one hand, and the Sellers, on the other hand, a true and complete copy of which is attached as **Exhibit "1"** to the Notice of Filing of Exhibits to Order Granting Debtor's Motion for Order Authorizing: (1) Sale of Substantially All of the Assets of the Debtor Free and Clear of Liens and Interests in Accordance with Provisions of Asset Purchase Agreement; (2) Assumption and Assignment of Unexpired Leases and Executory Contracts; (3) Rejection of Unexpired Leases and Executory Contracts; and (4) Abandonment of Property ("Exhibits Schedule") [Docket No. 198], which is incorporated herein by this reference, free and clear of all Encumbrances (as hereinafter defined) of any type or nature whatsoever under section 363(f) of the Bankruptcy Code. The Sale Motions are core proceedings under 28 U.S.C. § 157(b)(2)(A), (N), and (O). Venue of this proceeding and the Sale Motions in this district is proper under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested by the Sale Motions are §§ 105, 363, and 365 of the Bankruptcy Code.

B. The notices given of the (i) Sale Hearing, (ii) the relief requested in the Sale Motions and (iii) the assumption and assignment or transfer of the Acquired Contracts, and confirmation of the Cure Amounts owing thereunder, were appropriate and complied in all material respects with the requirements of the sale procedures ("Sale Procedures") approved by the Sale Procedures Order entered by the court in SCI's case and the comparable order entered by the court in the SCL & SCRS' cases (collectively, "Sale Procedures Orders"), the Federal Rules of Bankruptcy Procedure ("Federal Bankruptcy Rules") and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of

California ("Local Bankruptcy Rules"), and such notices were good, sufficient and appropriate under the circumstances of the Debtors' cases, and no other or further notice of the relief requested in the Sale Motions, the Sale Hearing or the assumption and assignment or transfer of the Acquired Contracts and Cure Amounts owing thereunder is required in order to effectuate the relief granted in this order. A reasonable opportunity to object to, or be heard with respect to, the relief requested in the Sale Motions and the relief requested therein has been afforded to all interested persons and entities.

C. The Debtors engaged in fair and reasonable efforts, under the circumstances of this case, to obtain a fair price for the Purchased Assets, and the consideration to be paid by the Buyer for the Purchased Assets pursuant to the Asset Purchase Agreement is fair.

D. The Debtors have complied materially with the Sale Procedures Orders with respect to the sale of the Purchased Assets. The sale process with respect to the sale of the Purchased Assets was fair to all parties-in-interest and complied materially with all Sale Procedures.

E. The Debtors served the written notice of the Sale Hearing in accordance with the requirements of the Sale Procedures Orders, the Federal Bankruptcy Rules and the Local Bankruptcy Rules. Creditors, parties-in-interest and other entities have been afforded a reasonable opportunity to bid for the Purchased Assets.

F. Bids for the Purchased Assets were submitted by the Buyer pursuant to the Asset Purchase Agreement and by Silver Creek Acquisition, LLC (the "Backup Buyer"). The Debtors' determination, after consultation with the Committee and CIT, to accept the bid for the Purchased Assets submitted by the Buyer pursuant to the Asset Purchase Agreement as the highest and best bid for the Purchased Assets was a sound and proper exercise of the Debtors' respective business judgment.

G. The terms and conditions of the Asset Purchase Agreement (i) are fair and reasonable, (ii) represent the highest and best offer for the Purchased Assets, and (iii) will provide, from a sale of the Purchased Assets, a greater recovery for the Debtors' creditors

than would be provided by any other alternative for the sale or other disposition of the Purchased Assets. The Purchase Price provided by the Asset Purchase Agreement constitutes fair consideration for the Purchased Assets and constitutes reasonably equivalent value and fair consideration for the Purchased Assets. The Debtors' entering into and consummating the Asset Purchase Agreement is a sound exercise of the Debtors' respective business judgment.

H. Good cause exists to authorize the Debtors to sell the Purchased Assets free and clear of all Encumbrances of any kind or nature because the requirements set forth in § 363(f) of the Bankruptcy Code, including § 363(f)(2), have been satisfied**.**

I. If the Debtors did not sell the Purchased Assets free and clear of all Encumbrances, to the extent provided in the Asset Purchase Agreement and this order, the sale would have yielded substantially lower value for the Debtors' estates, with less certainty than the sale to the Buyer. The Buyer would not have submitted a bid, entered into the Asset Purchase Agreement, and would not consummate the Sale, thus adversely affecting the Debtors, their estates, their creditors, and holders of their equity interests, if the Sale and the assignment of the Purchased Assets (including the Acquired Contracts) to the Buyer were not free and clear of all Encumbrances to the extent provided in the Asset Purchase Agreement and this order.

J. If the sale to the Backup Buyer were not free and clear of all Encumbrances, to the extent provided in the Asset Purchase Agreement and this order, the Backup Buyer would not have submitted a bid and would not have participated in the Auction, thus adversely affecting the Debtors, their estates, their creditors, and holders of their equity interests.

K. The Asset Purchase Agreement was negotiated, proposed, and entered into by and among the Sellers and the Buyer without collusion, in good faith, and from arm's-length bargaining positions. There has been no fraud or collusion with respect to the sale process, or any manipulation with respect to the bidding or Purchase Price with respect

to the sale contemplated by the Asset Purchase Agreement (the "Transaction"). Neither any Seller nor the Buyer has engaged in any conduct that would cause or permit the Asset Purchase Agreement, or the Transaction contemplated thereby, to be invalidated or avoided under § 363(n) of the Bankruptcy Code. Accordingly, upon consummation of the Transaction, the Buyer will be a buyer in "good faith" within the meaning of § 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded by § 363(m) of the Bankruptcy Code.

L. Good cause exists to authorize the Debtors to execute any document, and to take any act, appropriate to effectuate the Asset Purchase Agreement and the agreements ancillary thereto that are appended as exhibits to the Asset Purchase Agreement (collectively, "Ancillary Agreements"). The Ancillary Agreements are incorporated into the Asset Purchase Agreement and are integral and inseparable components of the Transaction.

M. The Debtors have demonstrated compelling circumstances and a good, sufficient, and sound business purpose for: (i) the sale of the Purchased Assets outside of the ordinary course of business pursuant to Bankruptcy Code § 363(b) prior to and outside of a plan of reorganization because of the Debtors' current financial position; (ii) a restriction on the Debtors' pursuing, considering, or accepting any further offers for the Purchased Assets from and after the entry of this order through the earlier of the consummation of the Transaction among the Sellers and the Buyer or termination of the Asset Purchase Agreement in accordance with its terms, and (iii) the immediate consummation of the Asset Purchase Agreement. Such circumstances and purposes include: (a) the Debtors conducted a sound marketing process under the circumstances of this case to sell the Purchased Assets and the Asset Purchase Agreement constitutes the highest and best offer for the Purchased Assets; (b) the loss of jobs that would inevitably result if the sale to the Buyer is not approved; (c) the risk of deterioration of the value of the Purchased Assets if the sale is not consummated in accordance with the terms of the Asset Purchase Agreement and this order; and (d) the Asset Purchase Agreement and the sale of the

Purchased Assets to the Buyer provide greater value to the Debtors' estates than would be provided by any other presently available alternative. To maximize the value of the Purchased Assets and preserve the viability of the operations to which the Purchased Assets relate, it is essential that the Transaction among the Sellers and Buyer occur within the time constraints set forth in the Asset Purchase Agreement and this order and that the Buyer be protected against any further offers for the Purchased Assets.

N. In light of the Debtors' need to consummate immediately the sale of the Purchased Assets in order to preserve and maximize value for the Debtors' estates and their creditors, good cause exists to waive the 14-day stay of orders provided by Rules 6004(h) and 6006(d) of the Federal Bankruptcy Rules.

O. Good cause exists to overrule any and all remaining opposition to the Sale Motions, in part because the Debtors have demonstrated that the Debtors' Transaction with the Buyer is in the best interests of the Debtors' respective creditors, that the Debtors have exercised sound business judgment in entering into and seeking to consummate the Transaction and the interests of the objecting parties are not impaired by the consummation of the Transaction.

P. The Purchased Assets to be sold and assigned to the Buyer under the Asset Purchase Agreement have been adequately disclosed and identified under the Sale Motion.

Q. CIT has approved the sale of the Purchased Assets to the Buyer under the Sale Motions based on the terms of this order.

R. The Committee has approved the sale of the Purchased Assets to the Buyer under the Asset Purchase Agreement and based on the terms of this order.

S. Based upon the evidentiary record before the court, good cause exists to authorize the Debtors to assume and to assign to the Buyer the Acquired Contracts, in accordance with the provisions of the Sale Motions and § 365 of the Bankruptcy Code.

T. Based upon the evidentiary record before the court, good cause exists to authorize the Debtors to reject unexpired leases and executory contracts not assigned to the

Buyer, and to abandon assets not sold or assigned to the Buyer, in accordance with the terms and conditions of this order.

Based upon the record in these cases, the findings of fact and conclusions of law set forth hereinabove, under §§ 105, 363, and 365 of the Bankruptcy Code and Rules 6004, 6006, 7052 and 9014 of the Federal Bankruptcy Rules,

**IT IS HEREBY ORDERED** that:

1. All objections to the Sale Motions not withdrawn by the objecting party are overruled.

2. The Sale Motions are granted. All entities given notice of the Sale Motions that failed to object to the Sale Motions are deemed to consent to the relief granted in this order.

**Approval of Sale Free and Clear of Encumbrances**

3. All of the terms and conditions of the Asset Purchase Agreement are approved, and the Debtors are authorized under §§ 105(a), 363(b), (f) and (m), and § 365 of the Bankruptcy Code, to sell and to assign to the Buyer the Purchased Assets, pursuant to the terms and conditions of the Asset Purchase Agreement, all of the Debtors' respective rights, title, and interests in and to, and possession of, the Purchased Assets free and clear of all Liens (as defined in the Asset Purchase Agreement), claims, encumbrances, and interests including, without limitation, each of the following, which are collectively referred to herein as the "Encumbrances":

(a) liens (as that term is defined in the Bankruptcy Code) including, without limitation, any lien, pledge, mortgage, deed of trust, security interest, charge, or encumbrance, and liens and security interests granted under §§ 361, 363, or 364 of the Bankruptcy Code or an order of the court;

(b) interests, obligations, liabilities, demands, guaranties, options, restrictions, and contractual or other commitments;

(c) rights including, without limitation, rights of first refusal, rights of offset, rights to use, contract rights, preferential rights to purchase, rights of recovery, and any rights that purport to give any party a right or option to effect any forfeiture, modification, right of first offer or first refusal, consent, or termination of the Debtors' or the Buyer's interest in any of the Purchased Assets, or any similar rights, in each case with respect to the Transaction;

(d) judgments or decrees of any court or foreign or domestic government entity (to the extent permitted by law);

(e) charges or restrictions of any kind or nature including, without limitation, any restriction on the use, transfer, receipt of income or other exercise of any attributes of ownership of the Purchased Assets including, without limitation, consent of any person or entity to assign or transfer any of the Purchased Assets;

(f) debts arising in any way in connection with any agreements, acts, or failures to act, of the Debtors or any of the Debtors' predecessors or affiliates;

(g) claims including, but not limited to, all rights to payment, damages, losses, demands, judgments, claims, causes of action, charges, assessments, liabilities, suits, investigations, litigation, third-party actions, claims for reimbursement, contribution claims, penalties, indemnity claims, exoneration or exculpation claims, royalties, suspense funds, alter-ego claims, environmental claims or liens arising from conditions first existing on or prior to the Closing (including, without limitation, the presence of hazardous, toxic, polluting, or contaminating substances or waste) that may be asserted on any basis including, without limitation, under any environmental law (to the greatest extent permitted by law), claims arising under any bulk sales or similar law, tax, claims arising under any tax statutes or ordinances including, without limitation, the Internal Revenue Code of 1986, as amended, any products liability, product warranty liability or similar claims, intercompany claims, loans and receivables between or among any Debtor(s) and any non-Debtor subsidiary, affiliate, or representative of any of the foregoing, escheat, administrative expenses, and pending or threatened litigation claims, arbitral proceedings or proceedings by or before any governmental authority or any other person, sanctions, penalties, costs, expenses, fees (including attorney or other professional and advisor fees and costs), liabilities, setoff rights (to the greatest extent permitted by law), obligations, and claims and liabilities of any kind or nature under contract, agreement, understanding, or at law, in equity, or otherwise, whatsoever, whether or not reduced to judgment;

(h) any labor or employment agreements, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors, any affiliate of the Debtors, or any member of the Debtors' "control group;"

(i) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act of 1974, as amended, (ii) the Fair Labor Standards Act, (iii); Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, (vii) the Americans with Disabilities Act of 1990, (viii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (ix) state discrimination laws, (x) state unemployment compensation laws or any other similar state laws, (xi) the Worker Adjustment and Retraining Notification Act, 19 U.S.C. §§ 2101 et. seq., or (xii) any other state or federal benefits or claims

relating to any employment with the Debtors or any of their predecessors;

(j) violations, or other non-compliance, with any law(s), regulation(s), standard(s), guideline(s), enforcement order(s), or any other authority or requirement enforced by, or under the supervision of the Occupational Safety and Health Administration;

(k) claims related to the administration of the Debtors' chapter 11 cases;

(l) any theories of successor liability or causes of action related thereto;

(m) any intercompany loans and receivables between a Debtor and any Debtor affiliate, including the other Sellers; and

(n) matters of any kind or nature whatsoever, whether at law or in equity and whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or un-matured, material or nonmaterial, disputed or undisputed, whether arising prior to or during a Debtor's bankruptcy case, and whether imposed by agreement, understanding, law, equity or otherwise.

Notwithstanding the foregoing, the sale and assignment of the Purchased Assets to the Buyer shall be subject to the Buyer's assumption of all Assumed Liabilities stated in the Asset Purchase Agreement. For the avoidance of doubt, the Purchased Assets shall include all assets and properties of the Debtors, except only for the Excluded Assets. Any entity hereafter asserting an Encumbrance against the Purchased Assets is forever barred and enjoined from asserting the Encumbrance against the Purchased Assets and against the Buyer.

4. Upon the entry of this order, the Asset Purchase Agreement and the Ancillary Agreements shall be effective and binding upon the Debtors and the Buyer in accordance with the terms and conditions thereof and, upon the Closing of the Transaction, the Debtors and the Buyer shall comply with and perform timely their obligations thereunder. The transfer of the Purchased Assets to the Buyer shall constitute a legal, valid, binding, and effective transfer of the Purchased Assets. All persons or entities presently, or on or after the Closing, in possession of some or all of the Purchased Assets are directed to surrender possession of the Purchased Assets (a) to the applicable Debtor before the Closing or (b) directly to the Buyer or its designees on the Closing or at such time thereafter as the Buyer may request. All Encumbrances of record against the

Purchased Assets shall, upon Closing, be automatically terminated and expunged as against the Purchased Assets.

5. At Closing, SCI shall pay the Construction Law Obligations totaling $2,500,000 and listed on Schedule 2.01(c)(ii) to the Asset Purchase Agreement.

6. The sale and assignment of the Purchased Assets to the Buyer shall be free and clear of all Encumbrances of any nature whatsoever, except only for the Assumed Liabilities set forth expressly in the Asset Purchase Agreement.

7. The Buyer is not, as a result of any acts taken by it in connection with the purchase of the Purchased Assets (i) a successor to the Debtors, or any of them, (ii) a continuation or substantial continuation of the Debtors or any enterprise of the Debtors, or any of them, or (iii) the alter ego of the Debtors, or any of them.

8. The Buyer shall have no liability to any creditor or to any other person or entity as a purported successor to the Debtors, or any of them. The Buyer shall not be subject to any debts, liabilities, obligations, commitments, responsibilities, or claims of any kind or nature whatsoever based on successor or transferee liability. Except only for the Assumed Liabilities, the consummation of the Transaction provided by the Asset Purchase Agreement shall not subject the Buyer to any debts, liabilities, obligations, commitments, responsibilities or claims of any kind or nature whatsoever, whether known or unknown, contingent or otherwise, existing as of the date hereof or hereafter arising, of or against the Debtors or any of them, or any other person or entity by reason of the Transaction.

9. Except as otherwise set forth in the Asset Purchase Agreement, the sale to the Buyer of the Purchased Assets shall be "AS IS," "WHERE IS," and "WITH ALL FAULTS" without any representations or warranties of any kind whatsoever made by the Debtors with respect to the Purchased Assets except those made in the Asset Purchase Agreement that survive the Closing.

10. Under § 363(b) and (f) of the Bankruptcy Code, the Debtors are authorized and empowered to: (i) perform under, consummate, and implement the Asset Purchase Agreement and the Ancillary Agreements; (ii) execute all additional instruments and documents that may be

reasonably necessary or desirable to implement the Asset Purchase Agreement and the Ancillary Agreements and the Transactions contemplated thereby; (iii) take all further acts as may be necessary or appropriate for the purposes of transferring, granting, or conveying the Purchased Assets to the Buyer pursuant to the provisions of the Asset Purchase Agreement; (iv) take such other and further acts as are contemplated by the Asset Purchase Agreement or an Ancillary Agreement or reasonably required to fulfill the Debtors' obligations under the Asset Purchase Agreement or an Ancillary Agreement, all without further order of this court.

11. To the greatest extent available under applicable law and except as provided in the Asset Purchase Agreement, the Buyer shall be authorized as of the Closing Date to operate under any license (including SCI's Contractor's License #855259), permit, registration, and governmental authorization or approval of each of the Debtors with respect to the Purchased Assets, and all such licenses (including SCI's Contractor's License #855259), permits, registrations, and governmental authorizations and approvals are deemed to have been, and are, directed to be transferred to the Buyer as of the Closing Date as provided by the Asset Purchase Agreement. To the extent provided by § 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any grant, permit, or license relating to the operation of the Purchased Assets sold, transferred, assigned, or conveyed to the Buyer on account of the filing or pendency of this case or the consummation of the Transaction.

12. This order: (i) shall be effective as a determination that, (a) except for the Assumed Liabilities, no Encumbrances will be capable of being asserted against any of the Purchased Assets, the Buyer or its affiliates, or any of Buyer's or its Affiliates' assets to the extent such Encumbrances arise or relate to any of the Debtors, their pre-Closing operations or business, or the Transaction, under § 363(f) of the Bankruptcy Code, (b) except for the Assumed Liabilities, the Purchased Assets shall have been transferred to the Buyer free and clear of all Encumbrances, and (c) the conveyances described herein have been effected; and (ii) is and shall be binding upon and govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of

patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease, and each of the foregoing persons and entities is authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the Transaction contemplated by the Asset Purchase Agreement. The Purchased Assets are sold free and clear of any reclamation rights, as defined in the Uniform Commercial Code and analogous state law.

13. If any person or entity that has filed or recorded financing statements, mortgages, *lis pendens*, attachments, or other documents or agreements evidencing Encumbrances against or in the Purchased Assets shall not have delivered to the respective Debtor prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all Encumbrances that the person or entity has with respect to the Purchased Assets or otherwise, then only with regard to the Purchased Assets that are purchased by Buyer under the Asset Purchase Agreement and this order: (a) the Buyer is authorized to file, register, or otherwise record a certified copy of this order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against Buyer and the applicable Purchased Assets (for avoidance of doubt, the Buyer is not authorized to and shall not file or record any UCC-3 financing statement amendments or termination statements with respect to CIT's UCC financing statements without first obtaining either (i) the prior written consent of CIT to the form and content of any such proposed filings, or (ii) if the Buyer and CIT cannot reach agreement on the form and content of such proposed filings, an order of this court after notice and a hearing) and (b) the Buyer may seek in this court or any other court to compel appropriate parties to execute termination statements, instruments of satisfaction, and releases of all Encumbrances with respect to the Purchased Assets. This order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each

and every federal, state, or local government agency, department, or office. Notwithstanding the foregoing, the provisions of this order authorizing the sale and assignment of the Purchased Assets free and clear of all Encumbrances (other than the Assumed Liabilities) shall be self-executing, and neither the Debtors nor the Buyer shall be required to execute or file releases, termination statements, assignments, consents, or other instruments to effectuate, consummate, and implement the provisions of this order.

14. The failure to include in this order any particular provision of the Asset Purchase Agreement or any Ancillary Agreement shall not diminish or impair the effectiveness of that provision, it being the intent of the court, the Buyer, and the Debtors that the Asset Purchase Agreement and the Ancillary Agreements be authorized and approved.

15. The Asset Purchase Agreement, any Ancillary Agreement, any document or other instrument in connection with the Transaction may be modified, amended, or supplemented by the applicable Debtor(s) and the Buyer in a writing signed by such parties, after consultation with the Committee and CIT, without further order of this court, provided that any such modification, amendment, or supplement does not have a materially adverse effect on any of the Debtors' estates or the claims of CIT.

**Assumption and Assignment of Executory Contracts and Unexpired Leases**

16. To the extent that any entity did not timely file an objection to the assignment and assumption of the entity's contract, including any Acquired Contract, by the deadline to file an objection in the Sale Procedures Order, the entity shall forever be barred and estopped from objecting: (i) to the Cure Amount as the amount to cure all defaults to satisfy § 365 of the Bankruptcy Code and from asserting that any additional amounts are due or defaults exist; (ii) that any conditions to assumption and assignment must be satisfied under such contract before it can be assumed and assigned or that any required consent to assignment has not been given; or (iii) that the Buyer has not provided adequate assurance of future performance as contemplated by § 365 of the Bankruptcy Code. All objections that were timely filed have been withdrawn, have been resolved, or are overruled. Without limiting the generality of the foregoing, for the reasons set forth

on the record of the Sale Hearing, the Cure Amount associated with the DPR Construction contract is zero ($0.00).

17. The applicable Debtors are authorized under § 365 of the Bankruptcy Code to assign to the Buyer those Acquired Contracts set forth in Schedule 7.08(a) of the Asset Purchase Agreement, effective as of the Closing Date. The payment of the applicable Cure Costs in accordance with the Asset Purchase Agreement shall, in accordance with § 365(b) of the Bankruptcy Code, (i) cure all defaults under the Acquired Contracts as contemplated by § 365 of the Bankruptcy Code as of the Closing Date, (ii) compensate for any actual pecuniary loss to the counterparty of the Acquired Contract resulting from the default, and (iii) together with the assumption of the Acquired Contracts by the applicable Debtors and the assignment of the Acquired Contracts to the Buyer or an Affiliate of Buyer, constitute adequate assurance of future performance thereof.

18. SCI is authorized to pay, and shall pay, the Cure Costs set forth in **Exhibit "2"** to the Exhibits Schedule and incorporated herein by this reference. No other Cure Amount shall be owed by the Debtors in connection with the assumption and assignment of the Assigned Contracts to the Buyer or be payable on the Closing Date. The Buyer shall be responsible for paying and shall pay, as and when due, all Cure Amounts for Construction Law Obligations stated in Schedule 7.08(a) and set forth on **Exhibit "3"** to the Exhibits Schedule that do not constitute Cure Costs that must be paid on the Closing Date for the Acquired Contracts.

19. Upon the Closing and the payment of the relevant Cure Costs, if any, the Buyer shall be deemed to be substituted for the applicable Debtor(s) as a party to the applicable Acquired Contracts and the applicable Debtor(s) shall be released, under § 365(k) of the Bankruptcy Code, from any liability under the Acquired Contracts. There shall be no assignment fees, increases, or any other fees charged to the Buyer or the applicable Debtors as a result of the assumption and assignment of the Acquired Contracts. The failure of the applicable Debtors or the Buyer to enforce at any time one or more terms or conditions of any Acquired Contract shall not be a waiver of such terms or conditions or of the right of the applicable Debtors or the Buyer, as the case may be, to

enforce every term and condition of the Acquired Contract. Any Contract Counterparty that may have had the right to consent to the assignment of any Acquired Contract and did not object to the assignment of any Acquired Contract is deemed to have consented to the assignment for the purposes of § 365(e)(2)(A)(ii) of the Bankruptcy Code. The assignments of each of the Acquired Contracts are made in good faith under § 363(b) and (m) of the Bankruptcy Code and shall be free and clear of all Encumbrances under § 363(f) of the Bankruptcy Code except for the Assumed Liabilities.

20. Notwithstanding the foregoing, SCI may not assume and assign the contracts with (i) the Hesperia Unified School District, dated as of September 22, 2022 (as may have been amended, the "Hesperia Contract") and (ii) Menifee TK (as may have been amended, the "Menifee Contract", together with the Hesperia Contract, the "Subject Contracts"), unless: (a) SCI provides notice to the Hesperia School District and Menifee TK of its intention to assume and assign either or both of the Subject Contracts on or before June 2, 2023 via overnight or electronic mail; and (b)(i) the relevant contract party fails to object to the assumption on or before June 16, 2023 or (ii) the relevant contract counterparty's timely objection is overruled or resolved. In the event an objection is filed, the court shall schedule a hearing as its schedule permits to address the objection. In the event of assumption, the Buyer shall be deemed to be substituted for SCI as a party to the assumed Subject Contract(s) and SCI shall be released, under § 365(k) of the Bankruptcy Code, from any liability under the relevant Subject Contract.

21. The Debtors are authorized under § 365 of the Bankruptcy Code to reject any unexpired leases and executory contracts not assigned to the Buyer under the Asset Purchase Agreement, as may be determined by the Debtors in the exercise of their reasonable business judgment, after consultation with the Committee and CIT. Notice of any rejection of an unexpired lease or executory contract shall be deemed to be effective immediately upon the applicable Debtor giving written notice thereof to the non-debtor counterparty to the executory contract or unexpired lease.

22. Each Debtor is authorized to abandon any asset not sold or assigned to the Buyer

under the Asset Purchase Agreement that is of inconsequential value or that is burdensome to the Debtor's estate, as may be determined by the Debtor in the exercise of its reasonable business judgment, after consultation with the Committee and CIT. Notice of any abandonment shall be deemed to be effective immediately upon the applicable Debtor giving written notice thereof.

**Good Faith of the Buyer**

23. The Buyer is a buyer in good faith, and shall be entitled to all of the protections of § 363(m) of the Bankruptcy Code if this order or any authorization contained herein is reversed or modified on appeal. Under § 363(m) of the Bankruptcy Code, absent a stay of this order pending appeal entered prior to the Closing of the Transaction, the reversal or modification on appeal of this order, or any provision hereof, shall not affect the validity of the Transaction (including, without limitation, the validity of the Asset Purchase Agreement and the Ancillary Agreements), if the Closing of the Transaction occurs prior to the stay, reversal, or modification on appeal. The Debtors shall file and serve notice of the Closing of the Transaction as soon as practicable after the Closing of the Transaction.

24. None of the Debtors, the Buyer, or any Affiliate of either the Debtors or the Buyer has engaged in any collusion with other bidders or other parties or has taken any other action or inaction that would cause or permit the Transaction to be avoided or costs or damages to be imposed under § 363(n) of the Bankruptcy Code or otherwise. The consideration provided by the Buyer for the Purchased Assets under the Asset Purchase Agreement is fair and reasonable and is not less than the value of the Assets, and the Sale and the other relief provided for in this order may not be avoided under § 363(n) of the Bankruptcy Code.

25. All Liens on the Purchased Assets (which Liens shall no longer encumber the Purchased Assets after the Closing) shall attach to the proceeds of the sale of the Purchased Assets to the same extent, validity, amount, and priority as existed prior to the Closing.

**Resolution of Objections**

26. **Resolution of Objection of Philadelphia Indemnity Insurance Company**. In order to resolve the objection (the "PHLY Objection") of the Philadelphia Indemnity Insurance

Company ("PHLY"), the Buyer agrees not to purchase, and it shall not purchase, certain Bonded Receivables (as defined in the PHLY Objection). The three existing PHLY bond claims ("Bond Claims") are: (1) the claim of PMC Concrete Contractors, Inc. in the amount of $4,513.48 on the Bell Gardens ES project; (2) the claim of PMC Concrete Contractors, Inc. in the amount of $1,442.50 on the Walt Disney ES project; and (3) the claim of Foundation Building Materials, LLC in the amount of $841.56 on the Bell Gardens ES project. Nothing herein shall alter, modify, impair, subordinate, waive, or otherwise affect the legal or equitable rights and interests of PHLY, under any bonds including, but not limited to, performance bonds and payment bonds issued by PHLY (the "PHLY Surety Bonds") and related indemnity agreements with respect to any contract balances, proceeds, retainages, accounts receivable, or other contract rights that may remain due or outstanding under any contract bonded by PHLY (the "PHLY Bonded Receivables"). Nothing herein shall constitute a waiver of, and PHLY expressly reserves all rights of equitable subrogation concerning the PHLY Bonded Receivables. The PHLY Bonded Receivables for the PHLY Bond Claims described above are not being sold to the Buyer and SCI will retain responsibility for paying any amounts payable due under any PHLY Bonded Contracts. SCI is authorized and directed to pay at the Closing on the Sale the three existing PHLY Bond Claims remitting $6,797.54 to PHLY, which PHLY shall hold in trust and use for the payment of the PHLY Bond Claims or to reimburse PHLY for paying the three existing PHLY Bond Claims, to the extent paid by PHLY. For purposes of clarity, the Assumed Warranty Liabilities for the PHLY Bonded Contracts are subject to the terms and conditions in the Asset Purchase Agreement. Additionally, SCI and PHLY shall work together to identify and resolve PHLY's exposure under the PHLY Surety Bonds provided, however, that nothing herein shall diminish, modify, alter, or otherwise impair PHLY's ability or right to seek or pursue additional relief from the Bankruptcy Court concerning any and all rights that PHLY may have vis-à-vis SCI concerning the PHLY Surety Bonds, the PHLY Bonded Receivables, and the PHLY Bonded Contracts, which rights PHLY expressly reserves.

27. **Resolution of Objection of Freedom Painting West, Inc.** In order to resolve the objection (the "Freedom Painting Objection") of the Freedom Painting West, Inc. ("Freedom

Painting”), the Buyer agrees not to purchase, and it shall not purchase, any receivables to which Freedom Painting is entitled under the following contracts: (a) 11010 Santa Monica Blvd. ($24,577); (b) Beaumont High School ($692); (c) Hope on Avalon ($17,690); (d) Hope on Hyde - - Install ($33,144.40); (e) Hope on Hyde Park ($50,003.20); and Hyde Remediation/Repair ($62,591.69). The purported liens securing these projects in favor of Freedom Painting will not be affected or impaired by this order or sale, nor will any bond rights be affected with respect to the above projects. The sale will not impair any lien or bond rights of Freedom Painting, and the Buyer shall not assume the Freedom Painting contract.

28. **Resolution of Limited Objection of CIT**. In order to fully resolve the Limited Objection of CIT, notwithstanding anything to the contrary in the Asset Purchase Agreement, (i) the allocation of the Purchase Price to the Purchased Assets set forth in Section 3.04 of the Asset Purchase Agreement, including the allocation of $8.0 million to the Real Property Lease, while binding among the Sellers and the Buyer for the purpose of the Asset Purchase Agreement, shall not be determinative of how sales proceeds are actually allocated among the Purchased Assets and distributed to creditors, and the allocation of sales proceeds among the Purchased Assets shall be determined post-Closing pursuant to agreement of CIT, the Debtors and the Committee, or court order after notice and a hearing, (ii) the allocation of the payment of Cure Costs to the sale proceeds shall be determined post-Closing pursuant to agreement of CIT, the Debtors and the Committee, or court order after notice and a hearing, and (iii) $7.75 million of the sales proceeds shall be paid by the Buyer by wire to a bank account designated by CIT, and the balance of the sales proceeds shall be paid by the Buyer by wire to a bank account designated by the Sellers and maintained by the Sellers in trust. The $7.75 million payment to CIT shall be subject to a full reservation of rights (i) by the Debtors and the Committee to bring claims and causes of action challenging the validity, priority, extent, and amount of CIT’s secured claims, or that otherwise may impact CIT’s right to receive sales proceeds by virtue of CIT’s purported secured claim, and (ii) by CIT to receive additional sales proceeds by virtue of CIT’s purported secured claims and CIT’s unsecured claims.

29. **Resolution of Objection of Cardinal Sheet Metal, Inc.** In order to resolve the objection of Cardinal Sheet Metal, Inc. ("Cardinal"), SCI has agreed that the Cure Amounts owing to Cardinal under its contracts with SCI (the "Cardinal Contracts") total $219,880.06. The Buyer shall have through and including June 16, 2023, to determine whether to assume any or all of the Cardinal Contract by providing notice of its intention to Cardinal's counsel of record.

30. **Resolution of Objection of DPR Construction.** The objection [Docket #184] of DPR Construction ("DPR") to the assignment and assumption of its contract with SCI (the "DPR Contract") is overruled for the reasons set forth at the Sale Hearing. Notwithstanding such ruling, and notwithstanding anything to the contrary in the Asset Purchase Agreement, the Buyer shall have through and including June 16, 2023, to determine whether to assume the DPR Contract by providing notice of its intention to SCI, DPR's counsel of record, CIT, and the Committee.

31. **Oral Objection of United States Trustee**. At the Sale Hearing, the United States Trustee questioned the Buyer's ability to obtain a § 363(m) finding based upon loans made to SCL and SCRS prior to their bankruptcy filing. To the extent deemed an objection, the objection is overruled.

**Miscellaneous**

32. The validity of the Transaction contemplated by the Asset Purchase Agreement shall not be affected by the appointment of a trustee, the dismissal of any of the Debtors' cases, or the conversion of any of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code.

33. Any conflict between the terms and provisions of this order, and the Asset Purchase Agreement or an Ancillary Agreement, shall be resolved in favor of this order.

34. This order shall be binding in all respects upon the Buyer, the Debtors, all creditors of each of the Debtors including, without limitation, those creditors of each of the Debtors who purport to hold contingent, unliquidated, or disputed claims, all holders of equity interests in each of the Debtors, all holders of Encumbrances, and any trustee that may be appointed in any of the Debtors' chapter 11 cases or upon any conversion of any of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code. Nothing contained in any chapter 11 plan confirmed in any of

the Debtors' cases, or in any order confirming any such chapter 11 plan, shall conflict with or derogate from the provisions of this order and this order shall control to the extent of any such conflict or derogation.

35. The Debtors, the Buyer, and all creditors, governmental units and other parties-in-interest are bound by, and shall comply with, the provisions of this order and are directed to take any and all acts appropriate to facilitate the prompt consummation of the Transaction.

36. The automatic stay imposed by § 362 of the Bankruptcy Code is modified to the extent necessary or appropriate to implement the provisions of this order and the terms of the Asset Purchase Agreement and the Ancillary Agreements and to allow the Buyer to enforce its rights, including any rights to specific performance, in accordance with the terms and conditions of the Asset Purchase Agreement.

37. Notwithstanding the provisions of Rule 6004(h), Rule 6006(d), Rule 7062, Rule 9014 or any other provisions of the Federal Bankruptcy Rules, this order shall be effective immediately after its entry absent a stay pending appeal of this order.

38. In accordance with the provisions of the Sale Procedures Orders, Silver Creek Acquisition, LLC is designated as the Backup Buyer. In the event that the Buyer fails to close timely the Transaction contemplated by the Asset Purchase Agreement, and the Debtors duly terminate the Asset Purchase Agreement in accordance with the terms of the Asset Purchase Agreement, the Backup Buyer shall close its transaction with the Debtors pursuant to its asset purchase agreement with the Debtors ("Backup Buyer Transaction") by the later of three (3) business days after the termination of the Asset Purchase Agreement or June 9, 2023. The court finds that, upon any closing of the Backup Buyer Transaction, (i) the Backup Buyer is a buyer in good faith and, as such, shall be entitled to all of the protections of § 363(m) of the Bankruptcy Code if this order or any authorization contained herein is reversed or modified on appeal, (ii) neither the Backup Buyer nor any affiliate of the Backup Buyer has taken any action or by any inaction has violated § 363(n) of the Bankruptcy Code and there is no basis to avoid the Backup Buyer Transaction or to impose costs or damages under § 363(n), and (iii) the Backup Buyer will in

all respects be substituted for the Buyer under this order, and shall be entitled to all rights, benefits and protections, and subject to all obligations, of the Buyer hereunder, except only for any asserted right of the Buyer to a Break-Up Fee . A true and complete copy of the asset purchase agreement is attached as **Exhibit "4"** to the Exhibits Schedule and is incorporated herein by this reference. In the event that the asset purchase agreement of the Backup Buyer becomes effective, it shall be amended to reflect the Backup Buyer's increased purchase price as a result of its bidding at the Auction (i.e., $20,250,000, plus any obligation to pay a Break-Up Fee to the Buyer).

39. The Debtors are authorized to take all actions necessary to effectuate the relief granted under this order. Upon the Closing, each of the Debtors is authorized to change its legal name, and file any documents necessary to effectuate such name change, without further order of the court.

40. Until each of the Debtors' cases are closed or dismissed, this court shall retain exclusive jurisdiction to (i) enforce and implement the terms and provisions of the Asset Purchase Agreement and the Ancillary Agreements, (ii) compel each of the Debtors or the Buyer to perform their respective obligations under the Asset Purchase Agreement and the Ancillary Agreements, (iii) resolve any disputes, controversies, or claims arising out of or relating to the Asset Purchase Agreement, the Ancillary Agreements or the Transactions contemplated thereby, and (iv) interpret, implement, and enforce the provisions of the Asset Purchase Agreement, the Ancillary Agreements and this order. Without limiting the generality of the foregoing, each of the Debtors, and any successor to any of the Debtors, and the Buyer shall have the right to request, on such notice as may be appropriate, any relief and remedies that may be appropriate to enforce the provisions of this order including, without limitation, injunctive relief, a contempt citation, sanctions, and other damages against any creditor or other party that may violate the provisions hereof.

41. Good cause, valid reasons and the record of these cases amply support entry of this order. This order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a). This order shall be effective, and the parties may consummate the Transaction (including, without

limitation, the Asset Purchase Agreement and the Ancillary Agreements) approved by this order, immediately upon entry of this order.

42. Except as set forth expressly herein to the contrary, no further notice or court appearance shall be necessary to effectuate the foregoing.

###

Date: June 2, 2023

Scott H. Yun
United States Bankruptcy Judge

Approved as to form:

Dated: May 31, 2023

WINTHROP GOLUBOW HOLLANDER, LLP

[signature]

Robert Opera
[Proposed] Counsel for Debtor
Silver Creek Industries, LLC

Dated: May 31, 2023

RINGSTAD & SANDERS LLP

SEE ATTACHED SIGNATURE PAGE

Todd C. Ringstad
[Proposed] Counsel for Debtors
Silver Creek Leasing LLC and
Silver Creek Industries RS LLC

Dated: May 31, 2023

TUCKER & ELLIS

SEE ATTACHED SIGNATURE PAGE

Thomas R. Fawkes
[Proposed] Counsel for the
Official Committee of Unsecured Creditors

Dated: May 31, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SEE ATTACHED SIGNATURE PAGE

Theodore A. Cohen
Counsel for First-Citizens Bank & Trust Company,
Successor by Merger to CIT Bank, N.A., as
Administrative Agent and Lender

Dated: May 31, 2023

LOEB & LOEB LLP

SEE ATTACHED SIGNATURE PAGE

Vadim J. Rubinstein
Counsel for Silver Creek Modular, LLC

[SIGNATURES CONTINUED ON NEXT PAGE]

Approved as to form:
Dated: May 31, 2023

WINTHROP GOLUBOW HOLLANDER, LLP

SEE ATTACHED SIGNATURE PAGE
Robert Opera
[Proposed] Counsel for Debtor Silver Creek Industries, LLC

Dated: May 31, 2023

RINGSTAD & SANDERS LLP

Todd C. Ringstad
[Proposed] Counsel for Debtors Silver Creek Leasing LLC and Silver Creek Industries RS LLC

Dated: May 31, 2023

TUCKER & ELLIS

SEE ATTACHED SIGNATURE PAGE
Thomas R. Fawkes
[Proposed] Counsel for the Official Committee of Unsecured Creditors

Dated: May 31, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SEE ATTACHED SIGNATURE PAGE
Theodore A. Cohen
Counsel for First-Citizens Bank & Trust Company, Successor by Merger to CIT Bank, N.A., as Administrative Agent and Lender

Dated: May 31, 2023

LOEB & LOEB LLP

SEE ATTACHED SIGNATURE PAGE
Vadim J. Rubinstein
Counsel for Silver Creek Modular, LLC

Approved as to form:

Dated: May 31, 2023

WINTHROP GOLUBOW HOLLANDER, LLP

SEE ATTACHED SIGNATURE PAGE

Robert Opera
[Proposed] Counsel for Debtor Silver Creek Industries, LLC

Dated: May 31, 2023

RINGSTAD & SANDERS LLP

SEE ATTACHED SIGNATURE PAGE

Todd C. Ringstad
[Proposed] Counsel for Debtors Silver Creek Leasing LLC and Silver Creek Industries RS LLC

Dated: May 31, 2023

TUCKER & ELLIS

Thomas R. Fawkes
[Proposed] Counsel for the Official Committee of Unsecured Creditors

Dated: May 31, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SEE ATTACHED SIGNATURE PAGE

Theodore A. Cohen
Counsel for First-Citizens Bank & Trust Company, Successor by Merger to CIT Bank, N.A., as Administrative Agent and Lender

Dated: May 31, 2023

LOEB & LOEB LLP

SEE ATTACHED SIGNATURE PAGE

Vadim J. Rubinstein
Counsel for Silver Creek Modular, LLC

Approved as to form:

Dated: May 31, 2023

WINTHROP GOLUBOW HOLLANDER, LLP

SEE ATTACHED SIGNATURE PAGE

Robert Opera
[Proposed] Counsel for Debtor Silver Creek Industries, LLC

Dated: May 31, 2023

RINGSTAD & SANDERS LLP

SEE ATTACHED SIGNATURE PAGE

Todd C. Ringstad
[Proposed] Counsel for Debtors Silver Creek Leasing LLC and Silver Creek Industries RS LLC

Dated: May 31, 2023

TUCKER & ELLIS

SEE ATTACHED SIGNATURE PAGE

Thomas R. Fawkes
[Proposed] Counsel for the Official Committee of Unsecured Creditors

Dated: May 31, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

Theodore A. Cohen
Counsel for First-Citizens Bank & Trust Company, Successor by Merger to CIT Bank, N.A., as Administrative Agent and Lender

Dated: May 31, 2023

LOEB & LOEB LLP

SEE ATTACHED SIGNATURE PAGE

Vadim J. Rubinstein
Counsel for Silver Creek Modular, LLC

Approved as to form:

Dated: May 31, 2023

WINTHROP GOLUBOW HOLLANDER, LLP

SEE ATTACHED SIGNATURE PAGE

Robert Opera
[Proposed] Counsel for Debtor Silver Creek Industries, LLC

Dated: May 31, 2023

RINGSTAD & SANDERS LLP

SEE ATTACHED SIGNATURE PAGE

Todd C. Ringstad
[Proposed] Counsel for Debtors Silver Creek Leasing LLC and Silver Creek Industries RS LLC

Dated: May 31, 2023

TUCKER & ELLIS

SEE ATTACHED SIGNATURE PAGE

Thomas R. Fawkes
[Proposed] Counsel for the Official Committee of Unsecured Creditors

Dated: May 31, 2023

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

SEE ATTACHED SIGNATURE PAGE

Theodore A. Cohen
Counsel for First-Citizens Bank & Trust Company, Successor by Merger to CIT Bank, N.A., as Administrative Agent and Lender

Dated: May 31, 2023

LOEB & LOEB LLP

Vadim J. Rubinstein
Counsel for Silver Creek Modular, LLC

Dated: June 1, 2023

FAEGRE DRINKER BIDDLE & REATH LLP

Jay Jaffe
Counsel for Silver Creek Acquisition, LLC