1  ROBERT E. OPERA -- State Bar No. 101182
   ropera@wghlawyers.com
2  PETER W. LIANIDES – State Bar No. 160517
   plianides@wghlawyers.com
3  **WINTHROP GOLUBOW HOLLANDER, LLP**
   1301 Dove Street, Suite 500
4  Newport Beach, CA 92660
   Telephone: (949) 720-4100
5  Facsimile: (949) 720-4111

6  [Proposed] General Insolvency Counsel for
   Silver Creek Industries, LLC, Debtor and Debtor-in-Possession
7

8  TODD C. RINGSTAD – State Bar No. 97345
   todd@ringstadlaw.com
9  **RINGSTAD & SANDERS, LLP**
   4910 Birch Street, Suite 120
10 Newport Beach, CA 92660
   Telephone: (949) 851-7450
11 Facsimile: (949) 851-6926

12 [Proposed] General Insolvency Counsel for
   Silver Creek Industries RS, LLC and Silver Creek Leasing, LLC,
13 Debtors and Debtors-in-Possession

14            **UNITED STATES BANKRUPTCY COURT**

15            **CENTRAL DISTRICT OF CALIFORNIA**

16                  **RIVERSIDE DIVISION**

17

18 | In re:

19 | ☒ SILVER CREEK INDUSTRIES, LLC
   | ☐ SILVER CREEK LEASING, LLC
20 | ☐ SILVER CREEK INDUSTRIES RS, LLC
   | ☐ All Debtors.
21

22 | Debtors and
   | Debtors-in-Possession.
23

Jointly Administered under
Case No. 6:23-11677-SY with
Case No. 6:23-12165-SY and
Case No. 6:23-12167-SY

Chapter 11 Proceedings

**NOTICE OF APPLICATION AND
APPLICATION OF DEBTOR AND
DEBTOR-IN-POSSESSION FOR
AUTHORITY TO EMPLOY B RILEY
ADVISORY SERVICES AS ITS
FINANCIAL ADVISOR; MEMORANDUM
OF POINTS AND AUTHORITIES; AND
DECLARATIONS OF JAMES MCGEEVER
AND J. MICHAEL ISSA IN SUPPORT
THEREOF**

[No Hearing Requested Pursuant to
Local Bankruptcy Rule 9013-1(o)]

# **TABLE OF CONTENTS**

I.    STATEMENT OF FACTS .................................................................................... 5

    A.    General Description of the Debtor.................................................... 5
    B.    Financial Performance of the Debtor............................................... 5
    C.    Secured Claims Against the Debtor................................................. 6
    D.    Debtor's Financial Difficulties ....................................................... 7
    E.    CIT's Asserted Claims..................................................................... 8
    F.    Expedited Sale Proceedings............................................................ 9
    G.    Auction Proceedings ..................................................................... 10

II.    THE DEBTOR'S PROPOSED EMPLOYMENT OF THE FIRM ........................ 11

    A.    The Need for the Firm's Employment............................................ 11
    B.    The Firm's Qualifications and Services to Be Rendered............... 11
    C.    Terms of the Proposed Employment.............................................. 12
    D.    Fee Applications ............................................................................ 13
    E.    Disclosure of Relationship with the Debtor.................................. 14

III.   THE BANKRUPTCY CODE AUTHORIZES THE DEBTOR TO
    EMPLOY THE FIRM........................................................................................ 15

    A.    The Firm Does Not Hold an Interest Adverse to the Estate .......... 16
    B.    The Firm Is Disinterested.............................................................. 16
    C.    The Firm's Employment Should Be Approved ............................. 16

IV.    THE MONTHLY PAYMENT PROCEDURES PROPOSED BY THE
    FIRM ARE APPROPRIATE AND SHOULD BE APPROVED BY THIS
    COURT    ..................................................................................................... 17

    A.    Requiring the Firm to Wait an Extended Period of Time for
        Payment of Its Fees in the Debtor's Case May Cause Undue Hardship
        to the Firm..................................................................................... 19
    B.    The Firm Will Be Able to Respond to Any Reassessment of Fees
        Ordered by This Court ................................................................... 19
    C.    The Fee Procedures Will Be the Subject of Notice to Creditors ... 20

V.    NOTICE OF THE APPLICATION IS APPROPRIATE, AND NO FURTHER
    HEARING IN RESPECT OF THE APPLICATION IS REQUIRED,
    UNLESS SUCH HEARING IS ORDERED BY THIS COURT OR
    SPECIFICALLY REQUESTED BY A PARTY-IN-INTEREST ........................... 21

VI.    CONCLUSIONS................................................................................................ 21

# TABLE OF AUTHORITIES

## CASES

In re Fleming Companies, Inc.,
  304 B.R. 85, 88 (Bankr.D.Del. 2003) ...................................................................................17

In re Gire,
  107 B.R. 739, 746 (Bankr. E.D. Cal. 1989) ..........................................................................15

Jefferson Bus. Ctr. Assocs.,
  135 B.R. 676, 672-673, 680 (Bankr. D. Colo. 1992)............................................................18

In re Knudsen,
  84 B.R. 668, 671 (B.A.P. 9th Cir. 1988) ...............................................................17, 18, 20

In re Lee,
  94 B.R. 172, 177 (Bankr. C.D. Cal. 1989)............................................................................16

In re Lotus Props. LP,
  200 B.R. 388, 391, 396-398 (Bankr. C.D. Cal. 1996) ...................................................15, 17, 18

In re Mariner Post-Acute Network, Inc.,
  257 B.R. 723 (Bankr.D.Del. 2000) .......................................................................................17

In re Park Helena Corp.,
  63 F.3d 877, 880-82 (9th Cir. 1995) .....................................................................................15

In re Pittsburgh Corning Corp.,
  255 B.R. 162 (Bankr.W.D.Pa. 2000) ....................................................................................17

Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney,
  347 B.R. 647, 688 (B.A.P. 9th Cir. 2006)..............................................................................16

## STATUTES

11 U.S.C. § 101(14) ...................................................................................................16, 26
11 U.S.C. § 327 ....................................................................................................25, 14, 15
11 U.S.C. § 327(a) ..............................................................................................2, 315, 17
11 U.S.C. § 328(a) .......................................................................................................2, 17
11 U.S.C. § 330 ...........................................................................................13, 18, 20, 25, 30
11 U.S.C. § 331.......................................................................................13, 18, 19, 20, 25, 29, 30
11 U.S.C. § 1107(a). ..................................................................................................15

1

**OTHER AUTHORITIES**

2

Section 4027 of the CARES Act.................................................................................................6

3

**RULES**

Local Bankruptcy Rule 2014-1(b)(2)(A) ..................................................................................21
Local Bankruptcy Rule 2016-1(b) ...........................................................................................19
Local Bankruptcy Rule 9013-1(O) ...........................................................................................2
Federal Rules of Bankruptcy Procedure 2002 .........................................................................21
Federal Rules of Bankruptcy Procedure 2014 ...............................................................3, 15, 16

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    **TO THE HONORABLE SCOTT H. YUN, UNITED STATES BANKRUPTCY**

2    **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, CREDITORS AND**

3    **OTHER PARTIES-IN-INTEREST:**

4    **PLEASE TAKE NOTICE** that Silver Creek Industries, LLC, the debtor and debtor-in-

5    possession in the above-captioned Chapter 11 case ("Debtor"), will and hereby moves this Court

6    by this Application ("Application") for the entry of an order, pursuant to Section 327(a) and

7    328(a) of the United States Bankruptcy Code, authorizing the Debtor to employ and compensate

8    B. Riley Financial Advisory Services ("Firm") as the Debtor's financial advisor in this case.

9    The Debtor believes that good cause exists for the Debtor to employ the Firm as its

10    financial advisor in this case. The Firm assisted the Debtor in connection with the preparation for

11    the Debtor's Chapter 11 filing, the sales process and has substantial knowledge of the Debtor's

12    financial affairs and material aspects of the Debtor's case. The Debtor needs the services of the

13    Firm to advise the Debtor regarding due diligence and bankruptcy process in the matter of section

14    363 sale.  The Firm has substantial experience and expertise regarding matters of Ch 11 bankruptcy

15    and is well-qualified to assist the Debtor.  The terms of the Debtor's proposed retention of the Firm

16    in this case are reasonable.  The Firm has no material conflicts with respect to the matters for which

17    the Firm is to be engaged that would preclude the Debtor from employing the Firm in this case.

18    This Application is made and based upon the foregoing representations, the Memorandum

19    of Points and Authorities, and the Declarations of J. Michael Issa ("Issa Declaration") and James

20    McGeever ("McGeever Declaration") appended hereto, the pleadings and other documents on file

21    in this Chapter 11 case, and upon such other and additional evidence, both oral and documentary,

22    that may be presented to the Court at or before the time of the hearing on this Application.

23    **IF YOU DO NOT OPPOSE THE APPLICATION DESCRIBED ABOVE, YOU**

24    **NEED NOT TAKE FURTHER ACTION; HOWEVER, IF YOU OBJECT TO THE**

25    **RELIEF REQUESTED IN THE APPLICATION, PURSUANT TO LOCAL**

26    **BANKRUPTCY RULE 9013-1(O), YOUR OBJECTION MUST BE FILED WITH THE**

27    **COURT WITHIN FOURTEEN (14) DAYS OF THE DATE OF SERVICE OF THIS**

28

1    **NOTICE, PLUS AN ADDITIONAL THREE (3) DAYS IF YOU WERE SERVED BY**

2    **MAIL.  YOU MUST FILE YOUR OBJECTION AND REQUEST FOR A HEARING**

3    **WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT LOCATED AT**

4    **3420 TWELFTH STREET, RIVERSIDE, CALIFORNIA 92501. YOU MUST SERVE A**

5    **COPY OF YOUR OBJECTION TO THE APPLICATION AND REQUEST FOR A**

6    **HEARING THEREON UPON THE DEBTOR'S COUNSEL AT THE MAILING**

7    **ADDRESS STATED IN THE OUPPER LEFT CORNER OF THIS APPLICATION, AND**

8    **UPON THE OFFICE OF THE UNITED STATES TRUSTEE LOCATED AT 3801**

9    **UNIVERSITY AVE., RIVERSIDE, CA 92501. UPON RECEIPT OF A WRITTEN**

10    **OBJECTION TO THE APPLICATION AND A REQUEST FOR A HEARING THEREON,**

11    **IF ANY, THE DEBTOR'S COUNSEL WILL OBTAIN A HEARING DATE ON THE**

12    **APPLICATION AND GIVE APPROPRIATE NOTICE THEREOF.  ANY FAILURE TO**

13    **TIMELY FILE AND SERVE OBJECTIONS MAY RESULT IN ANY SUCH**

14    **OBJECTIONS BEING WAIVED.**

15        **WHEREFORE,** the Debtor respectfully requests that this Court enter an order granting to

16    the Debtor the following relief:

17        1.    Approving this Application;

18        2.    Authorizing the Debtor, pursuant to Section 327(a) of the Bankruptcy Code and

19    Rule 2014(a) of the Federal Rules of Bankruptcy Procedure, to employ the Firm as its financial

20    advisor, effective as of the April 24, 2023 petition date ("Petition Date"), with compensation of

21    the Firm to be in accordance with the terms set forth herein;

22        3.    Authorizing the Debtor to pay to the Firm 80% of its accruing fees and 100% of

23    its accruing costs, on a monthly basis, to the extent that funds exist to pay such compensation,

24    pursuant to the terms, conditions and procedures set forth herein; and

25    / / /

26    / / /

27

28

1        4.      Granting to the Firm such other and further relief as the Court deems just and

2  appropriate.

3  DATED:  May ___, 2023          **B. Riley Advisory Services**

4

5                        By:_____

6                          J. Michael Issa

                            [Proposed] Financial Advisor for

7                            Debtor and Debtor-in-Possession

8

9  **Submitted by:**

10  **WINTHROP GOLUBOW HOLLANDER, LLP**

11

12  By: _/s/ Robert E. Opera_____

         Robert E. Opera

13  [Proposed] General Insolvency Counsel for the

  Debtor and Debtor-In-Possession

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

**A.**     **General Description of the Debtor.**

The Debtor is a California limited liability company. The Debtor's principal place of business is located in Perris, California.

The Debtor was founded in 2005 and is in the business of manufacturing modular buildings, primarily for schools, commercial projects and (formerly) for multi-family residential projects.

As of December 31, 2022, the Debtor had about 370 employees. As a result of staffing cuts undertaken by the Debtor and certain employee defections, however, the Debtor had about 219 employees as of the Petition Date.

**B.**     **Financial Performance of the Debtor.**[1]

The Debtor's revenues for the past several years are as follows:

1.      2019 -- $99,567,240.

2.      2020 -- $122,512,982.

3.      2021 -- $132,487,840.

4.      2022 -- $97,944,409.

5.      January 1, 2023 – March 31, 2023 (est.) – $20,992,101.

The Debtor generated almost $22.0 million in net income in 2019 and almost $18.0 million in net income in 2020. However, the Debtor's operations became unprofitable in 2021. The Debtor had almost $11.0 million in operating losses in 2021 and losses of approximately $31.0 million in 2022. The Debtor's operations have been unprofitable in 2023.

---

[1] Information contained herein regarding the financial affairs of the Debtor for the years 2019 through 2021 are derived from the audited financial statements for the Debtor.  The financial information for the Debtor for 2022 and for 2023 derives from unaudited, internally-prepared financial statements. The financial information provided for 2023 are preliminary and not final.

1    The Debtor's assets consist primarily of the following: cash; accounts receivable;

2    inventory; leased machinery and equipment; a real property lease which is believed to be

3    substantially below market; and potential refunds and governmental credits. Furthermore, the

4    Debtor has numerous customer orders which are believed to have considerable value in a going

5    concern scenario.

6    **C.**    **Secured Claims Against the Debtor.**

7        **a.**    **CIT's Secured Claims.**  On or about October 19, 2020, the Debtor and

8    affiliates of the Debtor, on one hand, and CIT Bank N.A., on the other hand, entered into a

9    credit agreement by which CIT advanced to the Debtor and affiliates of the Debtor

10   (collectively, "Borrowers") a $45.0 million term loan ("Loan").[2]

11       CIT asserts that, as of the Petition Date, the Debtor and the other Borrowers owed

12   to CIT an amount in excess of $48.0 million. CIT asserts that the Loan is secured by

13   substantially all of the assets of the Debtor (excluding bankruptcy avoidance actions), and

14   substantially all of the assets of the Debtor's affiliates.[3] The Debtor believes that, as of the

15   Petition Date, CIT's asserted collateral for the Loan had a value substantially less than the

16   amount of CIT's claim.

17       **b.**    **No Other Valid Secured Claims.**  The Debtor has conducted lien searches

18   in order to determine the secured claims asserted against the Debtor.  Based upon such lien

19   searches and the Debtor's knowledge of its financial affairs, the Debtor believes that, apart

20   from CIT's secured claim, which the Debtor reserves the right to dispute, there are <u>no</u>

21   valid, duly perfected and unavoidable secured claims. This matter is addressed in further

22   detail in the Debtor's Emergency Motion for Order Authorizing Use of Any Cash

23

24

25   [2] The Loan was made by CIT Bank, N.A., as a Lender, and as the Administrative Agent for MS Facilities LLC, in
accordance with the terms and conditions of the Main Street Lending Program established by the Board of Governors
26   of the United States Federal Reserve System pursuant to Section 4027 of the CARES Act. First-Citizens Bank & Trust
Company is the Successor by Merger to CIT Bank, N.A. ("CIT").

27   [3] The Debtor asserts that CIT has <u>no</u> security interest in the Debtor's real property lease for its premises. The Debtor
believes that such lease is a substantially below market lease and has great value. Furthermore, the Debtor is
28   evaluating whether CIT has any interest in a tax refund (an Employee Retention Tax Credit) which potentially has
substantial value, and reserves all rights, claims and interests with respect thereto.

Collateral of Secured Claimants (Docket No. 8).[4]

D.    **Debtor's Financial Difficulties**.

In 2021, the Debtor started having financial difficulties.  The causes of the Debtor's financial difficulties include the following.

1.    **COVID-19 Pandemic/Change in Business Mix**.  The Debtor historically has generated a substantial amount of revenue from manufacturing modular buildings for schools and commercial projects. As a result of the COVID-19 pandemic, however, orders for school projects and commercial projects slowed, resulting in a significant loss of revenue from such projects. In order to try to maintain revenue, the Debtor took on a larger number of residential projects. The residential projects generally were lower profitability jobs than the school and commercial projects, resulting in a reduction in profitability of the Debtor's business.

2.    **Losses on Residential Projects**.  In 2021 and 2022, the Debtor suffered substantial losses on certain residential projects. The Debtor had substantially more experience building school and commercial projects than residential projects (e.g., revenue from residential projects constituted only about 4% of the Debtor's total revenue in 2020). The Debtor's relative inexperience building residential projects led to inefficiencies in executing such projects and resulting losses associated therewith. The losses on the Debtor's residential projects caused strain on the Debtor's cash flow, resulting in the Debtor's having difficulty meeting its accruing obligations. The Debtor determined in 2022 not to build new residential projects given the problems associated with the execution of such projects.

3.    **Surety Bond Issues**. The Debtor's school projects and many other projects require the Debtor to provide performance and payment surety bonds. Given the

---

[4] Claims have been asserted against surety bonds issued by the Debtor's pre-petition surety, Hartford Fire Insurance Company and affiliates thereof ("Hartford"). The Debtor disputes such claims and believes that such claims are substantially overstated. The Debtor intends to attempt to resolve such claims, and is hopeful that Hartford will have no significant equitable lien or other claim against the Debtor.

deterioration in the Debtor's financial affairs, in or about December 2022, the Debtor's surety bond provider, Hartford, gave notice to the Debtor that Hartford no longer would provide to the Debtor new surety bonds for the Debtor's projects. Without surety bond support, the Debtor cannot operate its business in the ordinary course. Despite the Debtor's efforts, the Debtor has been unable to obtain a new surety bond provider.

**4.      Burdensome Secured Debt.** CIT asserts against the Debtor a secured claim in an amount in excess of $48.0 million. As a result of the deterioration in the Debtor's financial affairs, the Debtor is concerned that it will not be able to service timely the amount of such debt.

The Debtor acted diligently to address its financial difficulties. The Debtor undertook significant reductions in its workforce, ceased taking on new residential construction jobs, and reduced other operating expenses in order to attempt to return to profitability. While the Debtor believes that its efforts to return to profitability ultimately would be successful, the Debtor's debt burdens, cash flow issues and bonding issues remain serious concerns for the Debtor.

**E.      CIT's Asserted Claims.**

CIT asserts that, as of February 10, 2023, the Debtor was in default under the Loan Agreements. CIT asserts, among other things, that the Debtor failed to comply with certain financial covenants contained in its loan agreements with the Debtor and the other Borrowers, and that the Debtor failed to pay to CIT an interest payment that was owed to CIT in January 2023.

CIT expressed to the Debtor concerns about the deterioration in the Debtor's financial condition and questioned the viability of the Debtor's business. The Debtor and CIT engaged in discussions regarding the Debtor's financial affairs and the Debtor's ability to pay CIT's claim. Based upon such discussions and in light of the Debtor's financial difficulties, the Debtor determined to pursue, in Chapter 11, an auction of substantially all of its assets in order to attempt to maximize the value of the assets for the benefit of the Debtor's creditors.

/ / /

/ / /

### F.    **Expedited Sale Proceedings.**

Based upon the challenges facing the Debtor, the Debtor determined that the best means for the Debtor to preserve value in the Debtor's assets and to produce as favorable a recovery for the Debtor's creditors as may be possible under the circumstances of this case is for the Debtor to attempt to sell the Debtor's business as a going concern. Toward that end, the Debtor reached out to a number of prospective bidders for the Debtor's assets, engaged in extensive discussions over a period of weeks with two primary bidders and, based upon such discussions, determined to enter into a term sheet ("Term Sheet") with Silver Creek Modular, LLC, a California limited liability company, a wholly-owned subsidiary of Webb Investments Co., LLC ("Stalking Horse Bidder"). The Term Sheet sets forth the material terms of a proposed sale of the Debtor's business to the Stalking Horse Bidder, subject to an Auction process. The Debtor and the Stalking Horse Bidder are working on preparing the definitive Asset Purchase Agreement.

The Debtor must pursue in this case a prompt sale process with a closing of a sale to occur during the week of May 29, 2023. By reason of the Debtor's financial difficulties, the Debtor no longer can obtain new surety bond support and therefore is precluded from performing work on most of its scheduled new projects and from bidding on new projects. The Debtor is experiencing employee defections and the Debtor is at risk of losing business to competitors. The Debtor's Cash Collateral Budget, which is attached as Exhibit "4" to the Omnibus Declaration of James McGeever filed in support of the Debtor's "first day" motions [Docket No. 12], indicates that the Debtor will be able to operate its business until the week of May 29, 2023, but that the Debtor thereafter will lack cash sufficient to continue its operations. Consequently, in order to avoid a deterioration in the Debtor's assets and enterprise value resulting from such financial difficulties, the Debtor believes that it has no alternative but to act promptly to implement and close a sale transaction. The Stalking Horse Bidder has required by its Term Sheet that the Debtor close the proposed transaction by **June 2, 2023**.

On May 1, 2023, the Debtor filed its Motion For Order Approving: (1) Sale And Bidding Procedures In Connection With The Sale Of Substantially All Of The Assets Of The Debtor Free

And Clear Of Liens And Interests; (2) Proposed Break-Up Fee; And (3) Manner Of Notice To Be Provided To Creditors And Parties-In-Interest In Connection With Sale Motion ("Sale Procedures Motion") requesting, in part, that the Court approve sale and bidding procedures in connection with Auction proceedings in this case. A hearing on the Sales Procedures Motion has been set for May 10, 2023. The Court has preliminarily scheduled a hearing on the Sale Motion for May 30, 2023.

The Debtor acknowledges that sale proceedings timeline in this case is fairly accelerated but given the Debtor's cash flow concerns and projected business deterioration, the Debtor believes that, by necessity, there needs to be a prompt sale process in this case if the Debtor is going to be able to fulfill its goal of maximizing the recovery by creditors in this case.

### G.    Auction Proceedings.

The Debtor has engaged in serious discussions with two potential purchasers of substantially all of the Debtor's assets, the Stalking Horse Bidder and Whitley Manufacturing Co., Inc. ("Whitley"). These potential purchasers both have executed confidentiality agreements with the Debtor, have conducted extensive diligence investigations in furtherance of a possible transaction with the Debtor, and have submitted term sheets for a possible transaction. After very active negotiations conducted over a number of weeks with these potential purchasers, which resulted in significant improvements in the provisions of the potential purchasers' respective term sheets, the Debtor determined to accept, subject to the approval of the Court, the offer reflected in the Stalking Horse Bidder's Term Sheet, subject to overbidding pursuant to Auction proceedings. Both potential purchasers continue their diligence investigations and continue to pursue actively a transaction with the Debtor. The Debtor is hopeful that a vibrant Auction of the Debtor's assets will ensue in this case.

/ / /

/ / /

## II.

## THE DEBTOR'S PROPOSED EMPLOYMENT OF THE FIRM

By this Application, the Debtor proposes to employ the Firm as its financial advisor in the Debtor's case. The Debtor respectfully submits that good cause exists for this Court to authorize the Debtor to employ the Firm.

### A.    The Need for the Firm's Employment.

The Firm served pre-petition as the Debtor's financial advisor in connection with providing advice to the Debtor regarding a resolution of the Debtor's financial difficulties, evaluating the strategic alternatives available to the Debtor and preparing for the Debtor's Chapter 11 filing. The Firm has acquired substantial knowledge of the Debtor's financial affairs, the Debtor's assets and liabilities, the secured and unsecured claims asserted against the Debtor and matters pertaining to the financials of this Chapter 11 case and has taken a lead role in assisting the Debtor to effectuate a sale of substantially all of the Debtor's assets for the benefit of the Debtor's creditors. The Debtor requires the Firm to continue to serve as its financial advisor in this case.  As a result, the Debtor seeks to employ the Firm, effective as of the Petition Date, in accordance with the terms set forth herein and in the Issa Declaration.

### B.    The Firm's Qualifications and Services to Be Rendered.

The Firm is a nationally recognized national financial advisory firm specializing in the areas of insolvency, corporate reorganization, and out-of-court workouts, and is well-qualified to represent the Debtor in this case.

The Debtor requires the Firm to render to the Debtor the following types of professional services:

1.    To assist Client with the preparation and/or review of the various materials needed for the filing of Client's chapter 11 case including but not limited to the preparation of materials and to assist with the oversight and management of that process;

2.      To assist Client with the preparation and/or review of the various ongoing post-petition bankruptcy compliance forms required by the Office of the United States Trustee;

3.      To assist with and provide such other declarations, analysis, and/or expert reports and live testimony which may be needed to accomplish Client's goals of effecting a sale of the business though the bankruptcy process;

4.      To provide due diligence support for the Debtor in the sale of its assets;

**C.      Terms of the Proposed Employment.**

The Firm will render services to the Debtor at the Firm's regular hourly rates, which may be subject to adjustment from time to time.  The current hourly rates of the Firm are set forth in the Issa Declaration.  The Debtor and the Firm have agreed, subject to the Court's approval, to the terms of the Firm's employment in the case.

As set forth in the Issa Declaration, the Debtor made pre-petition payments to the Firm for its services, providing to the Firm a pre-petition retainer payment with a balance as of the Petition Date in the amount of approximately $122,410 ("Retainer") for the Firm's post-petition services in this case. The Retainer is held, and will continue to be held, in trust by the Firm and will be disbursed by the Firm only pursuant to the Court's approval of this Application.

The Debtor proposes the following procedures, which mirror the provisions of the Guide to Motion for Employment of Professionals and Treatment of Retainer promulgated by the Office of the United States Trustee ("Fee Guide"), in order for the Firm to draw down on the Retainer to obtain compensation for its fees and costs.

The Firm will file a copy of the Firm's monthly billing statements itemizing the fees and costs incurred on behalf of the Debtor during the preceding month ("Professional Fee Statement"), and will serve copies of the Professional Fee Statement upon the Debtor, the U.S. Trustee, those parties who request special notice in the Debtor's case, and upon counsel for the Official Committee of Unsecured Creditors ("Committee").

1    If no objection to the Professional Fee Statement is filed and served within ten (10) days

2    after the service of the Professional Fee Statement, the Firm will withdraw from its trust account

3    80% of the fees and 100% of the costs represented by that Professional Fee Statement and will

4    pay to itself those sums, without further notice, hearing or order of the Court.  If a written

5    objection to the Professional Fee Statement is filed by a party-in-interest, the Firm will refrain

6    from withdrawing the amount of the disputed funds from its trust account, or if the Retainer has

7    been exhausted, the Debtor will not pay to the Firm the amount of the disputed funds, until the

8    objection has been resolved by the Court.  Notwithstanding any objection to a Professional Fee

9    Statement, the Firm may be paid any undisputed amount of fees and costs represented by a

10   Professional Fee Statement.

11   If the Retainer is exhausted, the Debtor may <u>replenish</u>, on a monthly basis, an amount

12   equal to the Firm's monthly fees and expenses incurred in the case (as set forth in the Professional

13   Fee Statement), and the Firm then will be entitled to draw down on such funds pursuant to the

14   Firm's compliance with the monthly payment procedures set forth herein.

15   No fees or costs paid to the Firm pursuant to the proposed monthly payment procedures

16   will be deemed to be allowed by the Court.  No failure by any creditor or party-in-interest to

17   object to any Professional Fee Statement will be deemed to be a waiver of any objection to the

18   Firm's fees and costs represented by such Professional Fee Statement.  Any such objection will be

19   reserved and may be asserted by any creditor or other party-in-interest in connection with the

20   filing of a fee application by the Firm.  No fees or costs of the Firm will be deemed to be allowed

21   in this case, except only pursuant to an order of the Court with respect to a fee application filed by

22   the Firm after notice and a hearing.

23   **D.    <u>Fee Applications</u>.**

24   The Firm intends to apply to this Court for compensation in conformity with the

25   requirements of Bankruptcy Code Sections 330 and 331.  The Firm understands that its

26   compensation in the Debtor's case will be subject to the approval of the Court.  All funds paid to

27

28

the Firm pursuant to the proposed monthly payment procedures will be subject to allowance by the Court, upon appropriate application and noticed hearing.

The Firm intends to file, approximately every one-hundred twenty (120) days, as warranted, its fee application in this case in order to obtain approval of the Firm's fees and costs, including the twenty percent (20%) of the Firm's fees "held back" pursuant to the proposed monthly payment procedures.

At the conclusion of this case, the Firm will file an appropriate application seeking final allowance of all fees and costs, regardless of whether interim compensation has been paid to the Firm.  Upon allowance of such fees and costs, the Debtor will pay to the Firm the difference between the amounts allowed to the Firm and any interim compensation paid to the Firm.  The Firm understands and agrees that, if aggregate interim payments made to the Firm exceed the amount that the Court ultimately allows to the Firm, the Firm will be required to, and will, promptly repay to the Debtor such difference.

**E.**    **Disclosure of Relationship with the Debtor.**

As set forth in the Issa Declaration, the Firm has conducted a conflicts check with respect to the Debtor, the Debtor's creditors and equity security holders.  Based upon such conflicts check, the Firm believes that the Firm does not hold or represent any interest adverse to the Debtor or the Debtor's estate that would impair the Firm's ability to perform objectively professional services for the Debtor, in accordance with Section 327 of the Bankruptcy Code. By the Issa Declaration, the Firm discloses all known "connections" to parties-in-interest in this case.

To the best of the Firm's knowledge, neither the Firm nor any of its professionals: (i) is a creditor, an equity security holder, or an insider of the Debtor as of the Petition Date; (ii) is or was, within two years before the Petition Date, a director, officer or employee of the Debtor; or (iii) has an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtor or for any other reason.

None of the professionals comprising or employed by the Firm is related to any judge of

the United States Bankruptcy Court for the Central District of California, the U.S. Trustee, or to

any person employed by the U.S. Trustee other than Brad Smith.   Mr. Smith is the spouse of

Judge Bluebond and works in a controller position in another division of B. Riley unrelated to the

Advisory Group handling this matter.  The Firm has not agreed to share with any person or entity

any compensation received by the Firm in this case, except as among the members of the Firm.

### III.

### THE BANKRUPTCY CODE AUTHORIZES

### THE DEBTOR TO EMPLOY THE FIRM

Section 327 of the Bankruptcy Code, which governs employment of professional persons,

provides, in pertinent part, as follows:

> . . . the trustee[5], with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

1 U.S.C. § 327(a).

Rule 2014 of the Federal Rules of Bankruptcy Procedure ("Rule 2014") mandates that a

professional seeking approval of its employment by the bankruptcy estate disclose "any proposed

arrangement for compensation" and "all of the person's connections with the debtor, creditors,

any other party in interest, their respective attorneys and accountants, [and] the United States

trustee . . ."   All facts pertinent to a court's determination of whether the professional is

disinterested or holds an interest adverse to the estate must be disclosed.  The professional is

required to make a full, candid and complete disclosure in its motion for employment.  See, In re

Lotus Props. LP, 200 B.R. 388, 391 (Bankr. C.D. Cal. 1996) (citing In re Park Helena Corp., 63

F.3d 877, 880-82 (9th Cir. 1995)); In re Gire, 107 B.R. 739, 746 (Bankr. E.D. Cal. 1989); Fed. R.

Bankr. P. 2014.

---

[5] Except for certain limitations not applicable here, a debtor has all of the rights and powers of, and performs all of the functions and duties of, a trustee in a Chapter 11 case.  11 U.S.C. § 1107(a).

**A.    The Firm Does Not Hold an Interest Adverse to the Estate.**

The phrase "adverse interest" is not statutorily defined; however, courts have stated that a party will be deemed to hold or represent an "adverse interest" to the estate where it: (1) possesses or asserts any economic interest that would tend to lessen the value of the bankruptcy estate or that would create an actual or potential dispute in which the estate is a rival claimant; or (2) possesses a predisposition under circumstances that render such a bias against the estate.  Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney (In re Tevis), 347 B.R. 647, 688 (B.A.P. 9th Cir. 2006); In re Lee, 94 B.R. 172, 177 (Bankr. C.D. Cal. 1989).  Here, neither the Firm nor any professionals who are members of the Firm possess or assert an economic interest that would tend to lessen the value of the Debtor's estate or that would create an actual or potential dispute against the estate or has a predisposition that will create a bias against the estate.  Accordingly, the Firm does not hold an interest adverse to the Debtor's estate.

**B.    The Firm Is Disinterested.**

"Disinterested persons" are defined in Section 101(14) as follows:

"disinterested person" means [a] person that -
    (A) is not a creditor, an equity security holder, or an insider;
    (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and
    (C) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

The Firm is not a creditor or insider of the Debtor.  The Firm is not and was not within two years before the petition date an employee of the Debtor.  In addition, the Firm does not have an interest materially adverse to the interest of the Debtor's estate or of any class of creditors of the Debtor.  Based on the disclosure made herein, the Firm is disinterested.

**C.    The Firm's Employment Should Be Approved.**

Based on the foregoing and the disclosure made in the Issa Declaration, which satisfies the disclosure requirements imposed by the Bankruptcy Code, Rule 2014 of the Federal Rules of Bankruptcy Procedure, and Local Bankruptcy Rule 2014-1, the Firm has met the required

1  standards for employment in this case.  Accordingly, this Court may authorize the proposed

2  employment of the Firm as general insolvency counsel to the Debtor pursuant to Bankruptcy

3  Code Section 327(a).

4  **IV.**

5  **THE MONTHLY PAYMENT PROCEDURES PROPOSED BY THE**

6  **FIRM ARE APPROPRIATE AND SHOULD BE APPROVED BY THIS COURT**

7       Professionals may be compensated in accordance with monthly payment procedures

8  without a bankruptcy court's prior allowance of the professional's fees and costs.  In re Knudsen,

9  84 B.R. 668 (B.A.P. 9th Cir. 1988); In re Lotus Props. LP, 200 B.R. at 396-98; In re Pittsburgh

10  Corning Corp., 255 B.R. 162 (Bankr.W.D.Pa. 2000) (approving order permitting monthly interim

11  payment of 80% of undisputed amount of professionals' fees subject to quarterly review and

12  hearing by the court; overruling the US Trustee objections, and holding that the challenged

13  procedure, which maintained the safeguards of notice, opportunity to be heard, and court review,

14  complied with the requirements of the Bankruptcy Code); In re Mariner Post-Acute Network, Inc.,

15  257 B.R. 723 (Bankr.D.Del. 2000) (approving monthly conditional interim payments of 80% of

16  requested professional fees without prior court approval, subject to later review and

17  disgorgement); In re Fleming Companies, Inc., 304 B.R. 85, 88 (Bankr.D.Del. 2003) (referring the

18  prior granting of the "Procedures Motion" which "provides that the professionals in the case may

19  be paid 80% of their fees and 100% of their expenses on a monthly basis after filing and providing

20  notice to interested parties of their monthly bills. Those payments are, however, subject to the

21  subsequent filing of quarterly fee applications and ultimate allowance by the Court after notice and

22  a quarterly fee hearing.").

23       In Knudsen, the Ninth Circuit Bankruptcy Appellate Panel ("BAP") reasoned that, since

24  Section 328(a) of the Bankruptcy Code allows a bankruptcy court to authorize professionals to

25  receive as compensation a retainer, which contemplates payment of a lump sum at the beginning

26  of a case or periodically thereafter, "[i]t makes little sense that the court could allow payment of a

27  lump sum or periodic retainer before fees are earned, but not after." Id. at 671.  The circumstances

28

under which such arrangements may be approved, as articulated by the BAP in <u>Knudsen</u>, are as follows: (1) the case is unusually large; (2) an extended waiting period for payment would place an undue hardship on counsel; (3) counsel can respond to any reassessment; and (4) the payment procedure itself is subject to a noticed hearing.  <u>Id</u>. at 672-73.  The Firm believes that the proposed monthly payment procedures in this case are appropriate under Sections 330 and 331 of the Bankruptcy Code, and are consistent with the BAP's decision in the <u>Knudsen</u> case.

       The fact that the Debtor's case may not be as large as the <u>Knudsen</u> case should not preclude the Firm from being able to obtain monthly payment of its fees and costs in the case. <u>See</u>, <u>Lotus Props.</u>, 200 B.R. 388 at 397-398 (the "message" behind <u>Knudsen</u> and the intent of the U.S. Trustee Guidelines are satisfied by allowing counsel to obtain monthly post-petition payments, notwithstanding the fact that the size of the Chapter 11 case is smaller than <u>Knudsen</u>). Similarly, in <u>In re Jefferson Business Center Associates</u>, the bankruptcy court stated as follows:

> "While it is often the case that post-petition retainer and the ability to draw against such retainer are granted in large bankruptcy case, and usually to large law firms, this Court sees no reason to treat smaller law firms any differently where the facts and circumstances of the case warrant the payment of a post-petition retainer.  A smaller law firm can and often does face the same, or perhaps greater, burdens, costs, inconvenience, and financial strain, as does a larger firm if it is unable to receive a retainer.  A small firm should not be treated any differently, as long as it meets all of the criteria referenced above."

<u>Jefferson Bus. Ctr. Assocs.</u>, 135 B.R. 676, 680 (Bankr. D. Colo. 1992).   See also <u>In re Truong</u>, 259 B.R. 264, 268 (Bankr. D.N.J. 2001) (citing Jefferson that "smaller law firms should not be treated any differently").

       By this Application, the Firm requests approval of monthly payment procedures consistent with the Fee Guide.  Moreover, the Local Bankruptcy Rules provide for the approval of monthly payment procedures, as follows:

> (b) **Motions to Approve Compensation Procedures in Chapter 11 Cases, Including Monthly Draw-down and Contingency or Success Fee Agreements.** A professional person employed in a chapter 11 case may request approval for and modifications of draw-down procedures and an order allowing payment of interim compensation more frequently than once every 120 days.

1  Local Bankruptcy Rule 2016-1(b).

2    **A.**    **Requiring the Firm to Wait an Extended Period of Time for Payment of Its Fees**

3    **in the Debtor's Case May Cause Undue Hardship to the Firm.**

4    Without a monthly payment procedure in this case, the Firm may suffer undue hardship.

5  The Firm anticipates that it will be required to devote significant time to the Debtor's case. The

6  Firm expects that at least two professionals of the Firm, will be required to work on the Debtor's

7  case, and that J. Michael Issa of the Firm will be required to devote a substantial percentage of his

8  working time to assist the Debtor.

9    The Debtor's case has been extremely active, and will continue to be extremely active for

10  at least the first forty (40) days after the Petition Date. By necessity, the Debtor's case will be

11  pursued on an accelerated timeline in that, given the Debtor's financial distress, the Debtor must

12  close a sale of its assets by June 2, 2023. Consequently, in order to meet the time demands of the

13  Debtor's case, the Firm will be required to devote a very substantial amount of time to the

14  Debtor's case, at least in the early stages of the case.

15    Due to the nature of the required commitment of the Firm's resources to the Debtor's case,

16  requiring the Firm to wait for periods of at least 120 days to obtain payment of its fees pursuant to

17  section 331 of the Bankruptcy Code may place undue hardship on the Firm. It would be

18  burdensome for the Firm if it were effectively required to "finance" the Debtor's case, at the

19  Firm's financial risk.  A monthly payment arrangement is necessary to ameliorate the financial

20  hardships that otherwise would be imposed upon the Firm in this case.

21    **B.**    **The Firm Will Be Able to Respond to Any Reassessment of Fees Ordered by**

22    **This Court.**

23    As set forth in the Issa Declaration, the Firm will be able to respond to any order entered

24  by this Court reassessing fees paid to the Firm pursuant to the requested monthly payment

25  procedures.  The Firm and its partners have the ability to respond to any such reassessment of fees

26  paid to the Firm.  The Firm is one of the preeminent financial advisory firms in the nation, whose

27  professionals have extensive experience in the bankruptcy community.  The Firm has always been

28

1    and remains in a position to respond to any Court-ordered reassessment of its fees. The Firm

2    understands that its ultimate compensation in this case is subject to the provisions of Sections 330

3    and 331 of the Bankruptcy Code, and is prepared to respond to any such reassessment.  In short,

4    the Firm's longevity and financial stability attest to the fact that it will be able to respond to any

5    Court-ordered reassessment of fees in this case.

6         **C.**     **The Fee Procedures Will Be the Subject of Notice to Creditors.**

7         As is evidenced by the proof of service submitted concurrently with the notice to creditors

8    of this Application, notice of the monthly payment procedures requested by this Application was

9    provided to all of the Debtor's creditors, to all parties who requested special notice, counsel for the

10   Committee and to the U.S. Trustee's Office.  Such parties have been provided with an opportunity

11   to object to the relief requested by this Application.

12        The monthly payment procedures provided for by this Application are very similar to the

13   monthly payment procedures approved by the BAP in the <u>Knudsen</u> case and meet the

14   requirements established by the BAP in the <u>Knudsen</u> case for authorizing monthly payment

15   procedures.  <u>First</u>, the monthly payment procedures provided for by this Application allow for

16   ample scrutiny of the Firm's fees and costs by creditors and by this Court.  The fees and costs paid

17   to the Firm on a monthly basis are not automatically deemed allowed by this Court.  Instead, the

18   Firm is required to apply for allowance of its fees and costs in accordance with the requirements of

19   the Bankruptcy Code.  The scrutiny of the Firm's fees by creditors and this Court, therefore,

20   remains undiminished by the monthly payment procedures proposed herein.  <u>Second</u>, in the event

21   that any fees and costs paid on a monthly basis to the Firm are not ultimately allowed by this

22   Court, the Firm can and will repay to the Debtor the amount thereof.

23        By virtue of the foregoing, the Debtor believes that the monthly payment procedures

24   provided for by this Application satisfy the requirements articulated by the <u>Knudsen</u> decision.

25   / / /

26   / / /

27

28

**V.**

## **NOTICE OF THE APPLICATION IS APPROPRIATE, AND NO FURTHER HEARING IN RESPECT OF THE APPLICATION IS REQUIRED, UNLESS SUCH HEARING IS ORDERED BY THIS COURT OR SPECIFICALLY REQUESTED BY A PARTY-IN-INTEREST**

Notice of the relief requested by this Application has been provided to CIT, counsel for the Committee, all parties who have requested special notice, the U.S. Trustee and any other party-in-interest entitled to notice under Fed. R. Bankr. P. 2002 and Local Bankruptcy Rule 2014-1(b)(2)(A) and will be provided to counsel for the Committee. Such parties, therefore, will be afforded an opportunity to object to the Application and request a hearing on this Application, should they object to the relief requested herein. Consequently, the Firm has complied fully with the applicable federal and local rules.

**VI.**

## **CONCLUSION**

Based upon the foregoing, the Debtor respectfully submits that good cause exists for this Court to enter an order granting this Application and such other and further relief as the Court deems just and appropriate.

DATED: May ___, 2023

**B. Riley Advisory Services**

By: _____
J. Michael Issa
[Proposed] Financial Advisor for
Debtor and Debtor-in-Possession

## DECLARATION OF J. MICHAEL ISSA

I, J. Michael Issa, declare and state as follows:

1.      I am the Senior Management Director with B. Riley Advisory Services ("Firm") and am authorized to make this Declaration on behalf of the Firm.  I have personal knowledge of the facts set forth herein and, if called upon to testify, I could and would do so competently and truthfully.

2.      I make this Declaration in support of the Application for Entry of an Order Authorizing Debtor to Employ B. Riley Advisory Services as its Financial Advisor ("Application") filed by Silver Creek Industries, LLC the debtor and debtor-in-possession in the above-captioned Chapter 11 case ("Debtor").  I have reviewed the Application and, to the best of my knowledge, the factual representations contained therein regarding the Firm's representation of the Debtor are materially correct.[6]

## Terms of Retention of the Firm

3.      By the Application, the Debtor seeks to employ the Firm to serve as its financial advisor in this case, at the expense of the Debtor's estate.

4.      The Firm is an advisory firm comprised of professionals who specialize in insolvency, bankruptcy and corporate reorganization and is well qualified to represent the Debtor in this case.

5.      The Debtor and the Firm have agreed, subject to the Court's approval, to the terms of the Firm's employment in this case.  These terms are set forth hereinbelow. As stated in the McGeever Declaration, the Debtor has approved the terms of the employment of the Firm in this case.

6.      The Firm will render services to the Debtor at the Firm's regular hourly rates, which may be subject to adjustment from time to time. Attached as Exhibit "1" hereto and incorporated herein by this reference is the engagement letter:

---

[6] Unless otherwise defined herein, the definitions of the capitalized terms contained herein are as set forth in the Application.

7.      The Debtor requires the services of the Firm to render to the Debtor the following types of professional services:

(a)     To assist Client with the preparation and/or review of the various materials needed for the filing of Client's chapter 11 case including but not limited to the preparation of materials and to assist with the oversight and management of that process;

(b)     To assist Client with the preparation and/or review of the various ongoing post-petition bankruptcy compliance forms required by the Office of the United States Trustee;

(c)     To assist with and provide such other declarations, analysis, and/or expert reports and live testimony which may be needed to accomplish Client's goals of effecting a sale of the business though the bankruptcy process;

(d)     To provide due diligence support for the Debtor in the sale of its assets;

8.      The Debtor made pre-petition payments to the Firm for its services, providing to the Firm a pre-petition retainer payment with a balance as of the Petition Date in the amount of approximately $122,410 to fund payments for the Firm's post-petition services in this Chapter 11 case ("Retainer").

9.      The Firm has deposited into its client trust account the amount of the Retainer.  The Retainer will remain on deposit in the Firm's trust account and no disbursements will be made therefrom, except only in accordance with the following proposed monthly payment procedures:

(a)     The Firm will file a copy of the Firm's monthly billing statements itemizing the fees and costs incurred by the Firm on behalf of the Debtor during the preceding month ("Professional Fee Statement"), and will serve copies of the Professional Fee Statement upon the Debtor, the U.S. Trustee, those parties who request special notice in the Debtor's case, and upon counsel for the official committee of unsecured creditors ("Committee") .

(b)     If no objection to the Professional Fee Statement is filed and served within ten (10) days after the service of the Professional Fee Statement, the Firm will be entitled to withdraw from its trust account 80% of the fees and 100% of the costs represented by

that Professional Fee Statement and will pay to itself those sums, without further notice, hearing or order of the Court.  If a written objection to the Professional Fee Statement is filed by a party-in-interest, the Firm will refrain from withdrawing the amount of the disputed funds from its trust account, or if the Retainer has been exhausted, the Debtor will not pay to the Firm the amount of the disputed funds, until the objection has been resolved by the Court.  Notwithstanding any objection to a Professional Fee Statement, the Firm will be entitled to be paid any undisputed amount of fees and costs represented by a Professional Fee Statement.

(c)      No fees or costs paid to the Firm pursuant to the proposed monthly payment procedures will be deemed to be allowed by the Court.  No failure by any creditor or party-in-interest to object to any Professional Fee Statement will be deemed to be a waiver of any objection to the Firm's fees and costs represented by such Professional Fee Statement. Any such objection will be reserved and may be asserted by any creditor or other party-in-interest in connection with the filing of a fee application by the Firm.  No fees or costs of the Firm will be deemed to be allowed in this case, except only pursuant to an order of the Court with respect to a fee application filed by the Firm after notice and a hearing.

10.      The Firm has advised the Debtor, and the Debtor has acknowledged, that the amount of the Retainer will not be sufficient to satisfy the entire amount of the fees and costs which will be incurred by the Firm on behalf of the Debtor in this case.  Accordingly, subject to the approval of the Court, the Firm has requested that the Debtor agree, and the Debtor has agreed, that, after the Retainer is exhausted, the Debtor will pay to the Firm, on a monthly basis, the amount of the Firm's accruing fees and costs.  In this regard, after the Retainer is exhausted, the Firm will be entitled to serve each month a Professional Fee Statement requesting payment of 80% of the fees and 100% of the costs incurred by the Firm during the prior month, and will be entitled to payment of 80% of the fees and 100% of the costs reflected in such Professional Fee Statement, by the Firm's complying with the monthly payment procedures set forth in paragraph 9 of this Declaration.  The 20% balance of the Firm's fees will not be paid to the Firm by the Debtor, but

1    will be maintained by the Debtor in a segregated account from which no disbursements will be

2    made to the Firm, except upon further order of the Court awarding to the Firm such fees pursuant

3    to a fee application filed by the Firm after appropriate notice and a hearing.

4         11.    The Firm intends to apply to this Court for compensation in conformity with the

5    requirements of Sections 330 and 331 of the Bankruptcy Code.  The Firm understands that its

6    compensation in the Debtor's case will be subject to the approval of the Court.  No funds paid to

7    the Firm pursuant to the proposed monthly payment procedures will be deemed to be allowed by

8    the Court.  All funds paid to the Firm pursuant to the proposed monthly payment procedures will

9    be subject to allowance by the Court, upon appropriate application and noticed hearing.

10         12.    At the conclusion of this case, the Firm will file an appropriate application seeking

11    final allowance of all fees and costs of the Firm, regardless of whether interim compensation has

12    been paid to the Firm.  The Firm understands and agrees that the proposed arrangement for

13    compensation from the Debtor's estate is subject to the provisions of Sections 327 and 330 of the

14    Bankruptcy Code.  In accordance with the provisions of Section 330 of the Bankruptcy Code, the

15    Firm's request for such compensation for its fees and costs is subject to review by the Court

16    relative to the reasonableness thereof.  Upon allowance of such fees and costs, the Debtor will pay

17    to the Firm the difference between the amounts allowed to the Firm and any interim compensation

18    paid to the Firm.  The Firm understands and agrees that, if aggregate interim payments made to the

19    Firm exceed the amount that is ultimately allowed to the Firm, the Firm will be required to, and

20    will, promptly repay to the Debtor such difference.

21    **Disinterestedness of the Firm**

22         13.    The Firm commenced rendering services to the Debtor during the first week of

23    March 2023. Payment for the Firm's pre-petition services was made by a retainer payment

24    provided by the Debtor. No pre-petition payment made to the Firm by the Debtor was paid on

25    account of any antecedent debt.

26         14.    The Firm was owed no amount by the Debtor as of the Petition Date. The Firm,

27    therefore, was not a creditor of the Debtor as of the Petition Date.

28

15.     The Firm has conducted a conflicts check with respect to the Debtor's twenty (20) largest unsecured creditors.  The conflicts check indicates that the Firm has never represented any of such creditors.  To the best of the Firm's knowledge, the Firm has never represented any other creditor of the Debtor.  Moreover, to the best of the Firm's knowledge, the Firm has no "connection" with any creditors of the Debtor or other parties-in-interest related to the Debtor or this Chapter 11 case, except as set forth in paragraph 18 hereinbelow.

16.     To the best of the Firm's knowledge, neither the Firm nor any of its professionals (i) was a creditor, an equity security holder, or an insider of the Debtor as of the Petition Date, or (ii) is or was, within two years before the Petition Date, a member, director, officer or employee of the Debtor.

17.     The Firm believes that it does not hold or represent any interest materially adverse to the interests of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtor or for any other reason.  The Firm believes also that it has no conflict that would impair the Firm's ability to perform professional services for the Debtor in accordance with Section 327 of the Bankruptcy Code.

18.     To the best of my knowledge, none of the professionals comprising or employed by the Firm is related to any judge of the United States Bankruptcy Court for the Central District of California, the U.S. Trustee, or to any person employed by the U.S. Trustee other than Brad Smith. Mr. Smith is the spouse of Judge Bluebond and works in a controller position in another division of B. Riley unrelated to the Advisory Group handling this matter.  Based upon the foregoing, the Firm believes that it is "disinterested" within the meaning of Section 101(14) of the Bankruptcy Code.

### The Proposed Monthly Compensation Procedures Are Fair

19.     By the Application, the Firm requests that it be authorized to be paid its accruing fees and costs on a monthly basis, after the Retainer is exhausted, pursuant to the monthly

payment procedures proposed by the Application.  The Firm believes that the proposed monthly payment procedures are fair.

20.    Given the Debtor's projected cash flow difficulties, by necessity the Debtor's case and the sale proceedings in this case must proceed on an accelerated timeline. Consequently, the Firm anticipates that, within about the first forty days after the Petition Date, the Firm will be required to devote a substantial amount of time and resources to this case. The Firm has rendered, and, in most instances will need to continue to render, within such time period, among others, the following services for the Debtor:

(a)    Negotiating with CIT regarding the Debtor's use of any cash collateral of CIT in the Debtor's case.

(b)    Evaluating the extent of CIT's asserted security interest, opposing CIT's claim against the Debtor's very valuable (unencumbered) real property lease, and evaluating the Debtor's interest in the Tax Credit.

(c)    Evaluating the claims of other potential secured claimants in this case.

(d)    Evaluating the claims of Hartford, the Debtor's pre-petition surety bond provider.

(e)    Preparing, serving notice of and appearing at hearings on three (3) emergency motions of the Debtor ("Emergency Motions"), the relief sought by which was essential to the Debtor's ability to administer this case and to pursue a sale transaction in this case.

(f)    Assisting the Debtor to comply with U.S. Trustee requirements.

(g)    Preparing a Sale Procedures Memorandum with regard to the auction proceedings in this case and negotiating with CIT and other parties-in-interest the terms thereof.

(h)    Preparing the Debtor's Sale Procedures Motion.

(i)    Engaging in extensive negotiations with the two primary bidders, the Stalking Horse Bidder and Whitley.

(j)      Addressing with the Debtor the Debtor's marketing of the sale of the Debtor's assets in this case.

(k)      Consulting with CIT, the two primary bidders and other parties-in-interest with respect to the sale process in this case.

(l)      Evaluating the Asset Purchase Agreement prepared by the Stalking Horse Bidder, and working on the Asset Purchase Agreement and the voluminous schedules thereto.

(m)      Evaluating reclamation claims asserted in the case.

(n)      Reviewing claims asserted by creditors in this case.

(o)      Assisting the Debtor to prepare the Debtor's Schedules of Assets and Liabilities.

(p)      Preparing for and attending any auction that will take place in this case.

(q)      Preparing any replies to any objections which may be asserted with respect to the Sale Motion and preparing for and appearing at the hearing on the Sale Motion.

(r)      Attending the initial debtor interview to be conducted by the U.S. Trustee in this case.

(s)      Attending the first meeting of creditors that will be conducted pursuant to Section 341(a) of the Bankruptcy Code in this case.

21.      Based upon the results of the sale process in this case, the Firm may be required to prepare for the Debtor a Chapter 11 plan in order to distribute to creditors proceeds from the sale, and to address all issues associated with the confirmation of such plan.

22.      Accordingly, I anticipate that the Debtor's Chapter 11 case will be very active, particularly within about the first forty days after the Petition Date. Based thereon, I anticipate that the Firm will be required to take a very active role during the early stages of this case, and to perform during the early stages of this case services that generally may be performed by a debtor's counsel over a much longer period of time in a Chapter 11 case.

23.    Given the nature of the Debtor's case, without monthly payment procedures in the case, the Firm may suffer undue hardship.  The Firm anticipates that it will be required to spend substantial time assisting the Debtor in this Chapter 11 case and that at least three of the attorneys of the Firm and a paralegal will be required to devote a significant amount of their billing time to the representation of the Debtor.  In particular, as lead counsel for the Debtor in this case, I have been required to devote, and will continue to be required to devote, a substantial percentage of my billing time to meeting the needs of the Debtor in this case. As a result, a significant amount of the Firm's resources will need to be devoted to the Debtor's case.

24.    Given the required commitment of the Firm's resources to the Debtor's case, requiring the Firm to wait for periods of at least 120 days to obtain payment of its fees pursuant to Section 331 of the Bankruptcy Code may place undue hardship on the Firm.  It would be burdensome for the Firm if it were effectively required to "finance" the Debtor's case, at the Firm's financial risk.  The Firm believes that a monthly payment arrangement is necessary to ameliorate the financial hardships that otherwise would be imposed upon the Firm in this case.

25.    I believe that the monthly payment procedures provided for by the Application are reasonable.  First, the proposed monthly payment procedures track the provisions of the U.S. Trustee's Fee Guide for professionals to draw down on retainers.  Second, the proposed monthly payment procedures allow for ample scrutiny of the Firm's fees and costs by creditors and by this Court.  The fees and costs paid to the Firm pursuant to the proposed monthly payment procedures are not automatically deemed allowed by this Court.  Instead, the Firm is required to apply for allowance of its fees and costs in accordance with the requirements of the Bankruptcy Code.  The scrutiny of the Firm's fees by creditors and this Court, therefore, remains undiminished by the monthly payment procedures proposed herein.  Third, in the event that any fees and costs paid on a monthly basis to the Firm are not ultimately allowed by this Court, the Firm can and will repay to the Debtor the amount thereof.

26.    The Firm will be able to respond to any order entered by this Court reassessing fees paid to the Firm pursuant to the requested monthly payment procedures.  The Firm and the

1  partners of the Firm have the ability to respond to any such reassessment of fees paid to the

2  Firm.  The Firm understands that its ultimate compensation in this case is subject to the

3  provisions of Sections 330 and 331 of the Bankruptcy Code and is prepared to respond to any

4  such reassessment.  The Firm's reputation and financial stability and the standing of its partners

5  in the bankruptcy community attest to the fact that the Firm will be able to respond to any Court-

6  ordered reassessment of fees in this case.

7      27.    By the proposed monthly payment procedures, the Firm proposes that, after the

8  Retainer is exhausted, the Firm be paid monthly 80% for the Firm's accruing fees.  The 20%

9  balance of the Firm's fees will be held back and deposited into a segregated account with

10  disbursements thereof made only pursuant to further orders of the Court awarding any such fees

11  pursuant to fee applications made by the Firm pursuant to Sections 330 or 331 of the Bankruptcy

12  Code.  Such hold back of payment of 20% of the Firm's accruing fees will minimize the risk of

13  any Court-ordered reassessment of the Firm's fees.

14                    **Disclosures Regarding Firm's Billing Practices**

15      28.    The Firm has not agreed to share with any person or entity any compensation

16  received by the Firm in the Debtor's case, except as among the members of the Firm and the

17  attorneys who are of counsel to the Firm.

18      29.    The Firm has not agreed to a variation of its standard or customary billing

19  arrangements for this engagement.

20      30.    None of the Firm's professionals included in this engagement has varied his or her

21  rate based on the geographic location of this Chapter 11 case.

22      I declare under penalty of perjury that the foregoing is true and correct.

23      Executed this 11th day of May 2023, at Irvine, California.

24

25

26                                  J. Michael Issa

27

28

-30-

EXHIBIT 1

**B | RILEY**®
*Advisory Services*

19800 MacArthur Blvd., Ste. 820
Irvine, CA 92612
Tel: (949) 561-3750
www.brileyfin.com

March 20, 2023

Jim McGeever, CEO
Silver Creek Industries, LLC
2830 Barrett Ave.
Perris, CA 92571

Rob Opera
Winthrop Golubow Hollander
1301 Dove Street, 5th Floor
Newport Beach, CA 92660

Re:    Bankruptcy Preparation and Ongoing Support Services

## Introduction

This engagement letter confirms our understanding that Silver Creek Modular Industries, LLC ("Client") is engaging GlassRatner Advisory & Capital Group dba B. Riley Advisory Services ("B. Riley"), to provide bankruptcy preparation and other bankruptcy financial advisory services to Client in the anticipated Chapter 11 case.

The services will be rendered by J. Michael Issa, Wen Tan, and various other consultants or professionals as appropriate.  B. Riley Advisory reserves the right to utilize other B. Riley Advisory professionals not named herein as required.

## Scope of Services

**Financial Advisory Services to be Provided:**
- **We will assist Client with the preparation and/or review of the various materials needed for the filing of Client's chapter 11 case.  It is our understanding that you have retained your accounting firm to take the lead on the preparation of these materials and that our initial mandate to assist with the oversight and management of that process.**
- **We will also assist Client with the preparation and/or review of the various ongoing post-petition bankruptcy compliance forms required by the Office of the United States Trustee.**
- **We will assist with and provide such other declarations, analysis, and/or expert reports and live testimony which may be needed to accomplish Client's goals of effecting a sale of the business though the bankruptcy process.**

Such other tasks as Client may request and B. Riley Advisory may agree.

## Employment

Debtor's Counsel will present our application to be employed to the Bankruptcy Court at Debtor's expense.

**B | RILEY** *Advisory Services*

## Compensation

Our professional fees for the work performed on this matter will be based on the number of hours worked at the hourly billing rates listed below.  All out of pocket costs are billed in addition at actual cost incurred.  Our firm's hourly rates for this engagement range from $175 to $575 per hour.  Mike Issa, who manages our bankruptcy practice in California, will lead this engagement and will report directly to you and Debtor's counsel.   Mr. Issa will manage our day-to-day activities and will assign staff as appropriate.  Rates for the professionals that might be involved in this matter are set out below:

| | |
|---|---|
| Mike Issa, Principal | $575 |
| Wen Tan | $375 |
| Other Staff | $300 to $575 |

In matters where travel is required, we tend to bill ½ of the required travel time.  We will provide detailed billing monthly or at other logical points during the engagement.  As is customary for an engagement of this type, we require a retainer of **$25,000** concurrent with the  commencement of work.  Such retainer shall be held and applied to our last invoice.  B. Riley will repay any unearned portion of such retainer to Client within 15 days of this Agreement's termination.  Our fees are not contingent on the outcome of the matter.  .

## Court Approval of Fees and Costs Incurred

The Client agrees that B. Riley may seek court approval of fees and costs incurred on an interim basis during Client's Chapter 11 case. It is expressly understood that as part of its application to be employed, that B. Riley will ask the court to approve monthly payment procedures i.e. *Knudsen Payment Procedures*.  If the Client and B. Riley fail to reach a mutually satisfactory agreement concerning adequate assurance of payment, Client hereby agrees that B. Riley shall have the absolute right to withdraw as a financial consultant for the Client, be immediately relieved of any and all obligations to perform further services or otherwise represent Client, retain all fees and costs earned and paid to date without prejudice to B. Riley's right to collect unpaid fees and costs in excess of amounts previously paid to B. Riley.  If B. Riley agrees to continue representing Client without being provided with such adequate assurance of payment, B. Riley shall not be deemed to have waived its rights to seek payment of fees and costs, nor shall B. Riley be deemed to have waived its right to withdraw as financial consultant any time thereafter.  All fees and costs paid or payable to B. Riley are expressly conditioned upon Bankruptcy Court approval and amortization.  B. Riley agrees the same shall be subject to the Bankruptcy Code, Federal Rules of Bankruptcy Procedure, local Bankruptcy Rules and the Guideline of the Office of the United States Trustee.

## Limitations

Although Mr. Issa and various other members of the firm are Certified Public Accountants, B. Riley is not a public accounting firm.  Our procedures and consulting services will not constitute an "Audit" or "Review" in accordance with generally accepted auditing standards in the United States.  Accordingly, we will not be expressing an Audit Opinion on any of the financial or other data received in this engagement.

## Governing Law; Dispute Resolution

The laws of the State of California shall govern this agreement and any controversy arising under it with respect to our pre-petition fees.     The parties agree that any disputes arising hereunder over pre-petition fees shall be resolved by binding arbitration.    The parties agree that the

**B RILEY** *Advisory Services*

bankruptcy court will have jurisdiction over our employment in the bankruptcy case and over our post-petition fees.

<u>**Conclusion**</u>

I look forward to working with you on this important matter.  If you agree with the terms of this agreement, please sign and return one copy to me.  All correspondence should be directed to:

J. Michael Issa, Senior Managing director
GlassRatner Advisory & Capital Group, LLC dba
B. Riley Advisory Services
19800 MacArthur Blvd, Suite 820
Irvine, CA 92612
(949) 407-6620
missa@brileyfin.com


**Silver Creek Industries, LLC**

By :_____    Date :___3/21/23_____
     Jim McGeever, CEO

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1301 Dove Street, Suite 500, Newport Beach, CA 92660.

A true and correct copy of the foregoing document entitled: **NOTICE OF APPLICATION AND APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR AUTHORITY TO EMPLOY B RILEY ADVISORY SERVICES AS ITS FINANCIAL ADVISOR; MEMORANDUM OF POINTS AND AUTHORITIES; AND DECLARATIONS OF JAMES MCGEEVER AND J. MICHAEL ISSA IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>**June 30, 2023**</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**:  On <u>**June 30, 2023**</u>, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

United States Bankruptcy Court
Central District of California
Honorable Scott H. Yun
3420 Twelfth Street, Suite 345 / Courtroom 302
Riverside, CA 92501-3819

☐ Service information continued on attached page

**3. <u>SERVED BY OVERNIGHT DELIVERY OR EMAIL</u>** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>**June , 2023**</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 30, 2023 | Silvia Villegas | /s/ Silvia Villegas |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

-31-

## NEF SERVICE LIST

- **Kristina S Azlin**    Kristina.Azlin@hklaw.com, ericka.mendez@hklaw.com;hapi@hklaw.com
- **Maria Cho**    Maria.Cho@faegredrinker.com, liliana.hernandez@faegredrinker.com
- **Theodore A Cohen**    tcohen@sheppardmullin.com, mtzeng@sheppardmullin.com
- **Martin P Eramo**    MPEramo@aol.com
- **Thomas R Fawkes**    thomas.fawkes@tuckerellis.com, brittany.falkner@tuckerellis.com
- **Abram Feuerstein**    abram.s.feuerstein@usdoj.gov
- **James Ficenec**    james.ficenec@ndlf.com, alex.reel@ndlf.com
- **Clifford Kerry Fields**    ckfields@fieldslg.com, marnellb@fieldslg.com
- **M Douglas Flahaut**    flahaut.douglas@arentfox.com
- **Ronald E Gold**    rgold@fbtlaw.com, eseverini@fbtlaw.com;jkleisinger@fbtlaw.com
- **Richard H Golubow**    rgolubow@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Michael I. Gottfried**    mgottfried@elkinskalt.com, cavila@elkinskalt.com,lwageman@elkinskalt.com,docketing@elkinskalt.com
- **Everett L Green**    everett.l.green@usdoj.gov
- **Jennifer C Hayes**    jhayes@mckennalong.com, aworthing@mckennalong.com
- **Leslie R Horowitz**    leslie.horowitz@offitkurman.com, arvin.setaghaian@offitkurman.com
- **Lance N Jurich**    ljurich@loeb.com, pmatsuda@loeb.com;ladocket@loeb.com;ljurich@ecf.courtdrive.com
- **Matthew I Kaplan**    matthew.kaplan@tuckerellis.com, sofia.escalante@tuckerellis.com
- **Jane G Kearl**    jkearl@watttieder.com
- **Peter W Lianides**    plianides@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Zi Chao Lin**    zi.lin@tuckerellis.com, kristin.mccarthy@tuckerellis.com;thomas.fawkes@tuckerellis.com;jason.ben@tuckerellis.com
- **Ali Matin**    ali.matin@usdoj.gov, carolyn.k.howland@usdoj.gov
- **Christopher E Ng**    cng@gglts.com
- **Robert E Opera**    ropera@wghlawyers.com, jmartinez@wghlawyers.com;svillegas@wghlawyers.com
- **Jennifer Pruski**    jpruski@trainorfairbrook.com
- **Cameron C Ridley**    Cameron.Ridley@usdoj.gov
- **Todd C. Ringstad**    becky@ringstadlaw.com, arlene@ringstadlaw.com
- **Edward Rubacha**    er@jhkmlaw.com, docket@jhc.law;am@jhc.law
- **Peter T Steinberg**    mr.aloha@sbcglobal.net
- **Dana Sykulski**    dsykulski@yahoo.com
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov
- **Kirsten A Worley**    WORLEYK@HIGGSLAW.COM, MALAVARJ@HIGGSLAW.COM
- **Dylan J Yamamoto**    dylan.yamamoto@arentfox.com
- **S Christopher Yoo**    cyoo@fbtlaw.com, vdelgado@fbtlaw.com